**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

KAREN LOWY, individually and as parent
and next friend of N.T.,

        Plaintiffs,

        v.

DANIEL DEFENSE, LLC, et al.

        Defendants.

No. 1:23-cv-01338-CMH-IDD

**MEMORANDUM OF LAW IN SUPPORT OF MAGPUL INDUSTRIES CORP. AND
<u>SUREFIRE, LLC'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 2

ARGUMENT ............................................................................................................ 3

    I.    Plaintiffs' Claims Against Magpul and SureFire Are Barred by the Federal Protection of Lawful Commerce in Arms Act. ................................................................. 3

        A.  The PLCAA Applies to Plaintiffs' Claims Against Magpul and SureFire. ............. 4

        B.  The PLCAA's "Predicate Exception" Does Not Apply to Plaintiffs' Claims Against Magpul and SureFire. ................................................................. 8

            i.  Plaintiffs Do Not Allege that Magpul or SureFire Committed Any Knowing Violations. ................................................................. 9

           ii.  Plaintiffs Do Not Allege that Magpul or SureFire Violated Any Predicate Laws. ................................................................. 11

                1.  Plaintiffs' False-Advertising and Consumer-Protection Claims Against Magpul and SureFire Are Based on Statutes of General Applicability. ................................................................. 11

                2.  Plaintiffs' Negligence Claims Against Magpul and SureFire Are Unmoored Common-Law Claims that the PLCAA Was Enacted To Prohibit. ................................................................. 12

           iii.  Plaintiffs' Allegations Do Not Satisfy the PLCAA's Heightened Proximate-Causation Requirement. ................................................................. 13

    II.   Even if the PLCAA Did Not Apply, Plaintiffs Fail To Plausibly Allege that Either Magpul or SureFire Violated Any Virginia Law. ................................................................. 17

        A.  Plaintiffs Fail To Plausibly Allege that Magpul Violated the Virginia False Advertising Statute or Virginia Consumer Protection Act. ................................................................. 17

        B.  Plaintiffs Fail To Plausibly Allege that SureFire Violated the Virginia False Advertising Statute or Virginia Consumer Protection Act. ................................................................. 21

C. Plaintiffs Fail To Plausibly Allege that Magpul or SureFire Violated Virginia's Common Law of Negligence. ..................................................................................23

III.   All Claims Against the John Doe Defendants Must be Dismissed for this Case to Proceed in Federal Court. .............................................................................................26

CONCLUSION.............................................................................................................................26

**TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page**

*Ancient Egyptian Arabic Ord. Nobles Mystic Shrine of N. & S. Am. & its Jurisdiction, Inc. v.*
    *Most Worshipful Prince Hall Grand Lodge of Va., Free & Accepted Masons, Inc.*, No.
    3:09-cv-521, 2009 WL 4068454 (E.D. Va. Nov. 19, 2009) .............................................26

*Anderson v. Reeds Jewelers, Inc.*,
    No. 2:16-cv-739, 2017 WL 1987249 (E.D. Va. May 11, 2017).......................................18

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006)................................................................................................14, 15

*Arnold ex rel. Arnold v. NHC Healthcare/Bristol, LLC*,
    No. 1:14-cv-00020, 2014 WL 2584664 (W.D. Va. June 10, 2014)..................................26

*Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*,
    910 F.3d 106, 116 (3d Cir. 2018)....................................................................................7

*Barnett v. Raoul*,
    No. 3:23-cv-00141-SPM, 2023 WL 3160285 (S.D. Ill. Apr. 28, 2023)..............................7

*BHR Recovery Cmties, Inc. v. Top Seek, LLC*,
    355 F. Supp. 3d 416 (E.D. Va. 2018) .........................................................................18, 21

*City of New York v. Beretta U.S.A. Corp.*,
    524 F.3d 384 (2d Cir. 2008)..................................................................4, 8, 9, 11, 17

*Cozzarelli v. Inspire Pharms. Inc.*,
    549 F.3d 618(4th Cir. 2008) ..........................................................................................17

*District of Columbia v. Beretta U.S.A. Corp.*,
    940 A.2d 163 (D.C. 2008) .............................................................................................15

*Duncan v. Bonta*,
    No. 17-cv-1017-BEN (JLB), 2023 WL 6180472 (S.D. Cal. Sept. 22, 2023)....................7

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*,
    No. 21-11269-FDS, 2022 WL 4597526 (D. Mass. Sept. 30, 2022) .................................14

*Federico v. Lincoln Mil. Hous., LLC*,
    127 F. Supp. 3d 623 (E.D. Va. 2015) ............................................................................23

*Field v. GMAC LLC*,
    660 F. Supp. 2d 679 (E.D. Va. 2008) ............................................................................22

*Galloway v. Priority Imports Richmond, LLC*,
    426 F. Supp. 3d 236 (E.D. Va. 2019) ............................................................................20

*Galloway v. Priority Imports Richmond, LLC*,
    No. 20-1020, 2023 WL 1858387 (4th Cir. Feb. 9, 2023) ...........................................20, 21

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009)........................................................................................................5

*Hemi Grp., LLC v. City of New York*,
　559 U.S. 1 (2010)........................................................................................14

*Henry v. R. K. Chevrolet, Inc.*,
　254 S.E.2d 66 (Va. 1979)......................................................................18, 20

*Holderfield v. Thyssenkrupp Elevator Corp.*,
　No. 1:20-cv-01599 (RDA/IDD), 2022 WL 980638 (E.D. Va. Mar. 30, 2022) ..........24, 25

*Holles v. Sunrise Terrace, Inc.*,
　257 Va. 131 (1999) ....................................................................................24

*Ileto v. Glock, Inc.*,
　565 F.3d 1126 (9th Cir. 2009) .................................................................8, 13

*In re Academy, Ltd.*,
　625 S.W.3d 19 (Tex. 2021)..........................................................................6

*Jefferies v. District of Columbia*,
　916 F. Supp. 2d 42 (D.D.C. 2013) ..............................................................4

*Key v. Lewis Aquatech Pool Supply, Inc.*,
　58 Va. Cir. 344, 2002 WL 920936 (Va. Cir. Mar. 14, 2002) ..........................21

*Liparota v. United States*,
　471 U.S. 419 (1985)...............................................................................9, 10

*Lowe v. Sporicidin Int'l*,
　47 F.3d 124 (4th Cir. 1995) ...........................................................16, 21, 22

*Marshall v. Winston*,
　389 S.E.2d 902 (Va. 1990)............................................................23, 25, 26

*Microsoft Corp. v. AT & T Corp.*,
　550 U.S. 437 (2007)....................................................................................5

*Mobley v. Pilot Travel Ctrs., LLC*,
　No. 3:19-cv-866, 2020 WL 2214386 (E.D. Va. May 7, 2020).........................24

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
　142 S. Ct. 2111 (2022)................................................................................7

*Persaud Cos., Inc. v. IBCS Grp., Inc.*,
　425 F. App'x 223 (4th Cir. 2011) ............................................................18, 20

*Podpeskar v. Dannon Co.*,
　No. 16-cv-8478 (KBF), 2017 WL 6001845 (S.D.N.Y. Dec. 3, 2017).................15

*Prescott v. Slide Fire Sols., LP*,
　341 F. Supp. 3d 1175 (D. Nev. 2018) ......................................................6, 7, 14

*Rehaif v. United States*,
　139 S. Ct. 2191 (2019)............................................................................9, 10

*Ruan v. United States*,
　142 S. Ct. 2370 (2022)........................................................................9, 10, 11

*Schmidt v. Synchrony Bank*,
   No. 22-CV-344, 2022 WL 18635838 (E.D. Va. June 14, 2022) .....................................19

*United States v. Gonzalez*,
   792 F.3d 534  (5th Cir. 2015) .......................................................................................6

*Wolf v. Fauquier Cnty. Bd. of Supervisors*,
   555 F.3d 311 (4th Cir. 2009) .......................................................................................14

**<u>Constitutional Provisions, Statutes, Rules, and Regulations</u>**

U.S. CONST. art. VI, cl. 2 ......................................................................................................4

15 U.S.C.
   § 7901(a)(3) ...............................................................................................................14, 16
   § 7901(a)(4) .......................................................................................................................4
   § 7901(a)(5) .......................................................................................................................4
   § 7901(a)(6) ...................................................................................................................4, 16
   § 7901(a)(8) .......................................................................................................................4
   § 7901(b)(1) .......................................................................................................................3
   § 7902(a) ........................................................................................................................3, 4
   § 7903(4) .........................................................................................................................1, 5
   § 7903(5) ...........................................................................................................................4
   § 7903(5)(A) ..........................................................................................................1, 4, 8, 14
   § 7903(5)(A)(i) ...................................................................................................................8
   § 7903(5)(A)(ii) ..................................................................................................................8
   § 7903(5)(A)(iii) .................................................................................................8, 9, 13, 14, 16
   § 7903(5)(A)(iv) ..................................................................................................................8
   § 7903(5)(A)(v) ...................................................................................................................8
   § 7903(5)(A)(vi) ..................................................................................................................8

VA. CODE ANN.
   § 18.2-216(A) .................................................................................................................12, 18
   § 59.1-200(A) ....................................................................................................................12
   § 59.1-198(6) .....................................................................................................................12

FED. R. CIV. P. 9(b) ...........................................................................................................18

27 C.F.R.
   § 478.39...............................................................................................................................6

**<u>Other Authorites</u>**

*Component*, *Constituent*, *Part*, WEBSTER'S NEW INTERNATIONAL DICTIONARY
   (2d ed. 1944) .......................................................................................................................5

RESTATEMENT (THIRD) OF TORTS § 37 (2012)...........................................................................23

## INTRODUCTION

In enacting the Protection of Lawful Commerce in Arms Act (PLCAA), Congress sought to protect lawful manufacturers and sellers of firearms and firearm components from liability based on the unlawful use of their products. In this suit, Plaintiffs seek to impose exactly that sort of liability on all Defendants, including Magpul Industries Corporation (Magpul) and SureFire, LLC (SureFire). Plaintiffs have named Magpul and SureFire in this suit because a criminal (referred to in the Complaint as "the Shooter") had Magpul and SureFire products, namely firearm magazines, in his possession when he committed a crime. A magazine is "a component part of a firearm"; Plaintiffs seek monetary damages for harm solely "resulting from the criminal or unlawful misuse of" such products; and none of the PLCAA's narrow exceptions apply. 15 U.S.C. § 7903(4), (5)(A). This suit is therefore barred by the PLCAA. It does not diminish the atrocious nature of the Shooter's acts to acknowledge, as the PLCAA demands, that he was responsible for those acts, not Defendants and not Magpul or SureFire.

Even if the PLCAA did not apply, Plaintiffs fail to plausibly allege claims against Magpul or SureFire under the Virginia False Advertising Statute, the Virginia Consumer Protection Act, or Virginia's common law of negligence. These claims are based on a few social-media posts from Magpul and SureFire. But Plaintiffs do not allege and cannot show that the Shooter saw any of these posts or that he even used Magpul or SureFire products to commit his crime. Without these allegations, all Plaintiffs' claims against Magpul and SureFire necessarily fail.

By virtue either of these pleading deficiencies or Magpul and SureFire's immunity under the PLCAA, Plaintiffs' claims against Magpul and SureFire must be dismissed under Rule 12(b)(6). Magpul and SureFire further adopt the dismissal arguments in Co-Defendants' briefing that independently require dismissal of the claims against Magpul and SureFire under either Rule

12(b)(1) or 12(b)(6), including that the Court lacks subject-matter jurisdiction over those claims, that Plaintiffs lack statutory standing to bring those claims, and that all claims are otherwise barred by the First Amendment. All John Doe defendants in this case must also be dismissed because Plaintiffs fail to allege that those defendants are citizens of different states than Plaintiffs, as is required to maintain diversity jurisdiction.

## BACKGROUND

This case arises from the criminal misconduct of a single person, the Shooter, who fired at a school from an apartment in Washington, D.C. before committing suicide. Plaintiffs have sued manufacturers of firearms and firearm parts whose products were found in the apartment.

According to the Complaint, the Shooter possessed "a high-capacity drum and grip" manufactured by Defendant Magpul and "magazines" manufactured by Defendant SureFire, among others. Compl. ¶ 19. Plaintiffs allege that all Defendants use "militaristic messaging" to advertise their products generally, *see id*. at 13, pointing to two alleged Instagram posts and one alleged Twitter post from Magpul, *see id*. ¶¶ 59, 66, and two alleged Instagram posts from SureFire, *see id*. ¶¶ 64, 68.

Plaintiffs allege no facts connecting these few posts to the shooting. There are no allegations that these specific posts caused the Shooter to commit his crime or to use Magpul or SureFire products in the crime. Indeed, there are no allegations that the Shooter even saw these posts or that he used any Magpul or SureFire products in the shooting. Nevertheless, Plaintiffs now seek to make Magpul and SureFire liable for the shooting. Plaintiffs seek damages, including treble and punitive damages, against Magpul and SureFire under the Virginia False Advertising Statute, VA. CODE ANN. § 18.2-216, the Virginia Consumer Protection Act, *id*. § 59.1-196 *et seq*., and Virginia's common law of negligence. *See* Compl. ¶¶ 197–203, 225–31, 302–10, 338–46.

**ARGUMENT**

Magpul and SureFire incorporate and adopt the applicable dismissal arguments raised by Co-Defendants, including arguments that the PLCAA generally bars Plaintiffs' claims and that Plaintiffs otherwise fail to state claims under state statutory or common law. These also include the arguments that the Court lacks subject-matter jurisdiction because Plaintiffs' injuries are not fairly traceable to Magpul or SureFire's challenged conduct; that Plaintiffs have not suffered the type of injury that the specific, consumer-focused state statutes at issue are meant to redress; that Plaintiffs' claims may proceed on the basis only of the specific social-media posts that the Complaint identifies (and not any other posts to which it vaguely gestures); and that Magpul and SureFire's posts constitute protected speech. This brief elucidates why Plaintiffs' claims against Magpul and SureFire in particular are barred by the PLCAA, are otherwise deficient, and thus must be dismissed under Rule 12(b)(6).

I.      **Plaintiffs' Claims Against Magpul and SureFire Are Barred by the Federal Protection of Lawful Commerce in Arms Act.**

All of Plaintiffs' claims must be dismissed under the PLCAA. *See* 15 U.S.C. § 7902(a). Congress enacted the PLCAA in 2005 in response to a cascade of lawsuits against firearms manufacturers. Congress's express "purpose" was "[t]o prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products . . . for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." *Id.* § 7901(b)(1). In other words, to prohibit the precise claims that Plaintiffs attempt to pursue against Magpul and SureFire in this case. Although Plaintiffs fail to allege any criminal or unlawful misuse or possession of Magpul or SureFire's products specifically, those products are covered by the PLCAA, and Plaintiffs' claims against Magpul and SureFire are predicated on such misconduct. Those claims thus

constitute a "qualified civil liability action" that the PLCAA prohibits. *Id.* §§ 7902(a), 7903(5). The claims for which the PLCAA confers immunity must be dismissed with prejudice. *See* U.S. CONST. art. VI, cl. 2; *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 404 (2d Cir. 2008) (instructing district court to "enter judgment dismissing the case as barred by the PLCAA"); *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 46–47 (D.D.C. 2013).

### A. The PLCAA Applies to Plaintiffs' Claims Against Magpul and SureFire.

As explicitly stated in the PLCAA, Congress found that the firearms industry is "heavily regulated," "that imposing liability on an entire industry for harm that is solely caused by others is an *abuse of the legal system*," and that

> [b]usinesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition . . . *are not*, and *should not*, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

15 U.S.C. § 7901(a)(4), (5), (6) (emphases added). Too often, Congress found, such lawsuits were designed to impermissibly circumvent Congress to "regulate interstate and foreign commerce through judgments and judicial decrees." *Id*. § 7901(a)(8). Congress therefore provided in the PLCAA that "[a] qualified civil liability action *may not be brought in any Federal or State court*." *Id*. § 7902(a) (emphasis added). By forbidding "qualified civil liability action[s]," Congress generally prohibited any

> civil action . . . brought by any person against a manufacturer or seller of a qualified product . . . for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party.

*Id*. § 7903(5)(A). Only if such an action falls within one of the PLCAA's narrowly drawn exceptions may such a cause of action proceed.

It is evident from the face of the Complaint that Plaintiffs' claims are prohibited "qualified civil liability action[s]" under the PLCAA. First, the Magpul and SureFire products at issue—namely, magazines that hold and feed the ammunition that a firearm needs in order to fire—are "qualified product[s]."[1] As relevant, the PLCAA defines a "qualified product" as "a firearm (as defined in [18 U.S.C. § 921(a)(3)(A)–(B)]), including . . . ammunition (as defined in [18 U.S.C. § 921(a)(17)(A)]), or a *component part* of a firearm or ammunition." *Id.* § 7903(4) (emphasis added). A magazine is a "component part of a firearm."

Because the statute does not further define "component part," the Court "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175–76 (2009) (quotation marks omitted). According to ordinary meaning, magazines are "component parts" of firearms because they "form, compose, or make up" firearms and thus are "one of the portions" into which firearms may be divided. *Component*, *Constituent*, *Part*, Webster's New International Dictionary (2d ed. 1944); *see also Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 449 n.11 (2007) ("'Component' is commonly defined as 'a constituent part,' 'element,' or 'ingredient.'") (quoting 2 Webster's Third New International Dictionary of the English Language 466 (1981)); *United States v. Gonzalez*, 792 F.3d 534, 537 (5th Cir. 2015) ("[T]he common meaning of 'component,' . . . is 'a part or element of a larger whole, especially a part of a machine or vehicle.'") (quoting Oxford Dictionary of English 357 (3d ed. 2010)).

---

[1] Plaintiffs do not appear to deny that the Magpul grip that the Shooter supposedly also possessed is "a component part of a firearm." 15 U.S.C. § 7903(4). Any argument to the contrary would be utterly without merit. The grip is a standard component part on all AR-15 rifles; it both provides a necessary human interface for hand placement and houses the gun's safety detent spring. *See* Duncan Long, The AR-15/M16: A Practical Guide 64, 87 (1985) (attached as Exhibit A). The fact that a grip is an integral part of an AR-15 can be accurately and readily determined from Long, *supra*, and should be judicially noticed under Federal Rule of Evidence 201(b)(2).

Apparently in an effort to avoid the PLCAA, Plaintiffs instead characterize magazines as mere "weapons accessories." *See* Compl. ¶ 59. That characterization reflects a misunderstanding of how common firearms operate. Some firearms, such as revolvers and single-shot firearms, function without magazines. But many common firearms, such as AR-15 models, are designed to receive ammunition through detachable magazines. Magazines like those produced by Magpul and SureFire are accordingly among the parts that "form, compose, or make up"—in other words, the components of—those firearms as designed. Indeed, these magazines have no function *apart from* serving as components for such firearms. *See Gonzalez*, 792 F.3d at 537 ("[A]n AK–47 magazine is 'useful' only when used in conjunction with [an AK-47] . . . . As such, an AK–47 magazine plainly meets the State Department's definition of component."); *cf.* 27 C.F.R. § 478.39 (defining "imported parts" that can be used to "assemble a semiautomatic rifle" to include "[m]agazine bodies").

Courts that have construed "component part" under the PLCAA have thus done so in a manner that includes magazines. The Supreme Court of Texas has directly held that "both firearms *and magazines* (along with other component parts) are 'qualified products' subject to the PLCAA's general prohibition against qualified civil liability actions." *In re Academy, Ltd.*, 625 S.W.3d 19, 29 (Tex. 2021) (quoting 15 U.S.C. § 7903(4), 5(A)) (emphasis added). The District of Nevada has similarly held that a bump stock is a "component part" for PLCAA purposes because a "stock is an integral component of a rifle as it permits the firearm to be fired from the shoulder," and a bump stock is no less a component—as opposed to an "accessory"—simply because it "is a modified type of rifle stock that replaces the existing stock." *Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1189 (D. Nev. 2018). Magpul and SureFire's magazines are likewise necessary for the

proper use of firearms designed to be used with detachable magazines. They are accordingly component parts of such firearms.

For similar reasons, courts have held that magazines are "arms" for Second Amendment purposes, even against arguments that so-called high-capacity magazines "are not necessary to the functioning of a firearm." *Barnett v. Raoul*, No. 3:23-cv-00141-SPM, 2023 WL 3160285, at *8 (S.D. Ill. Apr. 28, 2023) (agreeing that it "is not even a close call" that magazines are included within "arms" rather than "non-essential accessories") (quotation marks omitted); *see also Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*, 910 F.3d 106, 116 (3d Cir. 2018) ("*ANJRPC*"), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022); *Duncan v. Bonta*, No. 17-cv-1017-BEN (JLB), 2023 WL 6180472, at *3 & n.24 (S.D. Cal. Sept. 22, 2023).

Simply put, "[b]ecause magazines feed ammunition into certain guns, and ammunition is necessary for such a gun to function as intended," magazines are component parts of such firearms just as they are "'arms' within the meaning of the Second Amendment." *ANJRPC*, 910 F.3d at 116. Like the stock, the magazine is "integral" to the firearm's designed and intended use. *Prescott*, 341 F. Supp. 3d at 1189. Under the plain meaning of "component part" and the consistent interpretation of that phrase in the PLCAA, Magpul and SureFire's products were "qualified product[s]" under the PLCAA. 15 U.S.C. § 7903(5)(A). Indeed, Defendants are unaware of any court that has rejected this commonsense understanding of magazines as firearm components.

Second, Plaintiffs' claims are predicated upon the criminal wrongdoing of an alleged purchaser of those products. The Complaint recounts this wrongdoing in detail, because this wrongdoing was the sole source of Plaintiffs' alleged injuries. Indeed, the section of the Complaint that alleges those injuries is explicitly titled "*The Shooting's* Impact on [Plaintiffs] and Their

Family." Compl. at 54 (emphasis added). And Plaintiffs nowhere allege that they were somehow injured by a defect or other feature of Magpul or SureFire's products during any proper, lawful use of those products. This suit thus seeks "damages" and "punitive damages . . . resulting from the criminal or unlawful misuse of a qualified product by . . . a third party." 15 U.S.C. § 7903(5)(A). Such suits are barred by the PLCAA.

### B. The PLCAA's "Predicate Exception" Does Not Apply to Plaintiffs' Claims Against Magpul and SureFire.

The PLCAA provides six limited exceptions to its prohibition on "qualified civil liability action[s]." *See* 15 U.S.C. §§ 7903(5)(A)(i)–(vi). Among these are certain actions brought by the Attorney General of the United States, *id*. § 7903(5)(A)(vi); product-liability actions based on defects in design or manufacturing, *id*. § 7903(5)(A)(v); actions by a person "directly harmed" by an illegal transfer under federal law, *id*. § 7903(5)(A)(i); actions for "breach of contract or warranty," *id.* § 7903(5)(A)(iv); actions for "negligent entrustment or negligence per se," *id*. § 7903(5)(A)(ii);[2] and actions in which the defendant "knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought," *id*. § 7903(5)(A)(iii). These narrowly drawn exceptions demonstrate that "Congress clearly intended to preempt common-law claims, such as general tort theories of liability." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135 (9th Cir. 2009).

None of these exceptions could plausibly apply to this case except the final one, which is known as the "predicate exception." The predicate exception exempts from PLCAA immunity only those "action[s] in which a . . . seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate

---

[2] Plaintiffs' negligence claims against Magpul and SureFire do not allege negligent entrustment or negligence per se.

cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii); *see Beretta*, 524 F.3d at 390. By its plain terms, therefore, the exception has three requirements: (1) the defendant must have "knowingly violated," (2) a predicate State or Federal statute applicable to the sale or marketing of a qualified product, and (3) that violation must be a "proximate cause of the harm for which relief is sought." Because this exception requires a statute, it cannot rescue Plaintiffs' negligence claims against Magpul or SureFire, which are based in common law. *See infra* Part II.B.ii.2. Plaintiffs' claims under the Virginia False Advertising Statute and Consumer Protection Act do not satisfy any of these elements, either.

### i. Plaintiffs Do Not Allege that Magpul or SureFire Committed Any Knowing Violations.

Like all scienter requirements, the predicate exception's knowledge standard serves to "separate those who understand the wrongful nature of their act from those who do not." *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019) (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73–74, n.3 (1994)). In Congress's estimation, only those entities that knew they were violating a specific legal obligation or prohibition are sufficiently culpable that the PLCAA's bar should not apply. The Complaint fails to plead the requisite scienter.

As its text makes clear, the PLCAA requires knowledge *of a specific prohibition*. Here, "knowingly . . . modifies the verb 'violate[d]' and its direct object, which in this case is" the applicable underlying statute. *Id*. at 2195. When a statute uses "knowingly" in this manner, the text requires knowledge of illegality. *Id*. at 2197. This is "ordinary English grammar." *Id*. at 2196 (quoting *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009)). Knowledge of the relevant law thus "separate[s] wrongful from innocent acts." *Id*. at 2197. That is, the requisite knowledge of an action's unlawfulness separates what Congress sought to proscribe from the "broad range" of conduct that it did not. *Liparota v. United States*, 471 U.S. 419, 426 (1985); *see also Ruan v.*

*United States*, 142 S. Ct. 2370, 2377 (2022). Accordingly, the Supreme Court has interpreted "knowingly" to require that a person who acquires or possesses food stamps also know that, as a matter of law, "his conduct [was] unauthorized by statute or regulations." *Liparota*, 471 U.S. at 425. Under another statute, "knowingly" likewise requires knowledge by a possessor of a firearm that he is, as a matter of law, in the United States "illegally." *Rehaif*, 139 S. Ct. at 2198. And "knowingly" requires that a doctor's dispensation of drugs not merely be unauthorized as a matter of "fact," but also that the doctor "knew or intended" that his dispensation was not authorized by statute or regulation. *Ruan*, 142 S. Ct. at 2382.

Plaintiffs fail to allege that either Magpul or SureFire violated any specific statute, *see infra* Parts I.B.ii, II, and thus they necessarily fail to allege that either Magpul or SureFire knowingly violated any specific statute. Even putting that aside, Plaintiffs fail to allege the requisite scienter. Because the predicate exception requires a statute, Magpul and SureFire must have known that the social-media posts at issue were violations of either the Virginia False Advertising Statute or Consumer Protection Act (not Virginia's common law of negligence, which Magpul and SureFire could not have knowingly violated for similar reasons). Plaintiffs generally claim that Defendants know the purported dangers of their products and the risks that certain populations, namely adolescents, might use those products in dangerous fashion. But such general allegations are plainly insufficient under the predicate exception; if they were sufficient, the knowledge requirement would be meaningless.

Nor can Plaintiffs plausibly argue that either Magpul or SureFire knew that the social-media posts at issue—which amount to a few images with men in what Plaintiffs call "tactical gear," one image of a VW van with mounted firearms, and a post referencing the television show *Game of Thrones*—would violate Virginia laws aimed at preventing sellers from making false or

misleading claims about their products. The Complaint discourses at length upon the supposedly suggestive "militaristic" themes in these posts. Whether or not the posts can bear this interpretation (and they cannot), even under this interpretation the posts make no false or misleading statements about Magpul or SureFire's magazines—*e.g.*, any indication that they have a functionality that they in fact lack. In making these posts, Magpul and SureFire thus could not have "kn[own] or intended" to post information that, as a matter of law, violated the False Advertising Statute or Consumer Protection Act. *Ruan*, 142 S. Ct. at 2382.

### ii. Plaintiffs Do Not Allege that Magpul or SureFire Violated Any Predicate Laws.

Plaintiffs' claims also fail to meet the predicate exception because their false-advertising and consumer-protection claims against Magpul and SureFire are based on statutes of general applicability, which do not implicate the exception, and because their negligence claims against Magpul and SureFire are exactly the kind of unmoored common-law claims that the PLCAA was enacted to prohibit.

### 1. Plaintiffs' False-Advertising and Consumer-Protection Claims Against Magpul and SureFire Are Based on Statutes of General Applicability.

The predicate exception has been construed to apply only to state or federal statutes either (1) that "expressly regulate firearms"; (2) that "courts have applied to the sale and marketing of firearms"; or (3) that "clearly can be said to implicate the purchase and sale of firearms." *Beretta*, 524 F.3d at 404. Thus, "a statute of general applicability that does not encompass the conduct of firearms manufacturers" is not a predicate statute. *Id.* at 400. It is not enough, in other words, that a statute is so general that it could be read to encompass firearms manufacturers or sellers along with the general public; a predicate statute must be legislatively directed toward the purchase and sale of firearms. *See id.* at 400–04.

Plaintiffs bring Counts Eight (against Magpul) and Twelve (against SureFire) under the Virginia False Advertising Statute, VA. CODE ANN. § 18.2-216, and Counts Twenty-One (against Magpul) and Twenty-Five (against SureFire) under the Virginia Consumer Protection Act, *id*. § 59.1-196 *et seq*. *See* Compl. ¶¶ 197–203, 225–31, 302–10, 338–46. These statutes are the sole bases for Plaintiffs' request for relief on these Counts, and the latter statute is the sole basis for their request for treble damages. *See id*. at 87 (Requested Relief). Both are expressly statutes of general applicability.

The False Advertising Statute applies to "*[a]ny* person, firm, corporation or association who" engages in false advertising, and it specifies that "[t]he actions prohibited in this section, shall be construed as including . . . the advertising in any manner by *any person* of any goods." VA. CODE ANN. § 18.2-216(A) (emphases added). Its explicit application to "any person" makes this statute categorically one of general applicability. The Consumer Protection Act similarly applies to "supplier[s]" in general, *id*. § 59.1-200(A), which it defines as "a seller, lessor, licensor, or professional who advertises, solicits, or engages in consumer transactions, or a manufacturer, distributor, or licensor who advertises and sells, leases, or licenses goods or services to be resold, leased, or sublicensed by other persons in consumer transactions," *id*. § 59.1-198(6). Thus, neither statute is directed specifically toward manufacturers or sellers of firearm parts.

## 2. Plaintiffs' Negligence Claims Against Magpul and SureFire Are Unmoored Common-Law Claims that the PLCAA Was Enacted To Prohibit.

The negligence claim in Count Twenty-Nine against several Defendants, including Magpul and SureFire, also cannot implicate the predicate exception. Compl. ¶¶ 370–83.[3] This claim is based on Virginia's common law of negligence. As such, it is prohibited by the PLCAA.

---

[3] This Count is incorrectly labeled "Count XXIV" in the Complaint.

To the extent the Complaint provides any fair notice of the standard of liability applicable to this claim, it is premised on "general tort theories of liability that traditionally have been embodied in the common law." *Ileto*, 565 F.3d at 1135. In enacting the PLCAA, "Congress clearly intended to preempt common-law claims, such as general tort theories of liability." *Id*. After all, Congress enacted the PLCAA in the wake of such lawsuits two decades ago. Indeed, even if this claim were based in a Virginia statute, that would not enable Plaintiffs to pursue it under the predicate exception. The Ninth Circuit explained as much in *Ileto*. The plaintiffs there attempted to pursue tort theories against firearms manufacturers, arguing that the claims were permissible because California had codified its tort law in a civil code. The court held that a suit brought under a statute that merely codifies a tort claim cannot be a predicate statute under the PLCAA. *See id*. at 1136–38. Among other issues, Congress intended the predicate exception to cover "statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry—rather than general tort theories," including those "that happened to have been codified by a given jurisdiction." *Id*. at 1136.

The same necessarily applies to a claim, such as Plaintiffs' negligence claim, based purely on uncodified common law. The "judicial evolution" endemic to common law—and the possibility that it would be used to "expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States"—"was precisely the target of the PLCAA." *Id*. (quoting 15 U.S.C. § 7901(a)(7)) (quotation marks omitted).

### iii. Plaintiffs' Allegations Do Not Satisfy the PLCAA's Heightened Proximate-Causation Requirement.

Congress was also explicit that "an action" under the predicate exception must be based on a violation that "was a *proximate cause* of the harm for which relief is sought." 15 U.S.C.

§ 7903(5)(A)(iii) (emphasis added). This clause further defeats any argument that Plaintiffs' claims against Magpul and SureFire fall within the predicate exception.

Congress was particularly concerned that firearms manufacturers and sellers would be forced to defend themselves from claims where "the harm caused" was "the misuse of firearms by third parties, including criminals." *Id*. § 7901(a)(3). That is why it defined "qualified civil liability action," in part, by reference to actions involving "criminal or unlawful misuse of a qualified product by the person [bringing the suit] or a third party." *Id*. § 7903(5)(A). Given this context, the predicate exception's specific proximate-cause requirement is particularly demanding. *See Prescott*, 341 F. Supp. 3d at 1191 (dismissing case because the plaintiffs could not "show that Slide Fire's misrepresentation proximately caused the injuries that are the subject of this case").

At a minimum, "proximate cause . . . requires some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quotation marks omitted). Any "link that is too remote, purely contingent, or indirect is insufficient." *Id*. (cleaned up); *see also Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, No. 21-11269-FDS, 2022 WL 4597526, at *15 n.9 & *20 (D. Mass. Sept. 30, 2022), *appeal docketed*, No. 22-1823 (1st Cir. Dec. 5, 2022) (noting government plaintiff's harm was too causally remote for statutory standing, thus it was "doubtful" PLCAA "proximate-cause requirement could be satisfied"). As the PLCAA itself makes clear by explicitly and repeatedly barring liability based on third-party conduct, a central consideration must be whether an "intervening cause" broke the causal chain between the claimed violation and the alleged injury, in this case between Magpul and SureFire's social-media posts and the shooting. *Wolf v. Fauquier Cnty. Bd. of Supervisors*, 555 F.3d 311, 321 (4th Cir. 2009); *cf. Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask

14

is whether the alleged violation led directly to the plaintiff's injuries."). Under the PLCAA, Congress highlighted the most likely intervening actions that would break the causal chain and bar a liability action—namely, third parties and the criminal or unlawful misuse of qualified products. *See District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 171 (D.C. 2008) (noting the government needed "proof" of "proximate cause" "despite the misuse of the firearm by a third person"; it is "implausible" Congress would permit an action based on a mere "causal link").

Plaintiffs recite the words "proximate cause" in one paragraph of their negligence claim. *See* Compl. ¶¶ 381–82. But Plaintiffs again make no effort to allege proximate causation sufficient for the PLCAA. In fact, the Complaint highlights at length the criminal misconduct of a third party, the Shooter, to break any causal chain of any kind. *See, e.g.*, Compl. ¶¶ 125–47 (discussing "The Shooting's Impact" on Plaintiffs). Given that intervening criminal event, Plaintiffs' allegations fail to establish proximate causation even for purposes of common-law negligence, *see infra* Part II.C; they do not come close to clearing the far higher proximate-causation threshold for liability under the PLCAA's predicate exception. This is therefore not a case where Defendants must wait to accumulate evidence about the intervention of third parties to break the causal chain of any alleged harm. The Complaint admits, and emphasizes, third-party intervention. *Cf. Podpeskar v. Dannon Co.*, No. 16-cv-8478 (KBF), 2017 WL 6001845, at *3 (S.D.N.Y. Dec. 3, 2017).

Plaintiffs also cannot show that Magpul or SureFire somehow caused this third-party intervention when Plaintiffs fail to allege that the Shooter even saw the specific social-media posts at issue or acted in response to them. Plaintiffs' generalized allegations that Magpul and SureFire "advertised to Virginia residents *such as the Shooter*," Compl. ¶ 198 (emphasis added); *see also id*. ¶¶ 226, 303, 339, or that "the Shooter was exposed to and influenced by Defendants' deceptive and unfair marketing acts and practices while researching and planning the Shooting," *id*. ¶ 123,

are not allegations that the Shooter saw, much less acted upon, the *specific posts* on which Plaintiffs have chosen to base their claims against Magpul and SureFire. Without those allegations, Plaintiffs cannot show that those posts contributed in any way to the Shooter's crimes. And thus they cannot establish causation, let alone satisfy the PLCAA's heightened standard for proximate causation. *See Lowe v. Sporicidin Int'l*, 47 F.3d 124, 131 (4th Cir. 1995) (finding no proximate causation where plaintiff "never alleged that she relied on the advertisements and that this reliance caused her to use [the product at issue] and so resulted in her injuries").

The proximate-cause requirement further bars the remedies that Plaintiffs seek for their claims against Magpul and SureFire. In enacting the PLCAA, Congress intended not just to prevent the litigation of meritless claims that were "an abuse of the legal system," but also to prevent such claims from resulting in "money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals." 15 U.S.C. §§ 7901(a)(3), (6). Thus, Congress clarified that a lawsuit may proceed under the predicate exception only when a knowing violation "was a proximate cause of the *harm for which relief is sought*." *Id*. § 7903(5)(A)(iii) (emphasis added). As a result, any relief sought must be limited to remedying harm that the defendant proximately caused. That alone forecloses Plaintiffs' requests for non-compensatory damages, *i.e.*, treble and punitive damages. *See* Compl. at 87.

Plaintiffs' allegations do not make a plausible case for compensatory damages under the PLCAA, either. Even assuming Magpul or SureFire knowingly violated any predicate laws (they did not), Plaintiffs request relief for harm not proximately caused by those supposed violations. Plaintiffs were not injured, for example, by Magpul's posting of a picture of a VW van. They were injured by the Shooter's independent criminal acts, which broke any (already extremely attenuated) causal chain between the post and the injuries. Allowing Plaintiffs' requests to proceed

16

would therefore not only force Magpul and SureFire to litigate claims that the PLCAA bars, but would contemplate the imposition of relief for harms remote from anything related to either Magpul or SureFire's conduct. *Cf. Beretta*, 940 A.2d at 172 ("Shoehorning, as it were, into the predicate exception a strict liability cause of action that, at bottom, simply shifts the cost of injuries resulting from the discharge of lawfully manufactured and distributed firearms would, in our view, 'frustrate Congress's clear intention.'") (quoting *Hubbard v. United States*, 514 U.S. 695, 703 (1995); *Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1222 (D. Colo. 2015) (barring a claim under similar Colorado statute because "Plaintiffs are not seeking 'damages'").

## II.   Even if the PLCAA Did Not Apply, Plaintiffs Fail To Plausibly Allege that Either Magpul or SureFire Violated Any Virginia Law.

Plaintiffs' claims against Magpul and SureFire are based on a few social-media posts. But the Complaint contains no specific allegations that the Shooter saw any of these posts, that these posts caused him to commit his crime, or that he even used Magpul or SureFire products in the shooting. The absence of these necessary allegations makes all Plaintiffs' claims against Magpul and SureFire implausible. And since Plaintiffs will not be able to make these necessary allegations, amendment would be futile, and the claims against Magpul and SureFire must be dismissed with prejudice on this ground as well. *See, e.g.*, *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

### A.   Plaintiffs Fail To Plausibly Allege that Magpul Violated the Virginia False Advertising Statute or Virginia Consumer Protection Act.

Plaintiffs' claims against Magpul are based on three social-media posts. The first two, from February 4 and February 28, 2021, are images of men in what Plaintiffs call "full tactical gear," which Plaintiffs characterize as portraying Magpul products "being used" to "prepar[e] for assaults to carry out war." Compl. ¶ 59. The third, from April 12, 2022, is an image of a VW van with

mounted firearms, which Plaintiffs characterize as "advis[ing] consumers that they could achieve 'peace through superior firepower.'" *Id.* ¶ 66. None constitutes a false advertisement.

"To plead a claim for false advertising, a plaintiff must show (1) an advertisement of any sort; (2) intent to sell or induce the public to enter into an obligation; (3) untrue, misleading or deceptive information, and (4) that the plaintiff suffered a loss." *BHR Recovery Cmties., Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 427–28 (E.D. Va. 2018). Because the Virginia False Advertising Statute is a "penal statute," it "must be construed strictly" and "cannot be extended by implication, or be made to embrace cases which are not within its letter and spirit." *Henry v. R. K. Chevrolet, Inc.*, 254 S.E.2d 66, 68 (Va. 1979) (quotation marks omitted). And to the extent that the Complaint could be read to accuse Magpul of a "method, device or practice which is fraudulent," VA. CODE ANN. § 18.2-216(A), any fraud allegation must meet Rule 9's heightened pleading standard, meaning Plaintiffs "must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b); *see Anderson v. Reeds Jewelers, Inc.*, No. 2:16-cv-739, 2017 WL 1987249, at *5 (E.D. Va. May 11, 2017).

Aside from characterizing these three social-media posts as "advertisements," Plaintiffs do not explain how the posts constituted advertisements "contain[ing] any promise, assertion, representation or statement of fact" intended "to induce the public to enter into any obligation" by purchasing any Magpul products. VA. CODE ANN. § 18.2-216(A). Unlike the marketing brochure containing "unequivocal contract language" that the Fourth Circuit construed an advertisement under the Virginia False Advertising Statute, these posts state nothing related to the sale of Magpul products. *Persaud Cos., Inc. v. IBCS Grp., Inc.*, 425 F. App'x 223, 226 (4th Cir. 2011). Indeed, the reason Plaintiffs chose to base their claims against Magpul on these three posts, as opposed to others that might constitute advertisements, appears simply to be their use of purportedly

"militaristic" imagery. But even if these posts could satisfy the first two requirements of the false-advertising test, Plaintiffs' allegations cannot satisfy the other two.

As to the alleged untruthfulness or deceptiveness of these three posts, Plaintiffs repeat the same blanket allegation in their false-advertising claims against all Defendants. *See* Compl. ¶ 150 (claiming that Defendant Daniel Defense "untruthfully, deceptively, or misleadingly promoted its weapons as suitable for war and civilian use, beneficial to safety and security, capable of safe handling by children, and/or appropriate for uses that are or may be illegal in some or all U.S. jurisdictions"); *id*. ¶ 199 (same claim against Magpul); *id*. ¶ 227 (same claim against SureFire).[4] As a result, Plaintiffs allege that Magpul "untruthfully" asserts facts that Magpul's particular posts indisputably do not assert; indeed, these allegations contradict Plaintiffs' own characterization of these posts. *See Schmidt v. Synchrony Bank*, No. 22-cv-344, 2022 WL 18635838, at *1 (E.D. Va. June 14, 2022) ("A complaint containing inconsistent and self-contradictory statements does not state a claim."). Plaintiffs do not and cannot allege that Magpul's three posts state anything about children using Magpul products or about uses that "are or may be illegal in some or all U.S. jurisdictions." *Compare* Compl. ¶ 199, *with id*. ¶¶ 59, 66. To the extent that these posts convey anything about Magpul products' "suitab[ility] for war and civilian use" or "benef[its] to safety and security," *id*. ¶ 199, Plaintiffs do not and cannot identify anything untrue, deceptive, or misleading in them. That the Shooter allegedly *misused* certain firearm products is no indication that Magpul's products lack legitimate uses, including lawful self-defense. And Plaintiffs identify

---

[4] *See also* Compl. ¶ 157 (same claim against the FAB Defendants); *id*. ¶ 164 (same claim against Defendant BCM); *id*. ¶ 171 (same claim against Defendant SOLGW); *id*. ¶ 178 (same claim against Defendant FosTecH); *id*. ¶ 185 (same claim against Defendant Griffin Armament); *id*. ¶ 192 (same claim against Defendant Centurion Arms); *id*. ¶ 206 (same claim against Federal Premium Defendants); *id*. ¶ 213 (same claim against Fiocchi Defendants); *id*. ¶ 220 (same claim against Defendant Starline); *id*. ¶ 234 (same claim against Defendant Torkmag).

no statements about the nature or quality of Magpul magazines or grips, or of any other Magpul product, that are themselves untrue or somehow misleading.

Plaintiffs have also alleged no "actual injury" from any untrue or misleading statements in these purported advertisements. *Persaud*, 425 F. App'x at 227. The False Advertising Statute "subjects the defendant to an action for damages" only "by any person who suffers loss *as the result of a statutory violation*." *Id*. (quoting *Henry*, 254 S.E.2d at 67) (emphasis added). Plaintiffs cannot have suffered a direct loss from any such violation; they do not allege that they themselves were induced to become Magpul customers. Plaintiffs also cannot plausibly allege that Magpul's posts—even under Plaintiffs' "militaristic" characterization—induced the Shooter's act, which was entirely criminal and in no reasonable sense "military." Most fundamentally, however, Plaintiffs do not allege that the Shooter used Magpul products in that act or even that he saw these posts. The false-advertising count against Magpul does contain the blanket claim, which is again repeated in every false-advertising count, that Magpul products "were used to harm" Plaintiffs. Compl. ¶ 201. Yet this blanket claim is contradicted by the Complaint's specific factual recitals, which state only that the Shooter purchased Magpul products. *See id*. ¶ 19. Such a blanket claim cannot suffice under a statute that must be "construed strictly" to its purpose of preventing false consumer advertising and that must not "be made to embrace cases which are not within its letter and spirit." *Henry*, 254 S.E.2d at 68 (quotation marks omitted).

Plaintiffs' claim under the Virginia Consumer Protection Act fails for additional reasons. "To state a claim under the [Act], a plaintiff must allege a fraudulent misrepresentation of fact," which "must include the elements of fraud: a false representation, of material fact, made intentionally and knowingly, with intent to mislead, reliance by the party misled, and resulting damage." *Galloway v. Priority Imports Richmond, LLC*, 426 F. Supp. 3d 236, 244 (E.D. Va. 2019)

(quotation marks omitted), *aff'd*, No. 20-1020, 2023 WL 1858387 (4th Cir. Feb. 9, 2023). As a fraud claim, this claim is subject to Rule 9's heightened pleading standard. *See BHR Recovery Cmties., Inc.*, 35 F. Supp. 3d at 424. And as just seen, Plaintiffs cannot plausibly allege that, in the three posts at issue, Magpul intentionally misrepresented a material fact or that any such misrepresentation resulted in damage. Indeed, Plaintiffs do not identify any fact about Magpul's magazine that might have been material to a potential consumer—*e.g.*, the magazine's capacity— and that these posts somehow misrepresented.

Plaintiffs also do not attempt to allege reliance. They once again repeat a blanket allegation that "the Shooter relied on Defendant Magpul's advertisements to purchase" its products. Compl. ¶ 306. But they nowhere allege that he even *saw* any of the three Magpul posts at issue, and they will not be able to prove that he did. Especially given the particularity that Rule 9 requires, this blanket allegation is, once again, insufficient. *See Key v. Lewis Aquatech Pool Supply, Inc.*, 58 Va. Cir. 344, 2002 WL 920936, at *3 (Va. Cir. Mar. 14, 2002) (finding no reliance where wife testified that she had relied upon salesperson's allegedly false statements but only husband had signed the contract at issue); *see also Lowe*, 47 F.3d at 131.

### B.   Plaintiffs Fail To Plausibly Allege that SureFire Violated the Virginia False Advertising Statute or Virginia Consumer Protection Act.

For similar reasons, Plaintiffs fail to allege plausible claims against SureFire under either the False Advertising Statute or Consumer Protection Act. Plaintiffs' claims against SureFire are based on two social-media posts. The first, from August 28, 2020, contains what Plaintiffs describe as "an image of a man walking in the dark in tactical gear" with the accompanying text: "SureFire manufactures professional grade products for those who go in harm's way, or any who demands the ultimate in quality, innovation, and performance." Compl. ¶ 64. In the second, from December 10, 2021, Plaintiffs emphasize the reference to the television show *Game of Thrones* in the text:

"'Winter is coming', that's enough to worry some folks, unless you're properly equipped." *Id.* ¶ 68. Neither constitutes a false or misleading statement in violation of either statute.

As to the false-advertising claim, these two posts do not convey anything about "safe handling by children" or "uses that are or may be illegal in some or all U.S. jurisdictions," and Plaintiffs provide no specific allegations to support such claims against SureFire. *Id.* ¶ 227. Nor do Plaintiffs allege any other manner in which these posts convey a misleading impression about the nature or quality of SureFire's magazines or other products. Plaintiffs do not allege, for example, that SureFire's magazines are not in fact "professional grade." That Plaintiffs apparently object to the self-defense themes allegedly invoked in these posts does not render them false advertisements. *See Field v. GMAC LLC*, 660 F. Supp. 2d 679, 690 (E.D. Va. 2008) (dismissing claim under the False Advertising Statute where the complaint contained no allegations about "the nature of such alleged false advertising or intent to sell anything at a price other than that advertised"). Plaintiffs also cannot show that they suffered any "actual injury" from any misleading statements in these posts. *Persaud*, 425 F. App'x at 227. They do not allege—aside from an insufficient, blanket, self-contradicted claim—that the Shooter used a SureFire magazine in the shooting. *Compare* Compl. ¶ 229 *with id.* ¶ 19. And they nowhere allege that the Shooter so much as saw either post.

As to the consumer-protection claim, Plaintiffs again cannot show any false statement of material fact when they fail to allege any misleading statement about SureFire's products to begin with. And they cannot plausibly allege that the Shooter relied on any such misstatement when they fail to allege that he even saw the purported misstatement. *See Lowe*, 47 F.3d at 131.

### C.   Plaintiffs Fail To Plausibly Allege that Magpul or SureFire Violated Virginia's Common Law of Negligence.

Plaintiffs also cannot plausibly establish negligence by either Magpul or SureFire based on their few selected social-media posts. To establish negligence under Virginia law, Plaintiffs must prove: "(1) duty, (2) breach of that duty by not meeting the standard of care, (3) proximate cause, and (4) damages." *Federico v. Lincoln Mil. Hous., LLC*, 127 F. Supp. 3d 623, 641 (E.D. Va. 2015) (citing *McGuire v. Hodges*, 639 S.E.2d 284 (Va. 2007)).

Magpul and SureFire owed no duty to Plaintiffs when selling magazines. As manufacturers and sellers, Magpul and SureFire may owe duties (which would sound in contract law) to those who purchase their products. But Plaintiffs did not purchase Magpul or SureFire products. They thus had no relationship with Magpul or SureFire from which any duties could flow. Rather, they attempt to base their negligence claim on a "general duty . . . not to expose others to reasonably foreseeable risks of injury." Compl. ¶ 371.

"There is no such thing as negligence in the abstract, or in general. Negligence must be in relation to some person." *Marshall v. Winston*, 389 S.E.2d 902, 905 (Va. 1990) (quoting *Kent v. Miller*, 189 S.E. 332, 334 (Va. 1937)) (cleaned up). Neither Magpul nor SureFire incurred a duty to Plaintiffs and the general "public" simply by selling products to another party. Compl. ¶ 373. "An actor whose conduct has not created a risk of physical or emotional harm to another has no duty of care to the other unless a court determines that" a specific affirmative duty to that party— *e.g.*, statutory duties of care to third parties—"is applicable." RESTATEMENT (THIRD) OF TORTS § 37 (2012). Plaintiffs allege no such duty,[5] and none could conceivably arise from the Shooter's

---

[5] Specifically, the "Supreme Court of Virginia, however, has identified two rare circumstances that operate as exceptions to the general rule against liability for the criminal acts of third parties": one "which involves a duty not assumed by imposed," and another where a duty arises "when the

alleged possession of Magpul or SureFire products. Indeed, Virginia's "source-of-duty rule" expressly "attempts to mark off the boundaries of civil liability." *Holderfield v. Thyssenkrupp Elevator Corp.*, No. 1:20-cv-01599 (RDA/IDD), 2022 WL 980638, at \*9 (E.D. Va. Mar. 30, 2022) (quotation marks omitted). A tort action may arise only when "the relation of the plaintiff and the defendants be such that a duty arises from *that relationship*, irrespective of the contract, to take due care." *Id.* (quoting *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 558 (1998)) (emphasis added). Thus, "[t]o establish a cause of action for negligence, the duty alleged to have been tortiously breached must be a common law duty, not a duty arising between the parties solely by virtue of a contract." *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 136 (1999).

This Court has accordingly held that a plaintiff had failed to state a claim for negligence where, "[b]ut for the contract" with another party, the plaintiff "would have no relationship with" the defendant. *Holderfield*, 2022 WL 980638, at \*10. The plaintiff there had been riding in an elevator that dropped nearly four stories, seriously injuring her, and she sued the entity responsible for the elevator's maintenance and repair. *See id.* at \*1. The relationship between Plaintiffs and either Magpul or SureFire is, if anything, more attenuated. Plaintiffs never used Magpul or SureFire's products, nor do they allege an injury arising specifically from Magpul or SureFire's products. They also do not allege that the Shooter purchased products from Magpul or SureFire (as opposed to a downstream retailer). They have sued Magpul and SureFire solely because the Shooter allegedly had Magpul and SureFire products in his possession. That allegation does not establish a duty owed by Magpul or SureFire to Plaintiffs, let alone the general "public."

---

defendant could have foreseen the need to take affirmative action to protect the plaintiff from harm." *Mobley v. Pilot Travel Ctrs., LLC*, No. 3:19-cv-866, 2020 WL 2214386, at \*3 (E.D. Va. May 7, 2020) (cleaned up). Holding that the mere sale of a lawful product could give rise to either circumstance would turn them from "rare" to broad impositions of potential negligence liability.

Magpul and SureFire also incurred no "public" duty merely by virtue of the fact that their products are components of firearms. Although Virginia law recognizes "that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, that principle has been applied in a very narrow set of cases," namely "wrongful death, wrongful birth, and one specific type of negligent driving case." *Holderfield*, 2022 WL 980638, at \*9 (quoting *Bosworth v. Vornado Realty L.P.*, 83 Va. Cir. 549, 2010 WL 8925838, at \*7 (Va. Cir. Dec. 20, 2010)) (cleaned up). Magpul and SureFire's products were lawfully manufactured and sold; indeed, they are protected by the Second Amendment. *See supra* Part I.A. There is no support in Virginia law for the proposition that the mere sale of lawful products imposes a duty to prevent those products from being used unlawfully. In fact, the Virginia Supreme Court has held that the general rule that "a person owes no duty to control the conduct of third persons in order to prevent harm to another" is "especially" applicable "when the third person commits acts of assaultive criminal behavior because such conduct *cannot reasonably be foreseen*." *Marshall*, 389 S.E.2d at 904 (emphasis added).

By the same token, Plaintiffs cannot plausibly show that Magpul or SureFire committed any cognizable breach of duty or that any such breach was a proximate cause of their alleged injuries. Since Magpul and SureFire bore no duty to monitor the Shooter's use of their products, the only way to avoid breaching Plaintiffs' suggested "duty of reasonable care to protect the public . . . from reasonably foreseeable risks of harm from their" products, assuming such risks were reasonably foreseeable, would have been to stop offering their products for sale. Compl. ¶ 373. That untenable result is further proof that Plaintiffs' suggested "abstract" duty does not exist. *Marshall*, 389 S.E.2d at 905. And because the criminal misuse of a product is *not* reasonably

foreseeable as a matter of law, *see id*. at 904, and Plaintiffs allege no facts indicating that it was somehow foreseeable in this case, Plaintiffs again cannot show proximate causation.

### III.    All Claims Against the John Doe Defendants Must Be Dismissed for this Case to Proceed in Federal Court.

Plaintiffs have sued twenty John Doe defendants who allegedly "are additional individuals or entities who manufactured, advertised, and/or sold the weapons, weapon accessories, and ammunition used in the Shooting, or who otherwise engaged in negligent, reckless, or intentional misconduct with respect to the Shooting." Compl. ¶ 40. Plaintiffs assert diversity jurisdiction. *See id*. ¶ 41. To maintain complete diversity, Plaintiffs "must at least show that the John Doe defendants are citizens of states other than [Plaintiffs'] states of citizenship." *Ancient Egyptian Arabic Ord. Nobles Mystic Shrine of N. & S. Am. & its Jurisdiction, Inc. v. Most Worshipful Prince Hall Grand Lodge of Va., Free & Accepted Masons, Inc.*, No. 3:09-cv-521, 2009 WL 4068454, at *2 (E.D. Va. Nov. 19, 2009); *see also, e.g.*, *Arnold ex rel. Arnold v. NHC Healthcare/Bristol, LLC*, No. 1:14-cv-00020, 2014 WL 2584664, at *2 (W.D. Va. June 10, 2014). Accordingly, this case cannot proceed in federal court unless Plaintiffs dismiss the John Doe defendants.

## CONCLUSION

For the foregoing reasons, all claims against Magpul and SureFire should be dismissed.

Dated: November 13, 2023

Respectfully submitted,

*/s/Michael Weitzner*
Michael Weitzner, VSB No. 45049
David H. Thompson
Brian W. Barnes
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
mweitzner@cooperkirk.com

*Counsel for Defendants Magpul Industries*
*Corp. and SureFire, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2023, a true and accurate copy of the foregoing was

filed with the Clerk and the Court and served on counsel of record using the CM/ECF system.

*/s/Michael Weitzner*
Michael Weitzner, VSB No. 45049

*Counsel for Defendants Magpul
Industries Corp. and SureFire, LLC*