# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

KAREN LOWY, individually and as parent
and next friend of N.T,

        *Plaintiff,*

    v.

DANIEL DEFENSE, LLC; FAB DEFENSE,
INC.; FAB MANUFACTURING & IMPORT
OF INDUSTRIAL EQUIPMENT LTD.;
BRAVO COMPANY USA, INC.; LOYAL 9
MANUFACTURING, LLC; FOSTECH, INC.;
HEARING PROTECTION, LLC;
CENTURION ARMS, LLC; MAGPUL
INDUSTRIES CORP.; FEDERAL
CARTRIDGE COMPANY; VISTA
OUTDOOR, INC.; FIOCCHI OF AMERICA,
INC.; FIOCCHI MUNIZIONI S.P.A.;
STARLINE, INC.; SUREFIRE, LLC;
TORKMAG, INC.; and JOHN DOES 1–20,

        *Defendants.*

Case No. 1:23-cv-01338

## DEFENDANT DANIEL DEFENSE, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STANDARD OF REVIEW .................................................................................. 2

    A.      Rule 12(b)(1)............................................................................................ 2

    B.      Rule 12(b)(6)............................................................................................ 3

III.    ARGUMENT ...................................................................................................... 3

    A.      Plaintiffs' Claims are Barred by the PLCAA. ......................................... 3

    B.      Plaintiffs Fail to Adequately Allege Article III Standing and the Complaint
        Must Be Dismissed for Lack of Subject Matter Jurisdiction. ................................ 5

    C.      The Complaint Fails, As A Matter of Law, To Meet the Requirements of
        Proximate Cause and Must Be Dismissed on Grounds of Remoteness. ................. 9

        1.      Proximate Cause is An Essential Element of Plaintiffs' Claims. ............... 9

        2.      Plaintiffs Fail to Plead Proximate Causation. ........................................... 10

    D.      The First Amendment Bars Plaintiffs' VFAS and VCPA Claims....................... 11

        1.      Plaintiffs' VFAS and VCPA Claims Are Content- and Viewpoint-
            Based. ..................................................................................................... 12

        2.      Plaintiffs' VFAS and VCPA Claims Fail Intermediate Scrutiny.............. 16

    E.      Plaintiffs' VFAS Claim Must Be Dismissed Because Plaintiffs Fail to
        Allege That Daniel Defense's Advertising is Deceptive or That Their
        Injuries Resulted from the Allegedly Deceptive Advertising............................... 17

    F.      Plaintiffs' VCPA Claim Fails as a Matter of Law Because They Cannot
        Allege First-Party Detrimental Reliance............................................................. 18

    G.      Plaintiffs' Negligence *Per Se* Claims Must Be Dismissed. ................................. 20

    H.      Plaintiffs' Negligence Claim Fails Because Daniel Defense Did Not Have
        Any Duty to Protect Plaintiffs from the Assailant's Criminal Acts...................... 22

IV.     CONCLUSION.................................................................................................. 23

# TABLE OF AUTHORITIES

Page

## CASES

*A.H. v. Rockingham Publ'g Co.*,
    255 Va. 216 (1998) ................................................................ 21, 22, 23

*Alvarez v. Becerra*,
    No. 21-2317, 2023 WL 2908819 (4th Cir. Apr. 12, 2023) ..................... 6

*Am. Demolition & Nuclear Decommissioning, Inc. v. IBCS Grp., Inc.*,
    21 F.Supp.3d 632 (W.D. Va. 2014) ........................................... 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................... 3, 5, 23

*Atkinson v. Scheer*,
    256 Va. 448 (1998) ........................................................... 10

*Balderson v. Robertson*,
    203 Va. 484 (1962) ........................................................... 10

*Ball v. Takeda Pharm. Am., Inc.*,
    963 F. Supp. 2d 497 (E.D. Va. 2013) ........................................ 8, 21

*Banks v. City of Richmond*,
    232 Va. 130 (1986) ........................................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................... 3, 21, 23

*Bennett v. Spear*,
    520 U.S. 154 (1997) .......................................................... 6, 8

*Bolger v. Youngs Drug Prods. Corp.*,
    463 U.S. 60 (1983) ........................................................... 11

*Boy Blue, Inc. v. Zomba Recording, LLC*,
    No. 3:09-CV-483, 2009 WL 2970794 (E.D. Va. Sept. 16, 2009) ............ 7

*Brandenburg v. Ohio*,
    395 U.S. 4447 (1969) ......................................................... 16

*Brown v. Entm't Merchants Ass'n*,
    564 U.S. 786 (2011) ........................................................ 7, 15

*Brown v. Jacobs*,
    289 Va. 209 (2015) ........................................................ 21, 22

*Brown v. Koulizakis*,
    229 Va. 524 (1985) ........................................................... 10

*Bryant v. Peckinpaugh*,
    241 Va. 172 (1991) ........................................................... 19

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
    447 U.S. 557 (1980) ........................................................... 16

*City of New York v. Beretta U.S.A. Corp.*,
    524 F.3d 384 (2d Cir. 2008) ................................................... 4

*Commonwealth ex rel. Herring v. Teva Pharms. USA, Inc.*,
    107 Va. Cir. 44, 2020 WL 12991889 (Nov. 13, 2020) ....................... 9

## TABLE OF AUTHORITIES
(continued)

Page

*Dana's R.R. Supply v. Att'y Gen., Fla.*,
807 F.3d 1235 (11th Cir. 2015) ............................................................. 11

*Digital Equipment Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994) ................................................................................ 4

*District of Columbia v. Heller*,
554 U.S. 570 (2008) .............................................................................. 14

*Doe v. Chao*,
540 U.S. 614 (2004) .............................................................................. 19

*Dorman v. State Industries, Inc.*,
292 Va. 111 (2016) ............................................................................... 10

*Episcopal Church in S.C. v. Church Ins. Co. of Vermont*,
997 F.3d 149 (4th Cir. 2021) ................................................................... 6

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
629 F.3d 387 (4th Cir. 2011) ................................................................... 5

*Galloway v. Priority Imports Richmond, LLC*,
426 F. Supp. 3d 236 (E.D. Va. 2019) ................................................... 19

*Greater Phila. Chamber of Com. v. City of Philadelphia*,
949 F.3d 116 (3d Cir. 2020) ................................................................. 11

*Griffin v. Dep't of Labor Fed. Credit Union*,
293 F. Supp. 3d 576 (E.D. Va. 2018) ..................................................... 2

*Henry v. R.K. Chevrolet, Inc.*,
219 Va. 1011 (1979) ............................................................................. 17

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992) ................................................................................ 9

*Hunter v. Bryant*,
502 U.S. 224 (1991) ................................................................................ 4

*Hustler Mag., Inc. v. Falwell*,
485 U.S. 46 (1988) ................................................................................ 12

*Iancu v. Brunetti*,
139 S. Ct. 2294 (2019) .................................................................... 13, 14

*Ileto v. Glock, Inc.*,
565 F.3d 1126 ......................................................................................... 4

*Int'l Outdoor, Inc. v. City of Troy*,
974 F.3d 690 (6th Cir. 2020) ................................................................. 11

*Kashdan v. George Mason University*,
70 F.4th 694 (4th Cir. 2023) ................................................................... 7

*Kellermann v. McDonough*,
278 Va. 478 (2009) ............................................................................... 10

*Kerns v. United States*,
585 F.3d 187 (4th Cir. 2009) ................................................................... 2

*Klaiber v. Freemason Assocs., Inc.*,
266 Va. 478 (2003) ................................................................................. 9

## TABLE OF AUTHORITIES
(continued)

**Page**

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ................................................................................................ 9

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................ 5, 6

*Matal v. Tam*,
    582 U.S. 218 (2017) ................................................................................ 12, 14, 15

*Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*,
    576 F.3d 172 (4th Cir. 2009) .............................................................................. 20

*McGuire v. Hodges*,
    273 Va. 199 (2007) ....................................................................................... 10, 21

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) .............................................................................................. 4

*N. A. A. C. P. v. Claiborne Hardware Co.*,
    458 U.S. 8867 (1982) ......................................................................................... 16

*Owens v. DRS Auto. Fantomworks, Inc.*,
    288 Va. 489 (2014) ......................................................................................... 9, 19

*Persaud Companies, Inc. v. IBCS Grp., Inc.*,
    425 F. App'x 223 (4th Cir. 2011) ......................................................................... 9

*R.A.V. v. City of St. Paul, Minn.*,
    505 U.S. 377 (1992) ............................................................................................ 13

*Reddy v. Litton Indus., Inc.*,
    912 F.2d 291 (9th Cir. 1990) .............................................................................. 20

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015) ............................................................................................ 12

*Rice v. Paladin Enterprises, Inc.*,
    128 F.3d 2333 (4th Cir. 1997) ............................................................................ 15

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
    515 U.S. 819 (1995) ............................................................................................ 11

*Simon v. Eastern Ky. Welfare Rights Organization*,
    426 US 26 (1976) ............................................................................................. 5, 7

*Snyder v. Phelps*,
    562 U.S. 443 (2011) ............................................................................................ 12

*Steward v. Holland Family Props., LLC*,
    284 Va. 282 (2012) ..................................................................................... 8, 20, 21

*Terry v. Irish Fleet, Inc.*,
    296 Va. 129 (2018) ............................................................................... 8, 10, 22, 23

*Texas v. Johnson*,
    491 U.S. 397 (1989) ............................................................................................ 14

*Turner v. Beneficial Corp.*,
    242 F.3d 1023 (11th Cir. 2001) .......................................................................... 19

*Tyler v. Commonwealth*,
    75 Va. App. 218 (2022) ......................................................................................... 9

## TABLE OF AUTHORITIES
(continued)

**Page**

*Uzuegbunam v. Precsewski,*
 141 S. Ct. 792 (2021) .................................................................................... 5

*Venkatraman v. REI Sys., Inc.,*
 417 F.3d 418 (4th Cir. 2005) ....................................................................... 3

*W. Virginia State Bd. of Educ. v. Barnette,*
 319 U.S. 624 (1943) .................................................................................... 14

*Warth v. Seldin,*
 422 U.S. 490 (1975) ...................................................................................... 2

*Weiss v. Cassidy Dev. Corp.,*
 63 Va. Cir. 76 (Fairfax Cnty. 2003) ......................................................... 18

## STATUTES

15 U.S.C. § 7901 ................................................................................................ 1

15 U.S.C. § 7901(b)(1) ....................................................................................... 4

15 U.S.C. § 7901(b)(4) ....................................................................................... 4

15 U.S.C. § 7902(a)–(b) ..................................................................................... 4

15 U.S.C. § 7903(2) ........................................................................................... 4

15 U.S.C. § 7903(4) ........................................................................................... 4

15 U.S.C. § 7903(5)(A) ...................................................................................... 4

15 U.S.C. § 7903(5)(A)(iii) ........................................................................... 4, 5

D.C. Code Ann. § 22-4505.02(b)(1) ................................................................. 6

Va. Code Ann. § 18.2-216 ............................................................................... 17

Va. Code Ann. § 22-4504.02(a)(2) ................................................................... 6

Va. Code Ann. § 59.1-200(A)(5) ..................................................................... 18

Va. Code Ann. § 59.1-200(A)(6) ..................................................................... 18

Va. Code Ann. § 59.1-204(A) ........................................................................... 9

Va. Code Ann. § 59.1-68.3 ......................................................................... 9, 17

## RULES

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 2

Fed. R. Civ. P. 12(b)(6) ......................................................................... 2, 3, 23

Fed. R. Civ. P. 12(h)(3) ..................................................................................... 2

## OTHER AUTHORITIES

151 Cong. Rec. E2164-02, 2005 WL 2756553 ................................................. 4

# I.     INTRODUCTION

On April 22, 2022, a deranged individual named Raymond Spencer (the "Assailant") barricaded himself in an apartment across from Edmond Burke School in Washington, D.C., and opened fire before ultimately taking his own life. Plaintiff Karen Lowy was repeatedly struck, causing serious but ultimately non-fatal injuries. Lowy's minor daughter, N.T., was inside the school when the shooting occurred and, thankfully, was not injured. Plaintiffs allege that at least three AR-15-style rifles, a handgun, spare magazines, and ammunition were recovered at the scene, all of which the Assailant purchased ***legally*** in the State of Virginia. Among the items allegedly recovered was a Daniel Defense DDM4 V7 rifle and Daniel Defense DD 32-round magazine.

Plaintiffs assert five claims for relief against Daniel Defense. Plaintiffs contend that Daniel Defense violated the Virginia False Advertising Statute ("VFAS") (Count I), Compl. [ECF No. 1], ¶¶ 148–54, and Virginia Consumer Protection Act ("VCPA") (Count XIV), *id.*, ¶¶ 239–47, by falsely, misleadingly, or deceptively advertising its products, which the Assailant allegedly relied upon and caused Plaintiffs' injuries. Plaintiffs further allege two counts of negligence *per se* for alleged violations of the National Firearms Act ("NFA") (Count XXVII), *id.*, ¶¶ 356–62, and the Virginia Uniform Machine Gun Act ("UMGA") (Count XXVIII), *id.*, ¶¶ 363–69, respectively. Finally, Plaintiffs allege that Daniel Defense was negligent in selling and marketing its products. *Id.*, ¶¶ 370–83 (Count XXIV). Each of these claims fails for multiple and independent reasons.

First, the Protection in Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 7901 *et seq.*, bars Plaintiffs' claims. Second, Plaintiffs cannot establish that their injuries are traceable to Daniel Defense's alleged wrongful conduct and therefore they lack Article III standing. The Assailant's heinous, criminal acts caused Plaintiffs' injuries, and Plaintiffs fail to demonstrate

any link between Daniel Defense's advertisements or other alleged wrongful acts and the Assailant's criminal conduct. <u>Third</u>, for the same reasons, Plaintiffs cannot establish proximate causation, which is a necessary element of each of their claims against Daniel Defense. <u>Fourth</u>, Plaintiffs' VFAS and VCPA claims are barred by the First Amendment and, further, the VFAS claim is not adequately pleaded. <u>Fifth</u>, Plaintiffs VCPA claim fails because Plaintiffs have not pleaded detrimental reliance, nor can they in view of their allegation that the Assailant—not Plaintiffs—relied on Daniel Defense's advertising. <u>Sixth</u>, Plaintiffs negligence *per se* claims fail because, among other deficiencies, Plaintiffs fail to identify the statutes that Daniel Defense allegedly violated with the requisite specificity. <u>Seventh</u>, Plaintiffs' negligence *per se* and negligence claims fail because Plaintiffs cannot establish any cognizable legal duty that Daniel Defense owed to them.

In view of these numerous and incurable defects, Daniel Defense respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

## II.      <u>STANDARD OF REVIEW</u>

### A.      **Rule 12(b)(1).**

A motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's jurisdiction over the subject matter of the complaint. In deciding a Rule 12(b)(1) challenge, courts apply "a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged" in the complaint. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). The action must be dismissed if the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Because standing is "the threshold question in every federal case, determining the power of the court to entertain the suit," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), courts generally address issues of standing before turning to the merits, *see, e.g.*, *Griffin v. Dep't of Labor Fed. Credit Union*, 293 F. Supp. 3d 576, 578 (E.D. Va. 2018), *aff'd*, 912 F.3d 649 (4th Cir. 2019).

**B.     Rule 12(b)(6).**

Under Rule 12(b)(6), a complaint must be dismissed when the allegations "fail[ ] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, courts accept the well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). Although a complaint "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" to avoid dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* (citations and footnote omitted). Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[ ] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). In sum, complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct." *Id.* at 679.

## III.     ARGUMENT

**A.     Plaintiffs' Claims are Barred by the PLCAA.**

Daniel Defense joins in the motions of its Co-Defendants to dismiss Plaintiffs' Complaint on the grounds that the PLCAA grants Defendants immunity from suit, not just liability, and bars Plaintiffs' claims.[1] Indeed, the PLCAA's express purpose is to "prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms . . . for the harm solely caused by the criminal or unlawful misuse of firearm[s] . . . by others when the product functioned as

---

[1] ECF No. 62 at 13–15; ECF No. 66 at 10–17; ECF No. 73 at 4–12; ECF No. 80 at 12–23; ECF No. 84 at 3–17.

designed and intended," and to "prevent the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce." 15 U.S.C. § 7901(b)(1), (4). Recognizing these lawsuits have ruinous financial consequences, Congress prohibited them from being "brought in any Federal or State court" and required that they "be immediately dismissed by the court." *Id.* § 7902(a)–(b); *see also, e.g.*, 151 Cong. Rec. E2164-02, E2164, 2005 WL 2756553.

This distinction—immunity from suit, rather than merely from liability—is not semantic. When addressing "immunity from suit rather than a mere defense to liability," courts "repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation," *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), because unlike a defense against liability, an immunity from suit would be "effectively lost if a case is erroneously permitted to go to trial," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). *See also Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 879 (1994). The PLCAA is an absolute bar in this case.

First, this is a "qualified civil liability action" under the PLCAA. *See* 15 U.S.C. § 7903(5)(A). Plaintiffs' claims seek to hold Daniel Defense liable as the "manufacturer" of the "qualified product[s]" the third-party Assailant criminally and unlawfully misused to inflict Plaintiffs' injuries. *See id.*, § 7903(2) ("manufacturer"), *id.*, § 7903(4) ("qualified product"). *Cf.* Compl., ¶¶ 152–54, 245–47, 360–62, 367–69, 380–83.

Second, the PLCAA's "predicate exception" does not preserve Plaintiffs' suit. 15 U.S.C. § 7903(5)(A)(iii). Most fundamental, Plaintiffs do not and cannot allege that Daniel Defense knowingly violated any State or Federal statute "applicable to the sale or marketing of the [qualified] product." *See, e.g.*, *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 402–03 (2d Cir. 2008) (Congress "consistently referred to firearms-specific statutes when discussing the scope of the predicate exception"); *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1136 (the predicate

exception encompasses only "statutes that regulate manufacturing, importing, selling, marketing, and using firearms or that regulate the firearms industry—rather than general tort theories that happened to have been codified"). Nor can Plaintiffs establish that any such alleged violation was "a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). As a matter of law, the Assailant's unlawful acts, which are numerous, break the causal chain of the "harm" the Assailant caused, allegedly using Daniel Defense's products.[2]

## B.   Plaintiffs Fail to Adequately Allege Article III Standing and the Complaint Must Be Dismissed for Lack of Subject Matter Jurisdiction.

To satisfy the case-or-controversy requirement of Article III, the party invoking federal jurisdiction must establish her standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). To meet the "irreducible constitutional minimum" requirements for standing, a party bringing a claim must establish three elements: (1) that the plaintiff has sustained an injury in fact; (2) that the injury traces to the defendants' actions; and (3) that a favorable judicial decision could likely redress the injury. *Uzuegbunam v. Precsewski*, 141 S. Ct. 792, 797 (2021); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011). Here, Plaintiffs have not established the second element.

The "'case or controversy' limitation of Art. III . . . requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v.*

---

[2] Plaintiffs fail to allege any facts to show the Assailant ***actually used*** the Daniel Defense products in the shooting. The fact that the Daniel Defense products were allegedly among other products that plausibly could have been used to inflict the same harm negates any inference that might otherwise be drawn from the mere presence of the Daniel Defense products at the scene. *See Iqbal*, 556 U.S. at 679 (complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct"). Accordingly, in the absence of additional supporting facts, this Court need not accept Plaintiffs' conclusory allegations that the Daniel Defense products "were used to harm" Plaintiffs. *See, e.g.*, Compl., ¶¶ 152 & 245.

*Eastern Ky. Welfare Rights Organization*, 426 US 26, 41–42 (1976). "[T]here must be a causal connection between the injury and the conduct complained of" by the plaintiff. *Lujan*, 504 U.S. at 560; *see also Episcopal Church in S.C. v. Church Ins. Co. of Vermont*, 997 F.3d 149, 158 (4th Cir. 2021) (plaintiff lacked Article III standing because "the causal connection between the alleged harm . . . and the challenged conduct . . . [was] too attenuated," rendering it "purely speculative"). Where, as here, multiple actors are involved, "a plaintiff can establish causation only if the defendant's conduct had a 'determinative or coercive effect upon the action of someone else.'" *Alvarez v. Becerra*, No. 21-2317, 2023 WL 2908819, at *3 (4th Cir. Apr. 12, 2023) (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). Thus, Plaintiffs had the burden of pleading facts sufficient to plausibly allege that Daniel Defense's conduct had a "determinative or coercive effect upon" the Assailant to cause him to perpetrate his multiple illegal and criminal acts. Plaintiffs have not met and cannot meet this burden.

There can be no question in the first instance that Plaintiffs' injuries resulted from the Assailant's criminal acts, including—as alleged—the illegal conversion of his (legal) Daniel Defense semi-automatic rifle into an automatic weapon, *see* Compl., ¶¶ 12, 103, 360, 367; the illegal transportation of firearms into the District of Columbia, *see id.*, ¶¶ 18 & 97;[3] and the criminal and heinous shooting that caused Plaintiffs' injuries, *see, e.g.*, *id.*, ¶¶ 2–3, & 126–28. Moreover, Plaintiffs' attempt to create a causal link to Daniel Defense's advertising utterly fails. Plaintiffs do not allege that the Assailant ever saw—let alone relied upon—the Daniel Defense

---

[3] *See also* Compl., ¶ 97 n.13. Plaintiffs cite D.C. Code Ann. § 22-4505.02(b)(1), the implication being that the Assailant transported the firearm illegally. More to the point is the preceding subsection of that statute, which prohibits a person from transporting a firearm unless the person, *inter alia*, "Is transporting the firearm for a lawful purpose from a place where the person may lawfully possess and carry the firearm to another place where the person may lawfully possess and carry the firearm[.]" *Id.* § 22-4504.02(a)(2). The Assailant was neither transporting the subject firearms for a "lawful purpose," nor could he lawfully possess and carry the firearms in D.C.

communications cited in the Complaint. Instead, they generically allege that Daniel Defense "advertised to Virginia residents such as the Shooter," *id.*, ¶¶ 149 & 240, and that, "upon information and belief," the Assailant "relied upon [Daniel Defense's] advertisements to purchase" Daniel Defense's products, *id.*, ¶ 243.

Although Plaintiffs proffer allegations regarding academic studies purporting to show that certain advertising imagery might arouse violent behaviors in young men generally, *see id.*, ¶¶ 104–115, there are no supported allegations concerning the Assailant specifically, nor any facts to demonstrate ***any*** connection between the Assailant's actions and Daniel Defense's speech. The Supreme Court and the Ninth Circuit have rejected similar attempts to create a causal link by relying on such highly generalized observations about the effects of violent imagery and firearm advertising on youths. *See Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 794–99 (2011) (rejecting as insufficient studies purporting to show a link between violent imagery and violent behaviors among youths); *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1119 (9th Cir. 2023) (rejecting a similar justification for restricting advertisements of firearm products to minors).

Plaintiffs' feeble causal chain is pure conjecture. Such threadbare allegations, devoid of any supporting facts, fall well short of showing that Daniel Defense's communications had any "determinative or coercive effect" on the Shooter that caused him to commit his numerous intervening criminal acts. *See Kashdan v. George Mason University*, 70 F.4th 694, 701–02 (4th Cir. 2023) (affirming dismissal of claim that was "devoid of facts supporting the allegations that were pleaded upon information and belief.").[4] *Cf. Simon*, 426 U.S. at 40–46 (causal connection

---

[4] While it may be appropriate to plead allegations upon "information and belief" when the substantiating facts are uniquely in a defendant's possession—that is not the case here, where any relevant facts were uniquely possessed by the Assailant, who is now deceased. *See e.g., Boy Blue,*

between the alleged harm and the challenged conduct was too attenuated); *Bennett*, 520 U.S. at 169–70 (actions have a "determinative or coercive effect" when the third party's conduct is "virtually pre-ordained").

Plaintiffs' negligence *per se* claims (premised on violations of the NFA and UMGA, respectively) are likewise unsubstantiated. *See* Compl., ¶¶ 356–69. Worse, they are contradicted by Plaintiffs' allegation that the Assailant "bought [his] weapons . . . legally in the state of Virginia." *Id.*, ¶ 12. Plaintiffs' admission that the subject firearms were purchased legally forecloses any claim that those firearms violated the NFA or UMGA. *See Steward v. Holland Family Props., LLC*, 284 Va. 282, 287 (2012) (negligence *per se* claim requires the plaintiff to show that the defendant engaged in acts that violated the statutory standard of care, i.e., violated the statute). Plaintiffs further fail to identify any cognizable legal duty that Daniel Defense owed or breached to support their claims for negligence *per se* or negligence. *See id.*, ¶¶ 356–83; *cf. Ball v. Takeda Pharm. Am., Inc.*, 963 F. Supp. 2d 497, 506–07 (E.D. Va. 2013), *aff'd,* 587 F. App'x 78 (4th Cir. 2014) (holding that to allege a negligence *per se* claim a plaintiff must identify "a specific statute or regulation violated by the defendant"); *Terry v. Irish Fleet, Inc.*, 296 Va. 129, 135–36 (2018) ("As a general rule, there is no duty to warn or protect against acts of criminal assault by third parties" because "under 'ordinary circumstances, acts of assaultive criminal behavior by third persons cannot reasonably be foreseen.'").

---

*Inc. v. Zomba Recording, LLC*, No. 3:09-CV-483, 2009 WL 2970794, at *2 (E.D. Va. Sept. 16, 2009) (collecting cases and explaining that pleading "upon information and belief" is generally permissible only when the "information is in the opposing party's possession").

**C.    The Complaint Fails, As A Matter of Law, To Meet the Requirements of Proximate Cause and Must Be Dismissed on Grounds of Remoteness.**

Proximate cause is an element of each of Plaintiffs' claims against Daniel Defense. But just as Plaintiffs failed to plead standing, they also fail to plead any facts to show that Daniel Defense's alleged conduct is the proximate cause of their injuries.

1.    Proximate Cause is An Essential Element of Plaintiffs' Claims.

The VFAS and VCPA both authorize civil claims by "[a]ny person who suffers loss ***as the result of*** a violation of" these statutes. Va. Code Ann. § 59.1-68.3 (VFAS) (emphasis added); *id.* § 59.1-204(A) (VCPA). Virginia courts consistently interpret the statutory phrase "as a result of" as imposing a proximate cause requirement. *See Tyler v. Commonwealth*, 75 Va. App. 218, 251 (2022) (Raphael, J., concurring) (examining cases); *see also Klaiber v. Freemason Assocs., Inc.*, 266 Va. 478, 486–87 (2003) (the VFAS requires that a plaintiff must "suffer[] loss" as a result of the alleged false advertisement in order to recover damages); *Persaud Companies, Inc. v. IBCS Grp., Inc.*, 425 F. App'x 223, 227 (4th Cir. 2011) (district court failed to consider whether the plaintiff "'suffered loss' as a result of the advertisement"); *Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 498 (2014) (VCPA requires first party, detrimental reliance); *Commonwealth ex rel. Herring v. Teva Pharms. USA, Inc.*, 107 Va. Cir. 44, 2020 WL 12991889, at *7 (Nov. 13, 2020) (similar). [5]

---

[5] Similarly, it is "generally presume[d]" under federal law "that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014) (citing cases); *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (interpreting similar standard for RICO claims).

Likewise, under Virginia law, proximate cause is an element of claims for negligence *per se* and negligence.[6] *McGuire v. Hodges*, 273 Va. 199, 206 (2007) (negligence per se); *Balderson v. Robertson*, 203 Va. 484, 487–88 (1962) (negligence).

2.      Plaintiffs Fail to Plead Proximate Causation.

"The proximate cause of an event is that act or omission which, in natural and continuing sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Kellermann v. McDonough*, 278 Va. 478, 493 (2009) (internal quotation marks and citations omitted). Under Virginia law, "the extraordinary manner in which harm occurs may prevent the primary actor's conduct from being the proximate cause of an event." *Banks v. City of Richmond*, 232 Va. 130, 137 (1986). Even if "the primary actor is the 'but for' cause of an injury, an action that is so highly extraordinary as to be unforeseeable may serve to cut off legal causation." *Dorman v. State Industries, Inc.,* 292 Va. 111, 122 (2016). Although issues of proximate causation ordinarily are questions of fact, the Court may decide this issue "when reasonable persons could not differ." *Atkinson v. Scheer*, 256 Va. 448, 453–54 (1998) (quoting *Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 285 (1989)).

As discussed, Plaintiffs fail to allege that the Assailant was exposed to any Daniel Defense Advertisement or that the content of any such advertisement caused him to commit his numerous criminal acts. *See* Compl., ¶¶ 163, 258, 261. Nor can they. The Assailant's criminal use of Daniel Defense's products was an unforeseeable independent intervening act "making it and it only the proximate cause of injury." *Dorman,* 292 Va. at 123. Thus, based on the facts alleged, the only legal cause of Plaintiffs' injuries was the shooter's criminal conduct. *See Terry*, 296 Va. at 135 ("[U]nder ordinary circumstances, acts of assaultive criminal behavior by third

---

[6] As discussed below, these claims also fail as a matter of law because Daniel Defense did not owe Plaintiffs any cognizable legal duty.

persons cannot reasonably be foreseen."). Indeed, the Assailant's act—a horrendous crime—is the epitome of a superseding cause. A mass shooting is not the expected or normal result of manufacturing, advertising, or selling any rifle, let alone a rifle virtually identical to those lawfully owned and used by millions of Americans. Rather, the Assailant unforeseeably opened fire on bystanders from an apartment using a stockpile of firearms that Plaintiffs allege he had legally obtained and then illegally converted to fire automatically and illegally transported into the District of Columbia. *See* Compl., ¶¶ 12, 18, 97, 103, 360, 367. The resulting harm was the product of the Assailant's intentional crime, for which he would have been criminally culpable had he not taken his own life.

**D.   The First Amendment Bars Plaintiffs' VFAS and VCPA Claims.**

Plaintiffs' VFAS and VCPA claims appear generic at first blush, because they ostensibly target commercial communications. Upon closer examination, however, they reach well beyond commercial speech—that which does "no more than propose a commercial transaction," *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)—instead targeting the ***ideas*** that Daniel Defense's speech promotes, not least its pro-Second Amendment viewpoint. *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995) ("Discrimination against speech because of its message is presumed to be unconstitutional."). This is presumptively unconstitutional, irrespective of whether the speech at issue is purely commercial. *See Greater Phila. Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 139 (3d Cir. 2020) (strict scrutiny may properly apply "to a restriction on commercial speech that is viewpoint-based"); *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 707–08 (6th Cir. 2020) (strict scrutiny applied to content-based restriction of commercial speech); *Dana's R.R. Supply v. Att'y Gen., Fla.*, 807 F.3d 1235, 1248 (11th Cir. 2015) ("[M]erely wrapping a law in the cloak of 'commercial speech' does not immunize it" from strict scrutiny when the discrimination is viewpoint-based). Even

assuming, *arguendo*, that intermediate commercial speech scrutiny applies, Plaintiffs claims cannot withstand it.

Consequently, these claims "cannot, consistent with the First Amendment, form a basis for the award of damages." *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 57 (1988) (IIED claim barred by First Amendment); *see also Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (similar).

      1.     <u>Plaintiffs' VFAS and VCPA Claims Are Content- and Viewpoint-Based.</u>

The First Amendment forbids laws that target "specific subject matter," known as content-based discrimination. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). "This category includes a subtype of laws that go further, aimed at the suppression of 'particular views . . . on a subject,'" *Matal v. Tam*, 582 U.S. 218, 248 (2017) (Kennedy, J., concurring), which "is a more blatant and egregious form of content discrimination," *Reed*, 576 U.S. at 168–69 (cleaned up). "[T]he test for viewpoint discrimination is whether—within the relevant subject category— the government has singled out a subset of messages for disfavor based on the views expressed." *Id.* at 248. A law that discriminates based on viewpoint is presumptively unconstitutional, even if it restricts only commercial speech. *Matal*, 582 U.S. at 251 (Kennedy, J., concurring).

Plaintiffs' strained attempt to create a link between Daniel Defense's communications and the Assailant's heinous criminal actions reveals their claims would, in effect, impose content- and viewpoint-based restrictions on Daniel Defense's protected speech. Plaintiffs' theory of liability is expressly premised on the content of Daniel Defense's speech—more specifically, the pro-Second Amendment viewpoint and related messages that Daniel Defense promotes. According to Plaintiffs, Daniel Defense is liable because, for example, it:

- Markets and promotes a "warrior mentality," Compl., ¶ 9;

- Uses "militaristic messaging and unrealistic concerns about combat" in its marketing, *id.* at pg. 13 (heading "b.");

- Emphasizes the "tactical nature" of its products, *id.*, ¶ 54;

- Promotes "military, patriotic, and law enforcement themes" and glorifies "military gun use," *id.*, ¶ 56; and

- Features "imagery of combat soldiers in the field of war, and men in military fatigues," which Plaintiffs claim encourage civilians "to reenact military-style exercises with Daniel Defense's weapons," *id.*, ¶ 57;[7]

- Promotes the ownership of firearms "as a means to secure an individual's safety when, in reality, Defendants know (or at least should know) that the presence of a firearm in a household increases the risk of danger to its occupants," *id.*, ¶ 75.

These allegations demonstrate that Plaintiffs' basis for damages is Daniel Defense's promotion of the ***idea*** that firearms—regardless of their style—are desirable and useful for self-defense and other lawful purposes. Plaintiffs' viewpoint bias has nothing to do with commerce. *See*, *e.g.*, *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299–30 (2019); *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992).[8] Instead, Plaintiffs seek to restrict Daniel Defense's speech solely because it promotes a pro-Second Amendment viewpoint: "the individual right to possess and

---

[7] It is not clear what Plaintiffs mean by "military-style exercises." The only reasonable inference from the facts alleged is that Plaintiffs mean to refer to firearms courses and training exercises designed to teach citizens how to use firearms safely and legally for self-defense.

[8] A through line of the commercial speech precedents is that regulations of pure commercial speech target content based on the "characteristics of commercial speech that justifies depriving it of full First Amendment protection." *R.A.V.*, 505 U.S. at 388. For instance, "a State may choose to regulate price advertising in one industry but not in others, because the risk of fraud (one of the characteristics of commercial speech that justifies depriving it of full First Amendment protection) is in its view greater there," but it may not "prohibit only that commercial advertising that depicts men in a demeaning fashion." *Id.* at 388–89 (cleaned up).

carry weapons in case of confrontation," *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), whether it be for the purpose of lawful self-defense or defense of the state, *see id.* at 584, 600–01 (the Second Amendment secures the existence of a "'citizens' militia' as a safeguard against tyranny").

Whatever Plaintiffs may think of the ideas that Daniel Defense allegedly promotes (the so-called "warrior mentality," civilian interest in the military, or firearms proficiency training), these messages and activities are inextricably intertwined with the lawful exercise of Second Amendment-protected rights. Indeed, because the Second Amendment guarantees the right to acquire, possess, and use firearms, such promotions utilizing images of firearms are inherently symbolic of a pro-Second Amendment viewpoint. Thus, all the images in the Complaint constitute fully-protected symbolic speech. *See, e.g.*, *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 632 (1943); *Texas v. Johnson*, 491 U.S. 397, 404 (1989).

Problematically, under Plaintiffs' theory, the law would "effectively remove[] one viewpoint from the public conversation over the proper role of firearms in our society, while leaving the opposite viewpoint free to participate." *Junior Sports Mag.*, 80 F.4th at 1123 (VanDyke, J., concurring). That is, as applied, the VFAS would not impose liability against the myriad speakers who *oppose* the purchase, use, and ownership of firearm-related products, or use military imagery to espouse anti-firearm or anti-patriotic points of view. Such differential treatment has nothing to do with commerce and plainly violates the First Amendment. *See Iancu*, 139 S. Ct. at 2299; *Matal*, 582 U.S. at 251 (Kennedy, J., concurring).

The military, law enforcement, and pro-Second Amendment themes that Plaintiffs single out are not constitutionally different than disparaging content, which the First Amendment protects. *See Matal*, 582 U.S. at 223 (plurality) ("Speech may not be banned on the ground that it

expresses ideas that offend."). This speech is also a "a subset of" firearms advertising that is "disfavor[ed] based on the views expressed." *Id.* at 248 (Kennedy, J., concurring). Equally important, the First Amendment prohibits the suppression of "***ideas*** expressed by speech— whether it be violence, or gore, or racism"—even "speech directed at children." *Brown*, 564 U.S. at 794–95, 799 (bold added). Therefore, Plaintiffs' allegations that Daniel Defense's speech is intended to appeal to youths and young adults do not insulate their claim from strict First Amendment scrutiny. *See, e.g.*, Compl., ¶¶ 77–80 (discussing Daniel Defense's alleged joint advertising with *Call of Duty* and suggesting that war-related video games encourage violence), ¶¶ 83–84, 104–115.

The Supreme Court's decision in *Brown* is instructive. There, the Court invalidated a California law that imposed restrictions on the sale of "violent video games" to minors, holding that, unlike obscenity or incitement, "violence" is not a category of unprotected speech. *Brown*, 564 U.S. at 791–93. In doing so, it specifically rejected California's argument that video games presented a special problem because they "enable participation in the violent action," thereby causing minors to behave more aggressively. *Id.* at 798–801. That correlative relationship, according to the Court, fell short of the "direct causal link" between the problem and the curtailment of protected speech that the First Amendment requires. *Id.*

The same is true here—Plaintiffs seek to restrict Daniel Defense's speech because the imagery it uses ***allegedly*** promotes violent ideas and behavior. *See* Compl., ¶¶ 78–80, 83–84, 104–115. This theory is based on the same flimsy justifications that the Court in *Brown* rejected. *Compare Brown*, 564 U.S. at 798–801, *with* Compl., ¶¶ 78–80, 83–84, 104–115 (alleging general effects of advertising and violent images on young men), 150, 241. What is more, even "abstract advocacy of lawlessness is protected speech under the First Amendment." *Rice v. Paladin*

*Enterprises, Inc.*, 128 F.3d 233, 243 (4th Cir. 1997); *see also N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982) ("[M]ere advocacy of the use of force or violence does not remove speech from the protection of the First Amendment."); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) ("[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."). Thus, although Daniel Defense unequivocally rejects the notion that its speech directly or indirectly promotes violence, liability cannot be imposed, consistent with the First Amendment, even for abstract advocacy of violence.

In sum, Plaintiffs' VFAS and VCPA claims rest on a constitutionally-impermissible premise. Plaintiffs seek to restrict Daniel Defense's speech based on its content and message, which the First Amendment flatly forbids.

    2.    <u>Plaintiffs' VFAS and VCPA Claims Fail Intermediate Scrutiny.</u>

Assuming, *arguendo*, that Plaintiffs' claims are  content-neutral restrictions of only commercial speech, Daniel Defense joins in Co-Defendants' arguments that Plaintiffs' VFAS and VCPA claims fail intermediate scrutiny under *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980).[9]

In this regard, the Ninth Circuit's recent decision in *Junior Sports Magazine* is on all fours with this case. There, the court held that California's restriction on advertising firearm-related products to minors was likely unconstitutional under *Central Hudson* because there was "no evidence connecting truthful and lawful firearm advertising to unlawful firearm possession or gun violence" among minors. 80 F.4th at 1119. And even if the "advertising restriction

---

[9] ECF No. 62 at 24–25; ECF No. 66 at 18–21; ECF No. 73 at 18–19; ECF No. 80 at 24–27; ECF No. 82 at 11–13.

significantly slashe[d] gun violence and unlawful use of firearms among minors," the court explained, "the law impose[d] an excessive burden on protected speech." *Id.*

Similarly, here, Plaintiffs fail to allege any facts plausibly demonstrating that any Daniel Defense advertisement is untrue, misleading, or deceptive. Nor could any reasonable person interpret Daniel Defense's advertising as promoting illegal activity. *Compare id.* at 1118–20, *with* Compl., ¶¶ 57, 77–81, 104–115, 150, 241–42. Plaintiffs' VFAS and VCPA claims would effectively impose a blanket restriction on firearm-product advertising. *See Junior Sports Mags.*, 80 F.4th at 1120. "A speech restriction of that scope is not constitutionally sound under any standard of review." *Id.*

**E.    Plaintiffs' VFAS Claim Must Be Dismissed Because Plaintiffs Fail to Allege That Daniel Defense's Advertising is Deceptive or That Their Injuries Resulted from the Allegedly Deceptive Advertising.**

The VFAS is a penal statute making it a misdemeanor to engage in false advertising. *See* Va. Code Ann. § 18.2-216(A). Section 59.1-68.3 of the Virginia Code, in turn, provides a civil cause of action for damages to "[a]ny person who suffers loss as the result of a violation of" the VFAS. *Id.* § 59.1-68.3 (emphasis added).[10] To plead a plausible claim under this statute, a plaintiff must allege facts sufficient to plausibly demonstrate the following four elements: (1) an advertisement; (2) intent to sell or induce the public to enter into an obligation; (3) untrue, misleading or deceptive information; and (4) that the plaintiff suffered a loss resulting from the advertisement. *Am. Demolition & Nuclear Decommissioning, Inc. v. IBCS Grp., Inc.*, 21 F.Supp.3d 632, 636 (W.D. Va. 2014). Assuming, *arguendo*, that Plaintiffs have pleaded

---

[10] Even in a case arising under Section 59.1-68.3, Section 18.2-216 is penal and "must be construed strictly." *Henry v. R.K. Chevrolet, Inc.*, 219 Va. 1011, 1014 (1979). "It 'cannot be extended by implication, or be made to embrace cases which are not within its letter and spirit.'" *Id.*

sufficient facts to satisfy the first two elements, they have not pleaded any facts to establish the third or fourth elements.

First, Plaintiffs fail to allege facts to show that any Daniel Defense advertisement in the Complaint was deceptive. As discussed, each of the alleged Daniel Defense advertisements promotes lawful, Second Amendment-protected products. Compl., ¶¶ 57, 79, 83–84. *Cf. Junior Sports Mags.*, 80 F.4th at 1116–17 (advertisements promoting firearms, even those that use images of minors to depict the use of firearm products, were not misleading and concerned lawful activities). Notwithstanding Plaintiffs' unsupported legal conclusion, there is nothing "deceptive" about Daniel Defense's use of military imagery, *see* Compl., ¶ 57, or its promotion of "advertisements that blend its violent weaponry with well-known pop culture references" and popular celebrities, *see id.*, ¶¶ 83–84.

Second, as discussed, Plaintiffs fail to adequately allege the Assailant relied on any Daniel Defense advertisement and, thus, they cannot satisfy the proximate cause element of their claim. *See* Section III.C., *supra*.

**F.     Plaintiffs' VCPA Claim Fails as a Matter of Law Because They Cannot Allege First-Party Detrimental Reliance.**

The VCPA prohibits enumerated "fraudulent acts or practices committed by a supplier in connection with a consumer transaction," including, as relevant here:  "Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits," Va. Code Ann. § 59.1-200(A)(5); and "Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model," *id.* § 59.1-200(A)(6). To state a claim for a violation of this statute, a "plaintiff must allege a fraudulent misrepresentation of fact." *Weiss v. Cassidy Dev. Corp.*, 63 Va. Cir. 76, 78 (2003). An allegation of a misrepresentation of fact, in turn, "must include the elements of fraud: a false representation, of material fact, made intentionally and

knowingly, with intent to mislead, reliance by the party misled, and resulting damage."
*Galloway v. Priority Imports Richmond, LLC*, 426 F. Supp. 3d 236, 244 (E.D. Va. 2019)
(cleaned up), *aff'd*, No. 20-1020, 2023 WL 1858387 (4th Cir. Feb. 9, 2023). And, as discussed,
only a "person who suffers loss as the result of a violation" is authorized to bring a claim for
actual damages. *Owens*, 288 Va. at 498.

      To that end, the Virginia Supreme Court has held that, in misrepresentation cases, the
VCPA requires proof of "reliance and resulting damages." *Id.* Put differently, first-party
detrimental reliance is a necessary element of a claim for actual damages under the VCPA. *See
id.* (because plaintiffs "offered no evidence of any loss they suffered from reliance upon" the
purported misrepresentations, their claim "failed to meet the requirements of [the VCPA]"); *see
also Doe v. Chao*, 540 U.S. 614, 620–23 (2004) (interpreting similar provision of the Federal
Privacy Act); *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1026–27 (11th Cir. 2001) (claim for
"actual damages sustained . . . as a result of" a Truth in Lending Act violation requires proof of
detrimental reliance (citing cases)).

      Here, as in *Owens*, Plaintiffs' VCPA claim fails because they do not allege any actual
damage or loss "as a result of" ***their*** reliance on the purported misrepresentations by Daniel
Defense.  Plaintiffs plainly did not participate in the relevant transaction, and there are no
allegations that they received, let alone relied upon, any of Daniel Defense's advertisements. *See*
Compl., ¶¶ 240–46. To the contrary, this claim is unambiguously predicated on the ***criminal,
non-party Assailant's*** alleged reliance on the at-issue advertisements.[11]  Compl., ¶¶ 243–44; *cf.
Owens*, 288 Va. 498; *Bryant v. Peckinpaugh*, 241 Va. 172, 175–76 (1991) (plaintiffs failed to

---

[11] As discussed, Plaintiffs fail to plead any facts supporting their allegation that, "on information
and belief," the Assailant relied on Daniel Defense's advertising. *See* note 4, *supra*, and
accompanying text.

prove that "they relied upon" the purportedly false misrepresentation). That is underscored by the allegation that Daniel Defense directed its advertisements at "Virginia residents such as the Shooter," Compl., ¶ 240—not Plaintiffs, who are residents of Maryland, *id.*, ¶ 22. Because Plaintiffs do not and cannot allege that they suffered any actual damages "as a result of" their detrimental reliance, Plaintiffs do not have a plausible VCPA claim against Daniel Defense.

Nor are there any facts "consistent with the challenged pleading" that could possibly cure these glaring deficiencies. *Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). To allege the requisite reliance, Plaintiffs would have to contradict the existing allegations that they did not rely on Daniel Defense's advertisements. Nor can Plaintiffs credibly plead that they relied on Daniel Defense's advertisements even if they saw them. Dismissal with prejudice is therefore warranted and appropriate. *See id.*; *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) (while a party may amend to allege "other facts consistent with the challenged pleading," she may not contradict prior allegations).

**G.**    **Plaintiffs' Negligence *Per Se* Claims Must Be Dismissed.**

"All negligence causes of action are based on allegations that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person." *Steward ex rel. Steward v. Holland Fam. Properties, LLC*, 284 Va. 282, 286 (2012). The standard of care, in turn, "may be established by the common law or by statute," though "a statute setting the standard of care does not create the duty of care." *Id.* (citing cases). When the "the standard of care is set by statute, an act which violates the statute is a *per se* violation of the standard of care." *Id.* at 287. To that end:

> A cause of action based on such a statutory violation is designated a negligence *per se* cause of action and requires a showing that [1] the tortfeasor had a duty of care to the plaintiff, [2] the standard of care for that duty was set by statute, [3] the tortfeasor engaged in acts that violated the standard of care set out in the statute, [4] the statute was enacted for public health and safety reasons, [5] the plaintiff was a

member of the class protected by the statute, [6] the injury was of the sort intended to be covered by the statute, and [7] the violation of the statute was a proximate cause of the injury.

*Id.* (citing *McGuire v. Hodges*, 273 Va. 199, 206 (2007)). Importantly, the plaintiff "must identify a specific statute or regulation violated by the defendant." *Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 506 (E.D. Va. 2013).

Plaintiffs' negligence *per se* claims fail for at least three reasons: (1) Plaintiffs fail to identify a specific statute or regulation that Daniel Defense violated; (2) Plaintiffs cannot establish that Daniel Defense owed them a legal duty; and (3) Plaintiffs cannot establish that the violation of the statutes was a proximate cause of their injuries.

First, although Plaintiffs identify the NFA and UMGA, respectively, as the basis for their negligence *per se* claims, they fail to identify the specific statutory provisions that Daniel Defense allegedly violated. "In a negligence *per se* claim, a plaintiff may not throw the kitchen sink of statutes and regulations at a defendant in the hope that someone will eventually figure out the particular statute or regulation the defendant violated." *Id.* at 507 (citing *Twombly*, 550 U.S. at 558 ("[A] district court must retain power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."). In any event, as Plaintiffs implicitly acknowledge, Daniel Defense's rifles are ***legal, semi-automatic rifles***—not fully automatic machine guns. *See* Compl., ¶ 12. To the extent the firearms were illegal, the Assailant illegally converted them to fire automatically *after* purchase. *See id.*, ¶¶ 103, 360, 368.

Second, as discussed in the subsequent section, under Virginia law there generally is no duty to "another from the criminal acts of a third person." *Brown v. Jacobs*, 289 Va. 209, 215 (2015). In cases such as this, a plaintiff must therefore establish either a special relationship with the defendant or that the defendant undertook a duty voluntarily. *A.H. v. Rockingham Publ'g Co.*,

255 Va. 216, 220 (1998); *Terry*, 296 Va. at 136. Plaintiffs have not pleaded facts to establish either of those requirements.

Third, as discussed, Plaintiffs cannot show that Daniel Defense's alleged violations of the NFA or UMGA are the proximate cause of their injuries. To the contrary, Plaintiffs specifically allege that the Assailant purchased his Daniel Defense firearm *legally*, Compl., ¶ 12, then illegally converted it to fire automatically, *id.*, ¶¶ 103, 360, 368. There simply is no causal connection between Daniel Defense's alleged statutory violations and Plaintiffs' injuries.

**H.     Plaintiffs' Negligence Claim Fails Because Daniel Defense Did Not Have Any Duty to Protect Plaintiffs from the Assailant's Criminal Acts.**

"To plead a cause of action for negligence, a plaintiff must allege a legal duty, a violation of that duty and resulting damage." *Brown*, 289 Va. at 215 (cleaned up). Under Virginia law, there generally is no duty "to warn or protect another from the criminal acts of a third person." *Id.* Because "acts of assaultive criminal behavior by third persons cannot reasonably be foreseen" under ordinary circumstances, *A.H.*, 255 Va. at 222, "[b]efore any duty can arise with regard to the conduct of third persons, there must be a special relationship between the defendant and either the plaintiff or the third person," *id.* at 220. A special relationship is generally a "threshold requirement." *Terry*, 296 Va. at 136. "Examples of such a relationship between a defendant and a plaintiff include common carrier-passenger, business proprietor-invitee, and innkeeper-guest." *Id.* The only other circumstance where a defendant "may owe a duty to protect against an act of criminal assault by a third party [is] where the defendant voluntarily undertook such duty by expressly communicating his intention to do so." *Id.* Neither of these circumstances is present here.

Plaintiffs do not allege that Daniel Defense was in a special relationship with Plaintiffs, nor do they allege that Daniel Defense voluntarily undertook a duty to protect Plaintiffs from the

Assailant's criminal assault. Instead, Plaintiffs allege only that Daniel Defense had a "general duty . . . not to expose others to reasonably foreseeable risks of injury," Compl., ¶¶ 371, 373, and to exercise reasonable care in the marketing of its products, *see id.*, ¶¶ 375, 377. These allegations, however, are squarely foreclosed under Virginia law, which does not recognize a general duty to protect against the criminal acts of third parties. *A.H.*, 255 Va. at 220; *Terry*, 296 Va. at 136.

Further, for the reasons discussed in the preceding sections—specifically, that generalized statistics about the effects of advertising are insufficient to create a causal connection with acts of violence, and the absence of any sufficient allegation that the Assailant relied on Daniel Defense's marketing—Plaintiffs' allegations that the Assailant's conduct was reasonably foreseeable are mere legal conclusions, which are insufficient to withstand a Rule 12(b)(6) motion. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678–79.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Daniel Defense respectfully requests that the Court dismiss Counts I, XIV, XXVII, XXVIII, and XXIV with prejudice, as well as grant any other relief the Court deems just and proper.

Dated: November 16, 2023

DANIEL DEFENSE, LLC


By:/s/David V. Bowen
    David C. Bowen (26771)
    WILCOX SAVAGE
    440 Monticello Ave., Suite 2200
    Norfolk, Virginia 23510
    Telephone:  757.628.5500
    Facsimile:    757-628-5566
    dbowen@wilsav.com

    Scott L. Braum*
    BRAUM RUDD
    812 East Franklin St.
    Dayton, Ohio 45459
    Telephone:  937.396.0089
    Facsimile:    937.396.1046
    slb@braumlaw.com

    V.R. Bohman*
    Cameron J. Schlagel*
    SNELL & WILMER, LLP
    3883 Howard Hughes Parkway, Suite 1100
    Las Vegas, Nevada  89169
    Telephone:  702.784.5200
    Facsimile:    702.784.5252
    600 Anton Blvd, Suite 1400
    Costa Mesa, California  92626-7689
    Telephone:  714.427.7000
    Facsimile:    714.427.7799
    vbohman@swlaw.com
    cschlagel@swlaw.com

    *Attorneys for Defendant*
    *Daniel Defense, LLC*

    *\* Pro hac vice applications forthcoming*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

Dated: November  16, 2023

*/s/ David C. Bowen*
_____