**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| KAREN LOWY, individually and as parent and next of friend of N.T.*,* <br><br>     *Plaintiffs,* <br><br>     *v.* <br><br> DANIEL DEFENSE, LLC, et al., <br><br>     *Defendants.* | Case No. 1:23-cv-01338-CMH-IDD <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT FIOCCHI OF AMERICA, INC.'S MOTION TO DISMISS** |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................... 1

FACTUAL BACKGROUND........................................................................................................... 2

LEGAL STANDARD ....................................................................................................................... 3

ARGUMENT..................................................................................................................................... 4

I.    THIS COURT HAS PERSONAL JURISDICTION OVER FIOCCHI. ...................... 4

II.   PLAINTIFFS HAVE ARTICLE III STANDING. .......................................................... 5

III.  PLCAA DOES NOT BAR PLAINTIFFS' ACTION, WHICH QUALIFIES FOR THE PREDICATE EXCEPTION.................................................................................... 8

IV.   PLAINTIFFS HAVE SUFFICIENTLY ALLEGED EACH OF THEIR CLAIMS. 13

    A.    Plaintiffs Have Statutory Standing Under The VFAS And VCPA. ................ 13

    B.    Plaintiffs Have Stated A Claim For Relief Under The VFAS.......................... 15

        1.    Defendant's Marketing Practices Are Reckless, Deceptive, and Misleading.................................................................................................... 15

        2.    The VFAS Contains No additional "Reliance" or Proximate Cause Requirement................................................................................................ 16

    C.    Plaintiffs Have Stated A Claim For Relief Under The VCPA. ........................ 17

        1.    Plaintiffs Have Alleged A Consumer Transaction............................... 17

        2.    Plaintiffs Have Alleged Reliance............................................................. 19

        3.    Plaintiffs Have Alleged Fraudulent Acts Under Rule 9(b).................. 21

V.    THE FIRST AMENDMENT DOES NOT BAR PLAINTIFFS' CLAIMS. ............... 22

CONCLUSION ............................................................................................................................... 26

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aarow Elec. Sols. v. Tricore Sys., LLC*,
  __F. Supp. 3d __, 2023 WL 6161897 (D. Md. Sept. 21, 2023)...................................................6

*Aitken v. Commc'ns Workers of America*,
  496 F. Supp. 2d 653 (E.D. Va. 2007) ....................................................................................22

*Alexander v. Se. Wholesale Corp.*,
  978 F. Supp. 2d 615 (E.D. Va. 2013) ....................................................................................18

*Am. Acad. of Pain Mgmt. v. Joseph*,
  353 F.3d 1099 (9th Cir. 2004) ...............................................................................................25

*Am. Demolition & Nuclear Decommissioning, Inc. v. IBCS Grp., Inc.*,
  21 F. Supp. 3d 632 (W.D. Va. 2014) .....................................................................................15

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
  823 F.3d 51 (2d Cir. 2016)......................................................................................................24

*Baker v. Elam*,
  883 F. Supp. 2d 576 (E.D. Va. 2012) ....................................................................................19

*Ballagh v. Fauber Enter., Inc.*,
  290 Va. 120 (2015) ...........................................................................................................14, 17

*BHR Recovery Communities, Inc. v. Top Seek, LLC*,
  355 F. Supp. 3d 416 (E.D. Va. 2018) ....................................................................................16

*Bindra v. Michael Bowman & Assocs., Inc.*,
  2001 WL 1829999 (Va. Cir. Sept. 19, 2001)..........................................................................19

*Blount v. Greenbrier Pontiac Oldsmobile-GMC Trucks Kia, Inc.*,
  2009 WL 2431587 (E.D. Va. Aug. 7, 2009)...........................................................................18

*Brady v. Walmart, Inc.*,
  2022 WL 2987078 (D. Md. July 28, 2022).......................................................................10, 11

*Branin v. TMC Enterprises, LLC*,
  832 F. Supp. 2d 646 (W.D. Va. 2011) ...................................................................................18

*Brown v. Transurban USA, Inc.*,
  144 F. Supp. 3d 809 (E.D. Va. 2015) ....................................................................................21

ii

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 557 (1980)................................................................................................22

*CGM, LLC v. BellSouth Telecommunications, Inc.*,
664 F.3d 46 (4th Cir. 2011) ....................................................................................14

*City of New York v. Beretta U.S.A. Corp.*,
524 F.3d 384 (2d Cir. 2008)....................................................................................12

*City of Virginia Beach, Va. v. Roanoke River Basin Ass'n*,
776 F.2d 484 (4th Cir. 1985) ....................................................................................4

*Clark v. Bank of Am., N.A.*,
2020 WL 902457 (D. Md. Feb. 24, 2020) ..............................................................10

*Cooper Indus., Inc. v. Melendez*,
260 Va. 578 (2000) .................................................................................................17

*Corporan v. Wal-Mart Stores E., LP*,
2016 WL 3881341 (D. Kan. July 18, 2016) .............................................................9

*Cristler v. U.S. through U.S. Dep't of Agriculture*,
2008 WL 11348475 (D. Mont. Aug. 26, 2008) ......................................................10

*Dep't of Com. v. New York*,
139 S. Ct. 2551 (2019)..............................................................................................7

*Design Res., Inc. v. Leather Indus. of Am.*,
900 F. Supp. 2d 612 (M.D.N.C. 2012) ...................................................................24

*DiCocco v. Garland*,
52 F.4th 588 (4th Cir. 2022) .....................................................................................6

*ePlus Tech., Inc. v. Aboud*,
313 F.3d 166 (4th Cir. 2002) ....................................................................................5

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*,
633 F. Supp. 3d 425 (D. Mass. 2022) .......................................................................7

*First Resort, Inc. v. Herrera*,
860 F.3d 1263 (9th Cir. 2017) ..........................................................................22, 25

*Garcia v. Volkswagen Grp. of Am., Inc.*,
2019 WL 13251303 (E.D. Va. Dec. 23, 2019) .........................................................5

*Genzyme Corp. v. Shire Hum. Genetic Therapies, Inc.*,
906 F. Supp. 2d 9 (D. Mass. 2012) .........................................................................24

*Greater Phila. Chamber of Com. v. City of Philadelphia*,
  949 F.3d 116 (3d Cir. 2020)....................................................................................22

*Gustafson v. Springfield, Inc.*,
  282 A.3d 739 (Pa. Super. Ct. 2022) (en banc), *appeal pending*, No. 7 WAP
  2023 (Pa. 2023) ........................................................................................................8

*Hartford Cas. Ins. Co. v. JR Marketing, LLC*,
  511 F. Supp. 2d 644 (E.D. Va. 2007) .......................................................................4

*Hesse v. Godiva Chocolatier, Inc.*,
  463 F. Supp. 3d 453 (S.D.N.Y. 2020)......................................................................24

*Hiramanek v. Clark*,
  2016 WL 4729182 (N.D. Cal. Sept. 12, 2016) ........................................................10

*Ileto v. Glock, Inc.*,
  565 F.3d 1126 (9th Cir. 2009) .................................................................................12

*John G. Kolbe, Inc. v. Chromodern Chair Co.*,
  211 Va. 736 (1971) ................................................................................................4, 5

*Junior Sports Magazines, Inc. v. Bonta*,
  80 F.4th 1109 (9th Cir. 2023) .............................................................................23, 24

*Kashdan v. George Mason Univ.*,
  70 F.4th 694 (4th Cir. 2023) ...................................................................................20

*Kerns v. United States*,
  585 F.3d 187 (4th Cir. 2009) .....................................................................................3

*Kieft v. Becker*,
  2002 WL 481249 (Va. Cir. 2002)........................................................................17, 18

*King v. Klocek*,
  187 A.D.3d 1614 (N.Y. App. Div. 2020) ..................................................................9

*Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne,
  LLC*,
  713 F.3d 187 (4th Cir. 2013) .....................................................................................7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014).............................................................................................6, 13

*Libertarian Party of Va. v. Judd*,
  718 F.3d 308 (4th Cir. 2013) .....................................................................................7

iv

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)......................................................................................................6

*Malcolm v. Esposito*,
  2003 WL 23272406 (Va. Cir. 2003).............................................................................5

*Mass. Ass'n of Priv. Career Schools v. Healey*,
  159 F. Supp. 3d 173 (D. Mass. 2016) .........................................................................25

*U.S. ex rel. May v. Purdue Pharma L.P.*,
  737 F.3d 908 (4th Cir. 2013) .......................................................................................2

*Merriman* v. *Auto Excellence, Inc.*,
  2001 WL 1763982 (Va. Cir. 2001)...............................................................................18

*MJM Yachts, LLC v. Ram Invs. of S. Fla., Inc.*,
  2021 WL 2418462 (D.S.C. June 11, 2021)...................................................................5

*My Pillow, Inc. v. LMP Worldwide, Inc.*,
  2019 WL 6727298 (D. Minn. Dec. 11, 2019)...............................................................7

*Owens v. DRS Auto. Fantomworks, Inc.*,
  288 Va. 489 (2014) .......................................................................................................18

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011) .......................................................................................20

*Pittsburgh Press Co. v. Human Relations Comm'n*,
  413 U.S. 376 (1973)......................................................................................................22

*Prescott v. Slide Fire Sols., LP*,
  410 F. Supp. 3d 1123 (D. Nev. 2019)...........................................................................13

*Providence Vill. Townhouse Condo. Ass'n v. Amurcon-Loudoun Corp.*,
  1994 WL 1031006 (Va. Cir. 1994)...............................................................................18

*Ransom v. FIA Card Servs., N.A.*,
  562 U.S. 61 (2011)........................................................................................................10

*Recht v. Morrisey*,
  32 F.4th 398 (4th Cir. 2022) ...........................................................................22, 24, 25

*Remington Arms Co., LLC v. Soto*,
  140 S. Ct. 513 (2019)....................................................................................................8

*Retail Digital Network, LLC v. Prieto*,
  861 F.3d 839 (9th Cir. 2017) .......................................................................................24

*Robertson v. Sea Pines Real Est. Co.*,
  679 F.3d 278 (4th Cir. 2012) ...................................................................................................3

*Russo v. United States*,
  37 F. Supp.2d 450 (E.D. Va. 1999) .......................................................................................17

*Schmidt v. Experian Info. Sols., Inc.*,
  2020 WL 7680548 (E.D. Va. Nov. 13, 2020).........................................................................21

*Sierra Club v. U.S. Dep't of Interior*,
  899 F.3d 260 (4th Cir. 2018) ...................................................................................................7

*Smith & Wesson Corp. v. City of Gary*,
  875 N.E.2d 422 (Ind. Ct. App. 2007).....................................................................................10

*Sorrell v. IMS Health, Inc.*,
  564 U.S. 552 (2011)................................................................................................................23

*Speer v. Kellam*,
  204 Va. 893 (1964) .................................................................................................................17

*Tobey v. Jones*,
  706 F.3d 379 (4th Cir. 2013) ...................................................................................................3

*Trans-Radial Sols., LLC v. Burlington Med., LLC*,
  2019 WL 3557879 (E.D. Va. Aug. 5, 2019)...........................................................................19

*Tredegar Film Prod. Corp. v. Aplix, Inc.*,
  2009 WL 10690321 (E.D. Va. June 16, 2009) .........................................................................4

*Valle Del Sol Inc. v. Whiting*,
  709 F.3d 808 (9th Cir. 2013) .................................................................................................25

*Vaughn v. Perea*,
  2021 WL 5879176 (4th Cir. Dec. 13, 2021) ............................................................................6

*Virginia Beach Rehab Specialists, Inc. v. Augustine Med., Inc.*,
  2002 WL 31431490 (Va. Cir. 2002).......................................................................................18

*Virginia Panel Corp. v. Mac Panel Co.*,
  1996 WL 335381 (W.D. Va. May 29, 1996)..........................................................................14

*Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976)................................................................................................................23

*Wall & Assocs., Inc. v. Better Bus. Bureau of Cent. Virginia, Inc.*,
  685 F. App'x 277 (4th Cir. 2017) ...........................................................................................14

*Williams v. Beemiller, Inc.*,
   100 A.D.3d 143 (N.Y. App. Div. 2012) ..............................................................9, 11

*Williams v. Kincaid*,
   45 F.4th 759 (4th Cir. 2022) .........................................................................................3

*Wynn's Extended Care, Inc. v. Bradley*,
   619 F. App'x 216 (4th Cir. 2015) ...............................................................................21

**Statutes**

Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7901, *et seq.* ............................ *passim*

Va. Code Ann. § 8.01–328.1...................................................................................................4

Va. Code Ann. § 18.2–216..............................................................................................11, 15

Va. Code Ann. § 59.1–198..............................................................................................11, 17

Va. Code Ann. § 59.1–68.36.................................................................................................14

Va. Code Ann. § 59.1–197....................................................................................................21

Va. Code Ann. § 59.1–200....................................................................................................17

Va. Code Ann. § 59.1–204(A)....................................................................................14, 17, 18

**Other Authorities**

U.S. Const. amend I ...................................................................................................... *passim*

Fed. R. Civ. P. 2.....................................................................................................................9

Fed. R. Civ. P. 9(b) ..........................................................................................................20, 21

Fed. R. Civ. P. 12(b)(2)...........................................................................................................4

Fed. R. Civ. P. 12(b)(6)...........................................................................................................3

Local Rule 7(F)(3) ................................................................................................................10

## PRELIMINARY STATEMENT

Plaintiff Karen Lowy was gunned down in a school pick-up line by a lone sniper, barricaded in a sniper's lair equipped with weapons and gear of war designed for use on a battlefield—not in an apartment in the District, on a hunting trip, or even at a shooting range. Ms. Lowy was brought back from death only by the heroism of her medical team. As this was happening, her daughter N.T. was huddled in fear at the Edmund Burke School hoping to escape unharmed and wondering where her mother was and whether she was safe. N.T. and the rest of her family would not get those answers for hours. And when they did, the news was tragic.

Now, Fiocchi of America, Inc. ("Fiocchi" or "Defendant") says, "not our fault." But it is very much its fault. And certainly at this early stage, it is too soon for any court to decide that this Defendant cannot *possibly* be held accountable. That is because the Shooter here did exactly as Defendant encouraged in its marketing and advertising. He purchased Fiocchi's ammunition and then used it to maximize the firepower in his attack, just as Fiocchi told him he could. And Fiocchi continued its illegal marketing practices despite knowing that over and over again ordinary American citizens doing tasks that should bring them joy, not fear of death—like picking up a child from school, attending religious services, or watching a holiday parade—are being maimed or slaughtered in ways that mirror its advertising's imagery and messaging. Fiocchi has nevertheless taken no steps to modify its messaging or minimize the likelihood that individuals like the Shooter will use its products to commit mass murder. If anything, Fiocchi has doubled down on its marketing tactics to increase profits.

Defendant cannot continue to arm and condition impressionable young men like the Shooter yet feign surprise when they act in ways that mirror its marketing or say, "but we didn't pull the trigger." Defendant must answer for its conduct in a court of law just like any other seller

1

does when their product foreseeably causes serious injury.[1]

**FACTUAL BACKGROUND**

Plaintiff Karen Lowy was shot and critically injured in a sniper-style attack executed with an arsenal comprised of Defendants' products at the Edmund Burke School in Northwest Washington, D.C. on April, 22, 2022 (the "Shooting"). Compl. ¶¶ 1, 3, 18, 20. Her young daughter, N.T., was barricaded from the barrage of bullets inside the school—unable to reach her mother and left wondering for hours whether she was alive. *Id.* ¶¶ 4, 135–36. Ms. Lowy's heart stopped twice that day. *Id.* ¶ 129. She survived only because of successful interventions from emergency medical teams. *Id.* To this day, Plaintiffs continue to suffer effects of the Shooting on a daily basis and need ongoing medical care. *Id.* ¶¶ 141–47.

The Shooting and its continuing effects on Plaintiffs are the foreseeable and predictable results of events set into motion by Fiocchi's unfair and deceptive marketing of its ammunition and its disregard for applicable laws. *Id.* ¶¶ 6–9. The young man who executed the Shooting is, of course, not the first to commit a mass shooting. But rather than reconsider its practices in light of these repeated tragedies by the same demographic, Defendant has doubled down on its incendiary and deceptive marketing because those practices increase sales. *Id.* ¶¶ 8–9. With full knowledge of its role in facilitating these mass shootings, Defendant continues to intentionally and recklessly advertise, market, and sell a warrior-like mentality that young men like the Shooter, who live-streamed the Shooting, fantasize will make them legendary in the eyes of others like them. *Id.* ¶¶ 9–10.

---

[1] If this Court finds that Plaintiffs have not alleged sufficient facts to state their claims, Plaintiffs respectfully request leave to amend their Complaint. *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 920 (4th Cir. 2013) ("Leave to amend a complaint should generally be freely granted" unless amendment "would be futile or otherwise improper").

Defendant publishes ads designed to stoke fear of the government and consumers' fellow civilians to promote sales of its products. For example, Fiocchi has invoked the threat of an apocalyptic future to tell consumers that they will be better off by stockpiling ammunition. *Id.* ¶ 72. And in seeking to expand its consumer base to children, Fiocchi advises its market to "[s]tart[] them" and "[t]each them young!" *Id.* ¶ 86

## **LEGAL STANDARD**

"A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiffs are not required "to prove [their] case in the complaint," *Robertson v. Sea Pines Real Est. Co.*, 679 F.3d 278, 291 (4th Cir. 2012), and instead must merely plead facts that when accepted as true state a plausible claim to relief. *Williams v. Kincaid*, 45 F.4th 759, 765 (4th Cir. 2022); *see also Robertson*, 679 F.3d at 291 ("[t]he requirement of nonconclusory factual detail at the pleading stage is tempered by the recognition that a plaintiff may only have so much information[2] at [her] disposal at the outset").[3] Importantly, a Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray*, 948 F.3d at 226 (internal quotation and citation omitted). Courts reviewing motions to dismiss "must draw all reasonable inferences in favor of the plaintiff[s]." *Williams*, 45 F.4th at 765 (internal quotation and citation omitted); *see also Kerns v. United States*,

---

[2] Plaintiffs have diligently pursued information about the Shooting through Freedom of Information Act requests sent to multiple agencies in summer 2022. That process has been frustratingly slow due to claims—subject to litigation—that much of the material in question is shielded from disclosure by one or more exemptions. Plaintiffs expect the ultimate production of that material will provide further evidence to support the Complaint's well-pleaded allegations.
[3] Although it is not necessary for Plaintiffs' Complaint to "forecast" the additional evidence that will likely support their claims, *Robertson*, 679 F.3d at 291, discovery likely will uncover additional examples of Defendant's deceptive and misleading advertising. *See* Compl. ¶¶ 213, 322 (explaining that Plaintiffs' claims are not limited to the cited advertising).

585 F.3d 187, 192 (4th Cir. 2009) (providing "same procedural protection" to 12(b)(1) motion).

## ARGUMENT

Defendant's arguments for dismissal uniformly lack merit. *First*, this Court has specific personal jurisdiction over Fiocchi and Plaintiffs have plausibly pled that Defendant's unlawful conduct injured Plaintiffs under Article III. *Second*, Defendant's attempt to expand the Protection of Lawful Commerce in Arms Act ("PLCAA") has no basis in the statute's text or legislative history. *Third*, Defendant's argument that Plaintiffs have not adequately pled their Virginia False Advertising Statute ("VFAS") and Virginia Consumer Protection Statute ("VCPA") claims rests on conclusory pronouncements that are contrary to the demand that the Court accept Plaintiffs' version of the facts at this stage. *Finally*, the First Amendment does not apply to (much less bar) Plaintiffs' claims.

### I.    THIS COURT HAS PERSONAL JURISDICTION OVER FIOCCHI.

Plaintiffs have satisfied their burden to make a *prima facie* showing of personal jurisdiction at this stage, when the Court must take the allegations in the light most favorable to Plaintiffs and "draw[] the most favorable inferences for the existence of jurisdiction." *Tredegar Film Prod. Corp. v. Aplix, Inc.*, 2009 WL 10690321, at *4 (E.D. Va. June 16, 2009). *See also Hartford Cas. Ins. Co. v. JR Marketing, LLC*, 511 F. Supp. 2d 644, 647 (E.D. Va. 2007) (when personal jurisdiction is challenged under Rule 12(b)(2), a plaintiff need only make a prima facie showing that jurisdiction exists).

Virginia's long arm statute provides for specific personal jurisdiction over a cause of action arising from a defendant's "[t]ransacting any business in the Commonwealth." Va. Code Ann. § 8.01-328.1. This is "a single act statute requiring only one transaction in Virginia to confer jurisdiction," *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 740, so long as that act "gives rise to" the cause of action at issue. *City of Virginia Beach, Va. v. Roanoke River Basin*

4

*Ass'n*, 776 F.2d 484, 487 (4th Cir. 1985). Virginia's long-arm statute also "extends the jurisdiction of its courts as far as federal due process permits," such that the "statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002).

Here, Plaintiffs allege that the Shooter, who resided in Virginia for years prior to the Shooting, purchased Fiocchi of America's ammunition in Virginia and then stockpiled that ammunition in his Virginia apartment. Compl. ¶¶ 11, 13, 20, 42, 108, 122. The Shooter's purchase(s) of Fiocchi of America's ammunition in Virginia form the basis of the claims under the VFAS and VCPA. *Id.* ¶¶ 212, 214, 321, 324. These allegations are plainly sufficient to confer specific personal jurisdiction over Fiocchi of America, which neither cites any authority to the contrary nor disputes that it sold ammunition to the Shooter in Virginia.[4] Fiocchi Memo. ISO Motion to Dismiss, ECF No. 97 at 11–13; *see also Malcolm v. Esposito*, 2003 WL 23272406, at *2–3 (Va. Cir. 2003) (finding jurisdiction under Virginia long-arm statute where plaintiff's claim was based on a single online transaction, and noting the "fact that the transaction at issue here occurred over the Internet does not change well-settled Virginia law" under *John G. Kolbe*); *Garcia v. Volkswagen Grp. of Am., Inc.*, 2019 WL 13251303, at *1 (E.D. Va. Dec. 23, 2019) (finding specific personal jurisdiction over defendant who sold products in Virginia, and "made misrepresentations giving rise to the alleged injuries").

## II.    PLAINTIFFS HAVE ARTICLE III STANDING.

Article III requires nothing more than what Plaintiffs have alleged: that Defendant's unlawful practices gravely and uniquely injured Plaintiffs. Article III requires a: (i) concrete injury,

---

[4] In the event the Court does not reject the personal jurisdiction challenge outright, the appropriate course is to permit discovery of Fiocchi's contacts with the forum. *See, e.g.*, *MJM Yachts, LLC v. Ram Invs. of S. Fla., Inc.*, 2021 WL 2418462, at *4 (D.S.C. June 11, 2021).

(ii) causal connection between the injury and the defendant's conduct, and (iii) likelihood that the injury be redressable by the litigation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). At this stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561 (citation omitted). Defendant challenges only the second element. ECF No. 97 at 27–28.

Defendant's traceability argument significantly overstates the causal chain that Plaintiffs must allege links Defendant's conduct and Plaintiffs' injuries. At this stage, "this burden is relatively modest," and does not require a showing of "proximate causation." *DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022) (internal quotation and citation omitted); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing . . . "). Plaintiffs have plausibly alleged a causal connection between Defendant's unlawful marketing of its products to young civilian consumers, like the Shooter, and Plaintiffs' injuries. Compl. ¶¶ 7–10, 43, 53–55, 89–90, 104–06, 108–16, 120–24. Specifically, Plaintiffs have alleged that Fiocchi's marketing misleadingly promotes a warrior-like mentality and stokes fear to sell products. *Id*. ¶ 72. Plaintiffs have further alleged that the Shooter, who self-identified online as an "AR-15 aficionado," was exposed to and influenced by Defendant's unlawful marketing while planning the Shooting. *Id*. ¶¶ 121–23.[5] That is all that Article III requires at the pleadings stage.

Defendant disclaims causation because it was not the one to pull the trigger, ECF No. 97

---

[5] Plaintiffs' "information and belief" pleading is also entirely proper. *See Aarow Elec. Sols. v. Tricore Sys., LLC*, __F. Supp. 3d __, 2023 WL 6161897, at *11 (D. Md. Sept. 21, 2023); *Vaughn v. Perea*, 2021 WL 5879176, at *2 (4th Cir. Dec. 13, 2021) (per curiam) ("[p]leading on information and belief remains permissible, even following [*Iqbal*]"). Contrary to Defendant's assertion, ECF No. 97 at 26, courts do not limit permissible use of information and belief pleading to circumstances where the facts are in the control of the defendant.

at 23, but Article III "does not require the challenged action to be the sole or even the immediate cause of the injury." *Sierra Club v. U.S. Dep't of Interior*, 899 F.3d 260, 284 (4th Cir. 2018); *see also Libertarian Party of Va. v. Judd*, 718 F.3d 308, 316 (4th Cir. 2013) ("if [defendant's conduct] is at least in part responsible for frustrating" plaintiff's constitutional rights, Article III causation is satisfied, "notwithstanding the presence of another proximate cause"); *My Pillow, Inc. v. LMP Worldwide, Inc.*, 2019 WL 6727298, at *5 (D. Minn. Dec. 11, 2019) ("independent action of third parties" did not sever causal chain between defendant's advertising and plaintiff's injuries, which were still "fairly traceable to" the alleged misconduct). In other words, Article III's traceability requirement does not require that Defendant's actions be "the very last step in the chain of causation." *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 197 (4th Cir. 2013) (Article III satisfied where defendant's conduct caused third parties not to offer services to plaintiffs). Instead, Plaintiffs' allegations satisfy Article III where, as here, their injuries were "produced by the determinative or coercive effect of the defendant's conduct upon the action of someone else." *Id.* (cleaned up).

Fiocchi therefore cannot escape liability because its conduct foreseeably caused the Shooter to use its products to commit the Shooting. *See Dep't of Com. v. New York*, 139 S. Ct. 2551, 2565–66 (2019) (rejecting traceability challenge where plaintiff's theory of harm relied upon third parties choosing to act unlawfully). As a court held in the Mexican government's action against Smith & Wesson, Article III's traceability prong is met when "[t]he causal relation between the harm alleged and defendants' conduct depends upon the decisions of multiple independent parties," including "the independent choices of [] individuals to engage in criminal behavior." *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 633 F. Supp. 3d 425, 439 (D. Mass. 2022). This is so even when the plaintiff's injuries are far more removed from the conduct than

7

Plaintiffs allege here. *See id.* (plaintiff was "not an individual victim of gun violence; it [was] the Mexican government, which alleges a series of consequential harms arising out of that violence."). For all these reasons, Defendant's Motion to Dismiss for lack of Article III standing should be denied.

### III.   PLCAA DOES NOT BAR PLAINTIFFS' ACTION, WHICH QUALIFIES FOR THE PREDICATE EXCEPTION.

Defendant next wrongly seeks to vastly expand the protections afforded to Defendant under PLCAA in ways that cannot be squared with the statute's plain text or "primary purpose," which "is **not** to shield firearms sellers from liability for wrongful or illegal conduct." *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 317 (Conn. 2019) (emphasis added), *cert. denied*, *Remington Arms Co., LLC v. Soto*, 140 S. Ct. 513 (2019). PLCAA cannot constitutionally mandate dismissal of state tort law cases and force victims of gun violence to "indemnif[y]" the gun industry. *See Gustafson v. Springfield, Inc.*, 282 A.3d 739, 750, 754, 756 (Pa. Super. Ct. 2022) (en banc) (holding that PLCAA exceeds Congress's Commerce Clause authority and violates the Tenth Amendment of the U.S. Constitution because the "qualified-civil-liability action" definition regulates state tort liability, a power which the Constitution reserved for the States), *appeal pending*, No. 7 WAP 2023 (Pa. 2023). But even assuming that PLCAA applies, it preserves Plaintiffs' claims, which allege violations of statutes applicable to the sale or marketing of firearms.

Each of Plaintiffs' individual statutory claims falls under a PLCAA exception. This Court, however, need not engage in a claim-by-claim inquiry to determine whether PLCAA applies. Because PLCAA's exceptions apply to actions—not individual claims—this case falls outside of PLCAA's purview if even a single claim falls under an applicable exception. PLCAA's plain language supports this interpretation. The Act precludes "qualified civil liability actions" and its

8

exceptions encompass "an action" or "any case" that meets the enumerated criteria. 15 U.S.C. § 7903(5)(A). Of course, an action is an entire case, not an individual claim. *See* Fed. R. Civ. P. 2 ("There is one form of action—the civil action."). Additionally, PLCAA specifies that "[n]othing in this chapter shall be construed to limit the right of a person under 17 years of age to recover damages authorized under Federal or State law *in a civil action that meets 1* of the [PLCAA exceptions]." 15 U.S.C. § 7903(5)(D) (emphasis added). This provision, which applies here because Plaintiff N.T. is under 17 years of age, further specifies that Plaintiffs' case need only satisfy one PLCAA exception to proceed. Consistent with this statutory language, courts have "declined to engage in [] claim-by-claim analysis" of the applicability of PLCAA exceptions where one exception applies. *See Corporan v. Wal-Mart Stores E., LP*, 2016 WL 3881341, at *4 n.4 (D. Kan. July 18, 2016); *Williams v. Beemiller, Inc.*, 100 A.D.3d 143, 151 (N.Y. App. Div. 2012) (allowing entire action to proceed upon finding predicate exception satisfied); *King v. Klocek*, 187 A.D.3d 1614, 1616 (N.Y. App. Div. 2020) (same). This Court should do the same.

As Defendants recognizes, PLCAA's protections are limited to "qualified civil liability action[s]" that are not subject to an exception. *See* 15 U.S.C. § 7903(5)(A); ECF No. 97 at 14. Plaintiffs' claims, however, fall squarely within PLCAA's exception that permits an action alleging (i) a violation of "a State or Federal statute applicable to the sale or marketing of the product," (ii) committed "knowingly," (iii) that "was a proximate cause for the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii) (the "predicate exception"). Fiocchi argues only that (i) is not satisfied here.[6]  ECF No. 97 at 15–17.

---

[6] Defendant requests, without citation to any authority, that "the Court take judicial notice" of other Defendants' arguments regarding PLCAA.  ECF No. 97 at 17. This is not a proper request for judicial notice, and this terse attempt at incorporation by reference is insufficient to preserve other PLCAA-related arguments. In Co-Defendants Magpul and Surefire's brief alone, these arguments comprised more than 13 pages, *see* Magpul/Surefire Memo. ISO Motion to Dismiss,

9

But, contrary to Defendant's position, under the plain language of PLCAA, a statute qualifies as a predicate statute if it is "a State or Federal statute applicable to the sale or marketing of the product," with "product" referring to a firearm, firearm component, or ammunition. 15 U.S.C. § 7903(4); 7903(5)(A)(iii). Where, as in PLCAA, a federal law "does not define 'applicable,' [the Supreme Court] look[s] to the ordinary meaning of the term." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011). The Supreme Court has further explained that "[a]pplicable means 'capable of being applied: having relevance' or 'fit, suitable, or right to be applied: appropriate.'" *Id.* (citing three dictionaries); *see also Clark v. Bank of Am., N.A.*, 2020 WL 902457, at *6 (D. Md. Feb. 24, 2020) (referencing the Supreme Court's explanation of "applicable" in interpreting Dodd-Frank). Under this statutory interpretation, PLCAA's predicate exception applies to any state or federal statute that is capable of being applied to or relevant to the sale or marketing of firearms, firearm components, or ammunition. *See Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422, 431 (Ind. Ct. App. 2007) (finding use of "applicable" in predicate exception unambiguous and allowing statutory public nuisance claim to proceed because statute applied to sale or marketing of firearms), *transfer denied*, 915 N.E.2d 978 (Ind. 2009).[7] And the

---

ECF No. 84, and Defendant seeks to incorporate these arguments from all Co-Defendants' briefs. This would put Fiocchi well above the page limit for a motion, and this Court should reject Defendant's attempt to circumvent the local rules. Local Rule 7(F)(3); *see also Hiramanek v. Clark*, 2016 WL 4729182, at *1 (N.D. Cal. Sept. 12, 2016) ("The incorporation of substantive material by reference is not sanctioned by the federal rules as a mechanism for circumventing page limits."); *Cristler v. U.S. through U.S. Dep't of Agriculture*, 2008 WL 11348475, at *1 (D. Mont. Aug. 26, 2008) (similar). To the extent the Court decides to consider these arguments, Plaintiffs incorporate their responses from their corresponding opposition briefs to Co-Defendants' motions to dismiss.

[7] *See also Soto*, 202 A.3d 262 (PLCAA's predicate exception encompasses state consumer protection statute that, like the VCPA and VFAS, is applicable to, but does not expressly regulate, firearms); *Brady v. Walmart, Inc.*, 2022 WL 2987078, at *7 (D. Md. July 28, 2022) ("[T]he relevant question is not . . . whether the predicate statute explicitly prohibits the sale of firearms, but whether it is capable of being applied to the sale of firearms.").

predicate exception applies to any claim based upon a knowing violation of a predicate statute that was a proximate cause of the plaintiff's harm, 15 U.S.C. § 7903(5)(A)(iii), either because the claim arises under that statute's private cause of action or because it is a common law claim premised on a violation of a statute. *See Brady*, 2022 WL 2987078, at *6–7, 13 (denying motion to dismiss negligence claim upon finding PLCAA predicate exemption satisfied); *Williams*, 100 A.D.3d at 147–48, 151 (same).

Against this backdrop, the VCPA, VFAS, and their attendant claims all qualify for PLCAA's exception. The VCPA regulates transactions (including sales) of "goods," which are defined as "all real, personal or mixed property, tangible or intangible." Va. Code Ann. § 59.1–198 (definition of goods); § 59.1–200 (prohibited practices regulate transactions of goods). Defendant's ammunition at issue here is tangible personal property to which the VCPA undisputedly applies. Similarly, Defendant's ammunition easily fits within VFAS' expansive reach: it is plainly merchandise or "anything offered" by Defendant's company, "directly or indirectly, to the public for sale. Va. Code Ann. § 18.2–216.

Fiocchi does not dispute that the plain language of the VCPA and VFAS renders them applicable to the sale or marketing of its products in Virginia. *See* ECF No. 97 at 15–17. Instead, Defendant argues that this Court should limit the plain meaning of the predicate exception to exclude the statutes at issue here. *Id.* Of course, "[i]f Congress had intended to limit the scope of the predicate exception to violations of statutes that are *directly*, *expressly*, or *exclusively* applicable to firearms, . . . it easily could have used such language, as it has on other occasions." *Soto*, 202 A.3d at 302 (emphasis in original). But Congress did not—the drafters "opted instead to use only the term 'applicable,' which is susceptible to a broad reading" and "further supports" Plaintiffs' interpretation. *Id.* at 303. Defendant is also wrong to argue that legislative findings

11

within PLCAA are inconsistent with the predicate exception's plain language. PLCAA reaches only businesses "engaged in interstate and foreign commerce *through the lawful* design, manufacture, *marketing*, distribution, importation, *or sale to the public of firearms or ammunition products*." 15 U.S.C. § 7901(a)(5) (emphasis added). Plaintiffs allege that Fiocchi engaged in unlawful conduct that PLCAA does not protect: the marketing or sale of its ammunition in a manner that violates the VCPA and VFAS. Defendant's apparent (and unsurprising) disagreement that its conduct was unlawful is not a proper basis for a motion to dismiss. *See Ray*, 948 F.3d at 226.

The *Ileto* and *Beretta* decisions that Defendant cites are not to the contrary. *See* ECF No. 97 at 16–17. The VCPA and VFAS are properly understood as predicate statutes, even under the cases Defendant cites. In *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008), the court "[did] not agree [with defendants] that the PLCAA requires that a predicate statute expressly refer to the firearms industry." *Id.* at 401. Rather, the court interpreted the exception to exclude the New York nuisance law at issue, but to include "statutes (a) that expressly regulate firearms, or (b) that courts have applied to the sale and marketing of firearms; and . . . statutes that do not expressly regulate firearms but that can clearly be said to implicate the purchase and sale of firearms." *Id.* at 404. The VCPA and VFAS therefore qualify as predicate statutes under this interpretation, as they clearly implicate the purchase and sale of firearms in Virginia. And in *Ileto*, the court was tasked with considering whether alleged violations of California statutes codifying historical common law tort claims for negligence and public nuisance could qualify under the predicate exception. *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1132–33 (9th Cir. 2009). That court "[found] it more likely" that Congress intended the predicate exception to include "statutes that regulate manufacturing, importing, selling, marketing, and using firearms *or* that regulate the

12

firearms industry—rather than general tort theories." *Id.* at 1136 (emphasis added). In reaching this finding, the Ninth Circuit expressly rejected as too narrow the gun industry defendants' argument that only statutes that apply exclusively to the gun industry qualify under the predicate exception. *Id.* at 1134.

Other courts agree with this interpretation. The District of Nevada—which found that Nevada's unfair trade practices statute qualifies as a predicate statute—is particularly instructive:

> [U]nlike the general common law tort theories of negligence and nuisance at issue in *Ileto*, which can apply to any private conduct capable of being tortious, the [statute at issue] specifically regulates the sale and marketing of goods. Consequently, the [Ninth] [C]ircuit's decision in *Ileto* does not foreclose the [statute at issue] from serving as a predicate statute, and instead appears to permit it.

*Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1138–39 (D. Nev. 2019). The *Prescott* court's decision follows the Connecticut Supreme Court's similar finding in *Soto* that the Connecticut Unfair Trade Practices Act—another non-industry specific statute relevant to firearm marketing—qualified as a predicate statute under PLCAA's exemption. *Soto*, 202 A.3d 262. Defendant cites no case considering a similar state statute that has held the opposite. This Court therefore should find that the VCPA and VFAS are predicate statutes under PLCAA's predicate exception, and that the exception applies here.

## IV.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED EACH OF THEIR CLAIMS

### A.  Plaintiffs Have Statutory Standing Under The VFAS And VCPA.

With respect to the actual claims Plaintiffs plead, Fiocchi starts by wrongly arguing that *Lexmark*'s "zone of interest" test that limits statutory standing under the VCPA and VFAS. ECF No. 97 at 21–23. But *Lexmark* established this test for federal Lanham Act claims and has no applicability here. *See Lexmark Int'l, Inc.*, 572 U.S. at 129–31. None of the cases Defendant cites,

ECF No. 97 at 21–23, extend *Lexmark* to state law causes of action, [8] nor have Plaintiffs located *any* case law applying a "zone of interest" test to a Virginia cause of action.

To the extent Fiocchi's argument is construed as a general statutory standing challenge, this also fails under a plain reading of the applicable statutes and the case law. Neither the VCPA nor the VFAS limits standing to purchasers or consumers of products or those in privity with product sellers or manufacturers. Rather, both statutes permit suits for damages by "*any person who suffers loss as the result of*" a statutory violation. Va. Code Ann. § 59.1–204(A)–(B) (VCPA) (emphasis added); Va. Code Ann. § 59.1–68.36 (VFAS).

None of Defendant's cited cases is to the contrary. The cases Fiocchi cites all concern whether the claims at issue concerned a "consumer transaction," ECF No. 97 at 22–23, which is separately addressed at *infra* § IV.C.1. Moreover, the broad definition of who may seek relief under these statutes is also consistent with their remedial purpose. *See, e.g.*, *Ballagh v. Fauber Enter., Inc.*, 290 Va. 120, 125 (2015) (the VCPA "shall be applied as remedial legislation" and must be construed "liberally, in favor of the injured party") (citations omitted); *Virginia Panel Corp. v. Mac Panel Co.*, 1996 WL 335381, at *10 (W.D. Va. May 29, 1996), *rev'd and modified in part on other grounds*, 133 F.3d 860 (Fed. Cir. 1997) (in interpreting VFAS, instructing that "[w]here the Virginia legislature has drafted the language of the provision permitting civil recovery in very broad terms, it is not the role of the courts, especially federal courts, to provide exceptions to such a provision").

---

[8] *Wall & Assocs., Inc. v. Better Bus. Bureau of Cent. Virginia, Inc.*, 685 F. App'x 277 (4th Cir. 2017) addressed proximate cause under the Lanham Act and has nothing to do with statutory standing, let alone with respect to Virginia or other state law statutes, *id.* at 278–79. *CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46 (4th Cir. 2011), pre-dated *Lexmark*, concerned the federal Telecommunications Act, and addressed "whether *Congress* intended to confer standing[,]" *id.* at 52 (emphasis added).

## B.  Plaintiffs Have Stated A Claim For Relief Under The VFAS.

Plaintiffs have stated a claim for relief under the VFAS, which makes it unlawful to disseminate (i) a written "advertisement of any sort" (ii) made with "intent to sell" and (iii) containing "any promise, assertion, representation, or statement of fact which is untrue, deceptive or misleading," where (iv) the plaintiff suffered a loss resulting from the advertisement.  *Am. Demolition & Nuclear Decommissioning, Inc. v. IBCS Grp., Inc.*, 21 F. Supp. 3d 632, 636 (W.D. Va. 2014) (citing Va. Code § 18.2–216). Fiocchi does not contest and therefore concedes elements (i), (ii), and (iv). And, as shown below, Plaintiffs have plausibly pled the third element.

### 1.  Defendant's Marketing Practices Are Reckless, Deceptive, and Misleading.

Plaintiffs have plausibly pled that Fiocchi's marketing practices are deceptive and misleading. For years, Fiocchi has marketed its products in ways designed to appeal to the impulsive, risk-taking tendencies of young men—the same category of consumers Fiocchi has watched commit the type of mass shooting that unfolded again at the Edmund Burke School. Compl. ¶¶ 6–9, 77, 105, 109, 111, 114. Despite knowing that mass shootings have been repeatedly perpetrated by this demographic, Fiocchi intentionally markets its ammunition in ways that appeal to its militaristic tendencies, including through social media and invocations of other brands geared toward children and young adults. Fiocchi has taken no steps to guard against the sale of its ammunition to those who foreseeably commit such violent acts. *Id.* ¶ 53.

Fiocchi's deceptive militaristic messaging and fearmongering to market tools of war to civilians is especially resonant with—and targeted toward—troubled young men attracted to violent combat, increasing the risk that they will use Fiocchi's deadly ammunition to perpetrate mass violence. This includes the Shooter, who joined the United States Coast Guard but was discharged before completing basic training. *Id.* ¶ 55. Indeed, Fiocchi publishes advertisements designed to stoke fear of the government and other civilians to promote stockpiling of its products,

15

which of course increases its bottom line. For example, Fiocchi has invoked the threat of an apocalyptic future to tell consumers that the more guns and ammunition they have, the better off they will be, with hashtags like #nevertoomany, #nevertoomuch, and #buyitall. *Id.* ¶¶ 72–73. Making matters worse, Fiocchi also markets to youth. *Id.* ¶ 85. For example, in multiple Instagram posts featuring very young children, Fiocchi advises consumers to "[s]tart[] them" and "[t]each them young!" *Id.* ¶ 86. Fiocchi's strategies are reminiscent of the historical practices of the tobacco and alcohol industries, other industries that have exploited young consumers' vulnerability by designing advertisements that promote thrill-seeking and self-esteem inflating conduct in order to hook them early and convert them into lifelong purchasers of their products. *Id.* ¶ 77.

Fiocchi responds that its advertisements "encourage consumers to buy a lawful product." ECF No. 97 at 24. But advertisements need not promote an illegal product to violate the VFAS, and Fiocchi does not address Plaintiffs' allegations concerning advertising showing use of its product by a shooter who appears to be on the balcony of a home or office. *See* Compl. ¶ 63.

### 2. The VFAS Contains No additional "Reliance" Or Proximate Cause Requirement.

The VFAS does not require a showing of reliance, and Fiocchi's contrary arguments, ECF No. 97 at 25, rest on a single footnote in a single case. But the language of the statute—which permits recovery "by any person . . . for any loss resulting from" deceptive advertising, is not so narrow. *See, e.g.*, *BHR Recovery Communities, Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 424 (E.D. Va. 2018) (dismissing VCPA claim for lack of reliance, but permitting VFAS claim to proceed). In any event, Plaintiffs have adequately alleged reliance at this stage. *See infra* § IV.C.2. And although Fiocchi suggests that Plaintiffs' VFAS claim fails to plead proximate cause, ECF

16

No. 97 at 23–24, it does not cite a single case holding that the VFAS requires such a showing, nor is there any basis to impose one at this stage in particular.[9]

### C. Plaintiffs Have Stated A Claim For Relief Under The VCPA.

Plaintiffs also have  stated a cause of action under the VCPA, which requires allegations that (1) a supplier in a consumer transaction; (2) committed a fraudulent act as defined by the statute; and (3) the plaintiff suffered loss as a result. *See* Va. Code Ann. §§ 59.1–200, 59.1–204(A).

### 1. Plaintiffs Have Alleged A Consumer Transaction.

Defendant first argues that Plaintiffs lack statutory standing because they do not allege they were involved in a consumer transaction with Fiocchi.  ECF No. 97 at 21–23. As discussed above, Defendant's reliance on *Lexmark* is misplaced. *See supra* § IV.A. And nothing in the VCPA's plain language, its broad remedial purpose, or Defendant's cited authority supports Defendant's narrow interpretation of "consumer transaction" to exclude Plaintiffs' claims.

The VCPA defines "consumer transaction" as an "advertisement, sale, lease, license or offering for sale, lease or license, goods or services to be used primarily for personal, family or household purposes." Va. Code Ann. § 59.1–198. And a "supplier" is a "seller . . .  who advertises, solicits or engages in consumer transactions, or a manufacturer, distributor or licensor who advertises and sells, leases or licenses goods or services to be resold . . ." *Id.* Because the VCPA is "remedial in nature," these provisions are "construed liberally." *Kieft v. Becker*, 2002 WL 481249, at *4 (Va. Cir. 2002); *see also Ballagh*, 290 Va. at 125 (VCPA must be construed "liberally, in favor of the injured party"). The VCPA's legislative purpose "was, in large part, to

---

[9] Virginia's highest court has consistently held that proximate cause is an issue of fact to be decided by a jury. *See, e.g.*, *Cooper Indus., Inc. v. Melendez*, 260 Va. 578, 589-90 (2000); *Speer v. Kellam*, 204 Va. 893, 897 (1964). It is also "well-settled" under Virginia law that an event may have multiple proximate causes. *Russo v. United States*, 37 F. Supp.2d 450, 452 (E.D. Va. 1999). Defendant cites no basis to depart from these longstanding principles, where the Complaint alleges that Defendant's actions foreseeably led to the Shooter's actions.

expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law." *Owens v. DRS Auto. Fantomworks, Inc.*, 288 Va. 489, 497 (2014).

Against this backdrop, courts have interpreted the VCPA broadly, finding that "allegedly fraudulent acts only need be 'in connection with' a consumer transaction, which encompasses more than direct sales to consumers." *Branin v. TMC Enterprises, LLC*, 832 F. Supp. 2d 646, 650 (W.D. Va. 2011); *see also Alexander v. Se. Wholesale Corp.*, 978 F. Supp. 2d 615, 622 (E.D. Va. 2013) (agreeing, after review of "plain language of the VCPA" and "the majority of the relevant precedent," that "a direct sale to a consumer is not required"); *Merriman v. Auto Excellence, Inc.*, 2001 WL 1763982, at *1 (Va. Cir. 2001) (VCPA "does not seem to limit protection only to those transactions that occur directly between a supplier and the ultimate consumer . . ."). This is consistent with the fact that the VCPA provides a cause of action to any "person" who suffers loss, Va. Code Ann. § 59.1–204(A), and does not require privity. *Kieft*, 2002 WL 481249, at *4 (further noting that it would be "inappropriate" to "limit the scope" of the VCPA's "expansive listing of fraudulent practices" to impose such a privity requirement).[10] It is also consistent with the VCPA's definition of "supplier," which suggests that the VCPA is not limited "to those transactions that occur directly between a supplier and the ultimate consumer." *Virginia Beach Rehab Specialists, Inc. v. Augustine Med., Inc.*, 2002 WL 31431490, at *6 (Va. Cir. 2002).

Nor do the cases cited by Defendant support such a narrow reading of the VCPA. Instead, Defendant relies on cases where courts dismissed VCPA claims premised on transactions between commercial entities, and where the goods were not used for personal, family, or household

---

[10] *See also Blount v. Greenbrier Pontiac Oldsmobile-GMC Trucks Kia, Inc.*, 2009 WL 2431587, at *5 (E.D. Va. Aug. 7, 2009) ("lack of privity is not available as a defense" to a VCPA claim); *Providence Vill. Townhouse Condo. Ass'n v. Amurcon-Loudoun Corp.*, 1994 WL 1031006, at *4 (Va. Cir. 1994) (there is "no limitation on recovery to those found in privity with" defendant).

18

purposes. In *Bindra*, for example, the court rejected a VCPA claim where there was no allegation of a transaction made "primarily for personal, family, or household purposes," and where a "commercial entity purchased goods from another commercial entity for commercial purposes." *Bindra v. Michael Bowman & Assocs., Inc.*, 2001 WL 1829999, at *3 (Va. Cir. Sept. 19, 2001). A VCPA claim was similarly rejected in *Baker* because the relevant transactions were "merchant-to-merchant" and "clearly not a consumer transaction." *Baker v. Elam*, 883 F. Supp. 2d 576, 579 (E.D. Va. 2012). And in *Trans-Radial*, the court found there was no consumer transaction where "every relevant transaction alleged is one between companies, not individual consumers" and "do not involve 'goods or services to be used primarily for personal, family or household purposes.'" *Trans-Radial Sols., LLC v. Burlington Med., LLC*, 2019 WL 3557879, at *9 (E.D. Va. Aug. 5, 2019).

With this context, Plaintiffs' allegations easily satisfy the VCPA's "consumer transaction" requirement. Plaintiffs allege that the Shooter (a consumer) "purchase[d]" Defendant's ammunition. *See, e.g.*, Compl. ¶ 324; *see also id.* ¶¶ 42, 108, 122. And it can hardly be disputed that he did so for his own "personal" purposes. That is all the VCPA requires.

### 2. Plaintiffs Have Alleged Reliance.

Defendant's arguments with respect to reliance similarly fail. Defendant concedes it would be sufficient for Plaintiffs to allege the Shooter "relied on" Defendant's fraudulent advertising. ECF No. 97 at 24–25. That is exactly what the Complaint alleges. Plaintiffs allege that "the Shooter relied on" Defendant's advertising when he purchased its ammunition. *See, e.g.*, Compl. ¶ 324. These allegations are based the Complaint's extensive allegations regarding the Shooter's online presence and Defendant's advertising practices, including that the "Shooter was exposed to and influenced by Defendants' deceptive and unfair marketing acts and practices while researching and planning the Shooting." Compl. ¶ 123; *id.* ¶¶ 53–56, 114–16, 120–23 (discussing Shooter's

19

online presence and Defendants' online advertising); *see also supra* § II (discussing allegations that support Article III standing). Nothing more is required at this initial pleading stage. Defendant does not cite a single case holding otherwise.[11] *See* ECF No. 97 at 24–25.

Finally, Defendant wrongly suggests that Plaintiffs may only make allegations on "information and belief" if the "facts are particularly within the possession and control of the defendant." ECF No. 97 at 26. Courts recognize that such pleadings are sufficient under Rule 9(b) where, as here, "the facts constituting the fraud are not accessible" to Plaintiffs and Plaintiffs provide "the grounds for [their] suspicions." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011); *see also Kashdan v. George Mason Univ.*, 70 F.4th 694, 702 (4th Cir. 2023) (affirming dismissal of complaint "devoid of facts supporting the allegations that were pleaded upon information and belief"). And as explained above, Plaintiffs have more than alleged "adequate grounds" for their "suspicions" that the Shooter relied on Defendant's misrepresentations.

In any event, Defendant is wrong to argue that it has "no information" relevant to the Shooter's reliance on its misrepresentations. ECF No. 97 at 26. Plaintiffs have alleged that the Shooter relied on each of Defendant's misrepresentations on social media, and Defendant presumably has information related to whether the Shooter interacted with these and other postings. The Shooter's electronic devices—which are currently in law enforcement's possession—may also contain information to support these allegations, as will other third-party social media companies. *See* Compl. ¶¶ 116, 120–23 (discussing the Shooter's online presence).

---

[11] To the extent Defendant's Motion is also construed as arguing that Plaintiffs' VCPA claim is subject to some separate proximate cause requirement that has not been met, *see* ECF No. 97 at 23–24, that argument fails for the same reasons, in addition to those discussed above. *See* n.9.

### 3.   Plaintiffs Have Alleged Fraudulent Acts Under Rule 9(b).

Plaintiffs have also satisfied the VCPA's requirement that the Complaint plead a violation of one of the statute's enumerated "fraudulent acts or transactions," Va. Code Ann. § 59.1–197, and "state with particularity the circumstances constituting fraud or mistake" under Rule 9(b). *Wynn's Extended Care, Inc. v. Bradley*, 619 F. App'x 216, 220 (4th Cir. 2015). The Complaint alleges that Defendant targeted consumers, including the Shooter, with advertisements that misrepresented the various products as having "certain characteristics, uses, or benefits," "a particular standard, quality, grade, style or model," or "otherwise using deception or misrepresentation." *See, e.g.*, Compl. ¶ 322. Plaintiffs further allege that Defendant's advertising campaigns deceptively "exploit adolescents' and young adults' attraction to impulsive, thrill-seeking behavior," *id.* ¶ 77, encouraged "stockpiling" of their ammunition, *id.* ¶ 75, induced the Shooter to purchase their ammunition as a "superior fit for carrying out his mission of causing the most destruction possible," *id.* ¶ 120, and based on advertising that led him to believe the ammunition was "designed for mass death." *Id.* ¶ 124. Plaintiffs also identified several advertisements by Defendant that misrepresented its products as appropriate for use at a "balcony of a home or office, rather than at a shooting range or in a game hunting setting," *id.* ¶ 63, by consumers in combat and riots, *id.* ¶¶ 72–73 (featuring hashtag, "wewantthemall"), and by children. *Id.* ¶ 86.

These allegations are sufficient to state a claim under the VCPA, and Defendant has cited no authority to the contrary. In particular, the Complaint does far more than "merely mimic the language of the statute" without supporting "factual allegations that make plausible" that any of the alleged violations "ever occurred." *Schmidt v. Experian Info. Sols., Inc.*, 2020 WL 7680548, at *3 (E.D. Va. Nov. 13, 2020); *see also Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 847 (E.D. Va. 2015) (dismissing VCPA claim where plaintiffs did not "offer any additional allegations

21

of fact as to the true, or otherwise correct, representation that should have been" included in the statements at issue). As explained at length above, Plaintiffs instead allege that Defendant's advertisements were deceptive and misrepresented their products' characteristics, uses, or benefits. Because that is all the VCPA requires at this stage, Plaintiffs have alleged sufficient facts to state a claim.

## V.    THE FIRST AMENDMENT DOES NOT BAR PLAINTIFFS' CLAIMS.

Finally, the Court should reject Defendant's argument that the First Amendment bars Plaintiffs' VCPA and VFAS claims. The law on commercial speech is clear: "The government may ban forms of communication more likely to deceive the public than to inform it, or commercial speech related to illegal activity." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980). And so although commercial speech is generally protected by the First Amendment, "the Constitution affords no protection to false or misleading commercial speech." *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1271 (9th Cir. 2017) (citing *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 563). The Fourth Circuit recently reaffirmed this principle, confirming that "[i]f advertising is misleading, it 'may be prohibited entirely.'" *Recht v. Morrisey*, 32 F.4th 398, 410 (4th Cir. 2022) (quoting *In re R.M.J.*, 455 U.S. 191, 203 (1982)). "Thus, to the extent [a statute] is applied only to fraudulent or misleading speech, it poses no difficult First Amendment questions." *See Aitken v. Commc'ns Workers of America*, 496 F. Supp. 2d 653, 665 (E.D. Va. 2007); *see also Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376, 388 (1973) (no First Amendment concerns "when the commercial activity itself is illegal").

Fiocchi's advertisements at issue in this case are not protected by the First Amendment at all. They are commercial speech—a fact Fiocchi does not dispute and therefore concedes. *See* ECF No 97 at 17–19; *Greater Phila. Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 137 (3d Cir. 2020) (outlining test for commercial speech). And Plaintiffs have sufficiently alleged these

22

advertisements are untrue, misleading, or deceptive, for reasons discussed at length above. *See supra* §§ IV.B.1. Moreover, they encourage egregious criminal conduct. *See supra id.*

That distinguishes this case from *Junior Sports Magazines, Inc. v. Bonta*, 80 F.4th 1109 (9th Cir. 2023). In *Junior Sports Magazines*, the Ninth Circuit considered the constitutionality of a California law that regulated truthful advertising about lawful activity. *Id.* at 1114. In particular, the law prohibited advertising firearms in a manner that is reasonably attractive to minors. Recognizing that minors can lawfully possess and use firearms under adult supervision in California, the Court rejected any argument that the advertising at issue in the case was misleading or involved illegal acts. *Id.* at 1116–17. Rather, the State was attempting to regulate "*accurate* commercial information.'" *Id.* at 1117 (emphasis added) (quoting *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 503 (1996) (plurality opinion)).

*Junior Sports Magazines* has no bearing on this case. The Virginia laws at issue here, by their very terms, only reach false or misleading advertisements. *See supra* §§ IV.B, IV.C. *Junior Sports Magazines* did not concern false or misleading advertising—in fact, the court there reaffirmed that states can permissibly regulate such advertisements in accordance with the First Amendment. 80 F.4th at 1116 (confirming that when "regulated speech is misleading or concerns unlawful activity," "[s]uch speech receives no First Amendment protection."). The remaining cases that Defendant cites are about regulation of truthful, accurate commercial speech, speech that—unlike Defendant's advertisements—is protected. *See Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 579 (2011) (noting that the law at issue regulates truthful information and the government "nowhere contends that [the prohibited speech] is false or misleading"); *Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976) (similar).

Defendant never grapples with the fact that Plaintiffs' well-pleaded allegations show that

23

Defendant's advertisements are misleading, putting them outside the reach of this caselaw, and the First Amendment. To the extent they suggest that their advertisements are "truthful," *see* ECF No. 97 at 21, Defendant is impermissibly urging the Court to accept its own version of the facts. Moreover, even if there were some uncertainty on this issue, courts routinely decline to resolve it at this stage. *See, e.g.*, *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 474 n.1 (S.D.N.Y. 2020) (holding, where similar arguments regarding misleading statements were made in similar procedural posture, that the defendant's "constitutional argument puts the cart before the horse"); *Genzyme Corp. v. Shire Hum. Genetic Therapies, Inc.*, 906 F. Supp. 2d 9, 17 (D. Mass. 2012) ("Unless . . . no reasonable person could be misled by the advertisement in question, it is not appropriate to resolve the issue of the truthfulness of the speech on a motion to dismiss."); *Design Res., Inc. v. Leather Indus. of Am.*, 900 F. Supp. 2d 612, 620–21 (M.D.N.C. 2012) (similar).[12]

Because advertisements that are false, misleading, or concern criminal activity are not protected by the First Amendment, the Court need not reach Defendant's remaining arguments about the proper level of scrutiny and its application. But these arguments also have no merit. Even if this Court were to determine that any of the advertisements warranted some protection under the First Amendment, there would be no basis to apply strict scrutiny. Fourth Circuit precedent dictates that commercial speech like Defendant's advertisements is subject to intermediate scrutiny. *See Recht v. Morrisey*, 32 F.4th 398 (4th Cir. 2022); *see also Retail Digital Network, LLC v. Prieto*, 861 F.3d 839 (9th Cir. 2017). In fact, several other Defendants in this case briefed the issue assuming that intermediate scrutiny applied and made no argument for strict scrutiny. *See* ECF

---

[12] If the Court determines later that Plaintiffs' claims risk infringing on protected speech, it could put then impose limitations around potential liability to guard against these risks. *See, e.g.*, *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 64 (2d Cir. 2016) (limiting application of Lanham Act pursuant to avoid imposing on the First Amendment) (internal citations omitted).

24

No. 62 at 25 (Bravo Company Memo.); ECF No. 87 at 25 (Griffin Memo.); ECF No. 82 at 11–12 (Torkmag Memo.).

Nor is there any basis to find viewpoint discrimination. The provisions of Virginia law applicable here regulate *all* false advertising and deceptive business practices, regardless of the speaker or message—they do not seek to "stamp out" any particular viewpoint. *See First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1277–78 (9th Cir. 2017) (upholding law that "regulates [businesses] because they engage in false or misleading speech, irrespective of their viewpoints"); *cf. Junior Sports Magazines*, 80 F.4th at 1123 (VanDyke, J., concurring) (suggesting that a law that seeks to "stamp out disliked viewpoints deserves the strictest of scrutiny"). Any tenuous connection to a larger political debate about firearm possession does not transform generally applicable Virginia laws into viewpoint discrimination. Defendant seeks to invoke the specter of protected political discourse to insulate its commercial advertising from liability, but "the Supreme Court has made clear that 'advertising which links a product to a current public debate is not thereby entitled to [greater constitutional protection].'" *See Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 819 (9th Cir. 2013) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 68 (1983)).

At most, intermediate scrutiny would apply to a generally applicable law like this that restricts commercial speech (though again, that would require a finding that the advertisements are not false or misleading or related to unlawful activity). In any event, the VFAS and VCPA would easily survive intermediate scrutiny. Courts routinely uphold similar laws against constitutional challenge. *See, e.g.*, *Recht v. Morrisey*, 32 F.4th 398, 412–16 (4th Cir. 2022); *Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1108–11 (9th Cir. 2004); *Mass. Ass'n of Priv. Career Schools v. Healey*, 159 F. Supp. 3d 173, 203–04 (D. Mass. 2016) (collecting "many federal and state consumer-protection regulations" that courts have upheld against First Amendment challenges).

25

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss.


Dated: December 8, 2023                          Respectfully Submitted,

                                                 */s/ Kathryn Ali*
                                                 **ALI & LOCKWOOD LLP**
                                                 Kathryn Ali (VSB # 97966)
                                                 Elizabeth Lockwood*
                                                 300 New Jersey Avenue NW, Suite 900
                                                 Washington, D.C. 20001
                                                 Phone: (202) 651–2476
                                                 katie.ali@alilockwood.com
                                                 liz.lockwood@alilockwood.com

                                                 **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
                                                 H. Christopher Boehning**
                                                 Jacobus J. Schutte**
                                                 Jenifer N. Hartley***
                                                 1285 Avenue of the Americas
                                                 New York, NY 10019
                                                 Phone: (212) 373–3700
                                                 cboehning@paulweiss.com
                                                 jschutte@paulweiss.com
                                                 jhartley@paulweiss.com

                                                 * *Admitted pro hac vice*
                                                 ** *Pro hac vice applications pending*
                                                 *** *Pro hac vice application forthcoming*

                                                 *Attorneys for Plaintiffs*

26

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of December, 2023, I caused true and correct copies of the foregoing Plaintiffs' Opposition to Defendant Fiocchi of America, Inc.'s Motion to Dismiss to be served electronically via ECF to all counsel of record, and via U.S. Mail First Class on the remaining Defendants.

By: */s/ Kathryn Ali*