# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| KAREN LOWY, individually and as parent and next friend of N.T., <br><br> Plaintiffs, <br><br> v. <br><br> DANIEL DEFENSE, LLC, *et al.*, <br><br> Defendants. | No. 1:23-cv-01338-CMH-IDD <br><br> (1:23-cv-01501) |

**DEFENDANTS MAGPUL INDUSTRIES CORP. AND SUREFIRE, LLC'S**
**<u>REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .....................................................................................................................1

ARGUMENT .............................................................................................................................1

    I.    The PLCAA Bars All Claims Against Magpul and SureFire. ........................................1

        A. The Products At Issue Are "Qualified Product[s]" Under the PLCAA. ...................1

            i.   Firearm Magazines Are Qualified Products. ...............................................2

            ii.  Firearm Grips Are Qualified Products. ........................................................4

        B. The PLCAA's "Predicate Exception" Does Not Apply. ........................................5

            i.   Each Claim Must Meet the Predicate Exception to Proceed. ......................6

            ii.  No Claim Meets Any Requirement of the Exception. ................................7

    II.   Plaintiffs Do Not Plausibly Allege that Either Magpul or SureFire Violated Any Virginia Law. ................................................................................................................11

CONCLUSION ........................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                                          **Page**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*,
    910 F.3d 106 (3d Cir. 2018)..................................................................................................3

*Bailey v. Va. Dep't of Alcoholic Beverage Control*,
    No. 2:18-cv-392, 2019 WL 2590796 (E.D. Va. Apr. 25, 2019) ..................................12, 13

*Brady v. Walmart Inc.*,
    No. 8:21-cv-1412-AAQ, 2022 WL 2987078 (D. Md. July 28, 2022) ...............................11

*City of New York v. Beretta U.S.A. Corp.*,
    524 F.3d 384 (2d Cir. 2008)...............................................................................................10

*Colonial Penn Ins. Co. v. Coil*,
    887 F.2d 1236 (4th Cir. 1989) .........................................................................................4, 5

*Corporan v. Wal-Mart Stores E., LP*,
    No. 16-2305-JWL, 2016 WL 3881341 (D. Kan. July 18, 2016) .........................................6

*Delana v. CED Sales, Inc.*,
    486 S.W.3d 316 (Mo. 2016) ............................................................................................6, 7

*Doyle v. Combined Sys., Inc.*,
    No. 3:22-cv-01536-K, 2023 WL 5945857 (N.D. Tex. Sept. 11, 2023)...............................6

*Est. of Kim ex rel. Alexander v. Coxe*,
    295 P.3d 380 (Alaska 2013)..............................................................................................6, 7

*Federico v. Lincoln Mil. Hous., LLC*,
    127 F. Supp. 3d 623 (E.D. Va. 2015) ................................................................................11

*Fyock v. City of Sunnyvale*,
    25 F. Supp. 3d 1267 (N.D. Cal. 2014) ................................................................................3

*Fyock v. City of Sunnyvale*,
    779 F.3d 991 (9th Cir. 2015) ..............................................................................................3

*Galloway v. Priority Imps. Richmond, LLC*,
    426 F. Supp. 3d 236 (E.D. Va. 2019) ...............................................................................11

*Henry v. R. K. Chevrolet, Inc.*,
    254 S.E.2d 66 (Va. 1979)..................................................................................................11

*Ileto v. Glock, Inc.*,
    565 F.3d 1126, 1134 (9th Cir. 2009) .............................................................................9, 10

*In re Academy, Ltd.*,
    625 S.W.3d 19 (Tex. 2021)..............................................................................................2, 3

*Jones v. Bock*,
    549 U.S. 199 (2007)............................................................................................................7

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
    597 U.S. 1 (2022)..................................................................................................................3

*Prescott v. Slide Fire Sols., LP*,
    341 F. Supp. 3d 1175 (D. Nev. 2018)................................................................................2, 5

*Rehaif v. United States*,
    139 S. Ct. 2191 (2019)........................................................................................................10

*Soto v. Bushmaster Firearms Int'l, LLC*,
    202 A.3d 262 (Conn. 2019) .................................................................................................6

*Stephens ex rel. R.E. v. Astrue*,
    565 F.3d 131 (4th Cir. 2009) ...............................................................................................1

**Codes & Statutes**

15 U.S.C.
    § 7901(a)(3) .........................................................................................................................8
    § 7901(a)(7) .........................................................................................................................9
    § 7901(b)(1) .........................................................................................................................7
    § 7903(4)..............................................................................................................................1
    § 7903(5)..............................................................................................................................1
    § 7903(5)(A) ....................................................................................................................5, 8
    § 7903(5)(A)(iii) .....................................................................................................7, 8, 9, 10
    § 7903(5)(A)(i)–(iv).............................................................................................................7

18 U.S.C. § 924(a)(2)....................................................................................................................10

27 C.F.R. § 478.39 .....................................................................................................................3, 4

VA. CODE ANN. § 18.2-216(A) ....................................................................................................13

**Other Authorities**

RESTATEMENT (THIRD) OF TORTS § 19 ........................................................................................14

## INTRODUCTION

Plaintiffs' response brief is an effort to distract from the critical allegation that their Complaint lacks. Plaintiffs allege that Defendants Magpul and SureFire contributed to an illegal shooting through a few social-media posts. But they do not allege that the Shooter so much as saw those posts. For that reason and others, Plaintiffs' claims against Magpul and SureFire lack any plausible basis. But the problems with these claims run even deeper, because the claims are barred in the first place under the PLCAA. Plaintiffs fail to resolve any of these deficiencies, and the Complaint must be dismissed.

## ARGUMENT[1]

### I. The PLCAA Bars All Claims Against Magpul and SureFire.

#### A. The Products At Issue Are "Qualified Product[s]" Under the PLCAA.

Plaintiffs do not dispute that this case presents a "qualified civil liability action," 15 U.S.C. § 7903(5), subject to the PLCAA's litigation bar if the firearm products at issue are "qualified product[s]," meaning "component part[s] of a firearm or ammunition." *Id*. § 7903(4). Plaintiffs also agree that the phrase "component part" must be given its ordinary meaning, presenting a question of statutory interpretation for the Court to determine as a matter of law. *See, e.g.*, *Stephens ex rel. R.E. v. Astrue*, 565 F.3d 131, 137 (4th Cir. 2009). As a matter of law, the phrase "component part" includes firearm magazines and, to the extent at issue, firearm grips.

---

[1] Plaintiffs do not object to the dismissal of the John Doe defendants, *see* Pls.' Opp'n to Defs. Magpul & SureFire's Mot. to Dismiss at 4 n.5, Doc. 143 (Dec. 8, 2023) ("Pls.' Mem."), and that issue is not readdressed here. Magpul and SureFire continue to incorporate by reference the arguments in other Defendants' briefing. Plaintiffs assert that this common practice is insufficient to preserve these arguments. But jurisdictional arguments cannot be waived; and though Magpul and SureFire could have used their total allotted briefing pages to restate the other arguments, they incorporated these arguments for efficiency.

### i. Firearm Magazines Are Qualified Products.

In the phrase "component part," "component" describes "part." As explained in Magpul and SureFire's motion, "component" generally means "constituent." *See* Mem. in Supp. of Magpul & SureFire's Mot. to Dismiss at 5, Doc. 84 (Nov. 13, 2023) ("MTD Mem"). Whatever other firearm parts may be considered "constituent parts," therefore, that phrase must at least cover those parts included in the firearm's design, *i.e.*, the parts needed for the firearm to function as intended. Plaintiffs contend that this reading somehow "renders the word 'component' . . . superfluous." Pls.' Mem. at 7. To the contrary, this reading—that "component" describes "part"—is the only reading that gives both words independent meaning. Hence it is the reading that Plaintiffs themselves are forced to adopt. Quoting *Prescott*, they note that "part" means, *inter alia*, a piece of a whole, and "component" means "an essential part." *Id*. (quoting *Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1188 (D. Nev. 2018)).

The only difference is that, instead of acknowledging that "component part" naturally includes all parts within a firearm's design, Plaintiffs define the phrase to include only those parts needed to make a firearm "discharge a bullet." *Id*. In other words, if a firearm can be stripped down to fire at least a single bullet—even if the firearm were not designed to function in a single-shot capacity, and even if it were less safe to use it that way—then only those remaining parts would satisfy Plaintiffs' proposed definition of a "component part." This narrow and impractical definition would severely limit the protections of the PLCAA. And tellingly, Plaintiffs cite no case adopting it. The very case on which they rely, *Prescott*, held that a bump stock is a "component part" even though normal firearms are unquestionably capable of firing a bullet without that type of stock. *See* 341 F. Supp. 3d at 1189–90. Meanwhile, Plaintiffs' only response to *In re Academy, Ltd.*, where the court explicitly stated that "magazines . . . are 'qualified products'" under the

2

PLCAA, 625 S.W.3d 19, 29 (Tex. 2021), is to note that the parties did not dispute the issue there. But that agreement hardly helps Plaintiffs here.

Detachable magazines, such as those sold by Magpul and SureFire, are component parts of firearms designed to be operated with detachable magazines. Ammunition is, obviously, necessary for a firearm to operate at all, and detachable magazines feed ammunition into many types of firearms. This logic alone suffices to subject Plaintiffs' claims to the PLCAA. But additional support can be found in the Second Amendment. Plaintiffs note that the scope of protection for so-called high-capacity magazines is being litigated, yet they do not address the relevant and correct substantive arguments why magazines generally constitute "arms" under the Second Amendment. *See, e.g.*, *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1276 (N.D. Cal. 2014), *aff'd*, 779 F.3d 991 (9th Cir. 2015) (finding that magazines are covered by the Second Amendment because "they are integral components to vast categories of guns"); *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106, 116 (3d Cir. 2018), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). Plaintiffs likewise fail to address the inclusion of "[m]agazine bodies" in the list of "imported *parts*" under 27 C.F.R. § 478.39 (emphasis added), which further supports the commonsense conclusion that magazines are component parts of many types of firearms.

Plaintiffs note that magazines are listed under the "firearms accessories" tab of Magpul's website. That has no bearing on the meaning of a "component part" as used in the PLCAA, which is a question of law. More importantly, the PLCAA does not draw a distinction between component parts and so-called accessories. The PLCAA does not use the term "accessory." A firearm part thus does not fall outside the PLCAA simply because it could be called an accessory. If the part is

3

needed to make the firearm function as designed and intended, like a detachable magazine on common rifle models, it is a "component part" under the PLCAA.

### ii. Firearm Grips Are Qualified Products.

Like a detachable magazine, the grip is a standard component part of common firearms, including all AR-15 rifles, and is again listed in 27 C.F.R. § 478.39.[2] A grip is needed to operate an AR-15 not just because it is the component that gives the user a place to put his or her hand when using the trigger, thus allowing the user to control the rifle, but also because it houses an essential functional component: the safety detent and spring, which keeps the safety selector in place and prevents it from falling out of the receiver or floating freely between safety and firing modes. The presence of the grip is required to apply pressure via the spring to the safety detent, without which the safety would not work to stop unintended firing. Thus, a grip must be installed to operate an AR-15 as intended and designed, and it is no less integral to the firearm's safe functioning than its trigger or barrel.

This function is explained in the guide attached to Magpul and SureFire's motion, *see* MTD Mem., Ex. A., which the Court may consider. Plaintiffs object that the manual is "decades-old" and that the "most frequent use of [judicial notice under] F.R.E. 201(b)(2) is to recognize court records." Pls.' Mem. at 6. Yet nowhere do Plaintiffs explain in what respect the guide might be inaccurate[3] or what it is that they even dispute in the guide's characterization of what a grip does on an AR-15. Nor, of course, does the frequent use of judicial notice for court records mean that courts may not notice other facts; indeed, the source underlying Plaintiffs' assertion observes that

---

[2] Magpul is alleged in the Complaint to have sold a firearm grip possessed by the Shooter. SureFire is alleged to have made and sold magazines, but not firearm grips.

[3] The AR-15 at issue is a standard rifle design that definitionally pre-dates the manual attached at MTD Mem., Ex. A.

courts take notice of plenty of other facts of the world. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (relying on 21B CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5106, at 505 (2d ed. 1977)). The function of a grip on standard firearm models is an uncontestable and judicially noticeable fact of the world that has not meaningfully changed since the cited guide was published.

The commonsense conclusion that grips are "component parts" of AR-15s and other firearms is again consistent with *Prescott* and similar cases. If a bump stock is a "component part," which Plaintiffs do not contest, then a grip is necessarily a "component part," too. The stock provides a human interface for shouldering the firearm. *See Prescott*, 341 F. Supp. 3d at 1189. The grip not only provides a human interface for hand placement, control, and firing, but also contains another essential component (the safety detent spring). It does not matter that a grip can be sold separately and later added to a firearm. The same is true of all AR-15 parts.

In short, the fact that a grip is a "component part" can be accurately and readily determined from publicly available and judicially noticeable sources—which also include government sources such as ATF rulemaking, *see* Compl. ¶ 50, Doc. 1 (Oct. 1, 2023)—and is correctly reflected in other decisions. Common firearms need a grip, just as they need a stock, to operate as designed. Hence why all rifles photographed throughout the Complaint have grips.

### B. The PLCAA's "Predicate Exception" Does Not Apply.

Since the products at issue are "qualified product[s]" under the PLCAA, Plaintiffs' claims must meet a PLCAA exception in order to proceed. 15 U.S.C. § 7903(5)(A). Plaintiffs correctly do not claim that any of the PLCAA's limited exceptions could conceivably apply other than the so-called predicate exception. Their arguments under this exception all fail.

5

### i. Each Claim Must Meet the Predicate Exception to Proceed.

Apparently recognizing the hurdle that the PLCAA presents to their claims, Plaintiffs first seek to lower the hurdle, arguing that the PLCAA does not apply "if *even a single claim* falls under an applicable exception." Pls.' Mem. at 9 (emphasis added). Plaintiffs cite a few cases, one from an out-of-circuit district court and two from an intermediate New York state court, purportedly adopting this interpretation. These courts appear simply to have analyzed wholesale whether the claims met the predicate exception, and the defendants failed to press claim-by-claim arguments. *See Corporan v. Wal-Mart Stores E., LP*, No. 16-2305-JWL, 2016 WL 3881341, at *4 n.4 (D. Kan. July 18, 2016) (noting this failure). And certainly, in a given case, claims might generally satisfy the predicate exception for the same general reasons. But that does not imply that all claims need not meet the exception. Nor should this Court draw such an inference. As another federal district court recently explained, "[r]eading the PLCAA as a prohibition on suits rather than claims would permit claims Congress sought to foreclose or foreclose claims Congress sought to permit." *Doyle v. Combined Sys., Inc.*, No. 3:22-cv-01536-K, 2023 WL 5945857, at *6 (N.D. Tex. Sept. 11, 2023). Under Plaintiffs' interpretation, any number of claims that would otherwise be plainly barred by the PLCAA could nevertheless proceed as long as the complaint contains at least one negligent-entrustment claim or some other claim that does meet one of the exceptions. Congress could scarcely have meant to embed such a loophole in the PLCAA's text.

Several courts have rejected Plaintiffs' preferred approach by applying the PLCAA on a claim-by-claim basis. This includes the Connecticut Supreme Court's decision in *Soto*, on which Plaintiffs heavily rely. *See Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 324–25 (Conn. 2019) (affirming trial court's dismissal of all claims other than the predicate-exception claim based on the Connecticut Uniform Trade Practices Act); *see also Delana v. CED Sales, Inc.*, 486 S.W.3d

316 (Mo. 2016); *Est. of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 388, 392–96 (Alaska 2013). This contrary interpretation—that claims may proceed only if they meet one of the PLCAA's exceptions—comports with Congress's expressed intent, which was "[t]o prohibit *causes of action* against manufacturers, distributors, dealers, and importers of firearms or ammunition products." 15 U.S.C. § 7901(b)(1) (emphasis added). This interpretation also comports with the text of the PLCAA's exceptions themselves, which focus on particular types of claims, *e.g.*, negligent entrustment, negligence per se, and products-liability claims. *See id*. § 7903(5)(A)(i)–(iv).

As the Supreme Court has explained, a "claim-by-claim approach" is "the more typical" one. *Jones v. Bock*, 549 U.S. 199, 224 (2007). Under that approach, "if a complaint contains both good and bad claims," the Court explained, "the court proceeds with the good and leaves the bad." *Id*. at 221. And that is true even where, as here and as in *Jones*, the statute uses the term "action" rather than "claim." *See id*. at 220. This typical interpretation must be followed here to avoid allowing the PLCAA's narrow exceptions to swallow its protective rule. Thus, each of Plaintiffs' claims must independently satisfy the predicate exception to survive dismissal.

### ii. No Claim Meets Any Requirement of the Exception

To satisfy the predicate exception, Plaintiffs must show that Magpul and SureFire "*knowingly* violated a State or Federal statute *applicable* to the sale or marketing of the product, and the violation was a *proximate cause* of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii) (emphases added). Plaintiffs do not allege any of these essential elements in any of their claims against these Defendants.

These deficiencies are perhaps most evident when it comes to proximate causation. As Plaintiffs do not meaningfully dispute, this requirement is necessarily heightened under the PLCAA. Under normal common-law principles, which the Virginia courts follow, the chain of

7

proximate causation is generally broken by a third party's intervening criminal act, which, in all but rare instances, are not reasonably foreseeable. *See* MTD Mem. at 23–24. Nevertheless, Congress passed the PLCAA out of concern that manufacturers and retailers might still be deemed liable for "the harm caused by the misuse of firearms by third parties, including criminals." 15 U.S.C. § 7901(a)(3). Thus, Congress defined a "qualified civil liability action" as one seeking relief for harm "resulting from the criminal or unlawful misuse of a qualified product [*e.g.*, firearm or firearm component] by . . . a third party." *Id.* § 7903(5)(A). For the predicate exception to apply, therefore, it must be clear that the defendant's alleged "violation" of an applicable statute "was a proximate cause of the harm for which relief is sought." *Id.* § 7903(5)(A)(iii). In cases where, as here, that harm resulted from a third party's intervening criminal act, this requirement can be met, if at all, only if the criminal act were somehow caused by the defendant's alleged violation.

Plaintiffs cannot possibly make this showing when they do not so much as allege that the Shooter saw any of Magpul or SureFire's social-media posts, let alone those on which Plaintiffs have chosen to base this suit, or that he used any Magpul or SureFire product in the shooting. Plaintiffs note that Virginia law leaves the ultimate determination of proximate causation to the factfinder. But the federal pleading rules require Plaintiffs to allege a plausible basis for their claims. And without the basic allegations necessary to establish any connection between these Defendants' purported "violation[s]" and "the harm for which relief is sought," *id.*, Plaintiffs' claims lack the causal basis necessary for any permissible relief.[4]

---

[4] Plaintiffs dispute that the proximate-causation requirement bars any non-compensatory relief on the ground that Congress "mention[ed] punitive damages" in the PLCAA. Pls.' Mem. at 17 n.13. But Congress did so in describing the types of claims *that the PLCAA bars*. *See* 15 U.S.C. § 7903(5)(A). As written, the predicate exception's proximate-causation requirement can only be satisfied by claims for compensatory relief. Other forms of relief are therefore barred.

8

So instead, Plaintiffs attempt simply to erase the PLCAA's proximate-causation requirement. Unlawful shootings are "tragically common," and thus, according to Plaintiffs' logic, the unlawful misuse of a firearm product is *always* reasonably foreseeable. Pls.' Mem. at 16. In other words, any seller of any PLCAA-qualifying product is subject to liability under the predicate exception—even where the sale itself was entirely lawful—because the seller must expect that the product will be put to criminal ends. Whereas the PLCAA imposes a uniquely high proximate-causation threshold, Plaintiffs would impose a uniquely low one, thereby eviscerating the PLCAA. In its place, they would impose the sort of strict-liability regime that, as even Plaintiffs acknowledge, squarely conflicts with the PLCAA. *See id*. at 17–18 (discussing *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163 (D.C. 2008)). That approach has no support in the normal proximate-causation rules that apply to other kinds of sellers. And needless to say, it has no support in the PLCAA.

Plaintiffs' claims also fail to meet the predicate exception's other two requirements. Their common-law negligence claim undisputedly does not arise under any "State or Federal statute applicable to the sale or marketing of" qualifying products. 15 U.S.C. § 7903(5)(A)(iii). Plaintiffs argue that this requirement is satisfied by "any state or federal statute that is *merely capable* of being applied to or relevant to the sale or marketing of" qualifying products. Pls.' Mem. at 10 (emphasis added). Although some courts (none binding on this Court) have applied this broad definition, the definition conflicts with Congress's effort in the PLCAA to curb expansive theories of liability, *see* 15 U.S.C. § 7901(a)(7), and its choice to limit the predicate exception to claims based specifically on statutes "applicable to the sale or marketing of" firearm products. *Id*. § 7903(5)(A)(iii). The statute need not apply "*exclusively* to the sale or marketing of firearms," but "Congress had in mind only . . . statutes that regulate manufacturing, importing, selling, marketing,

9

and using firearms or that regulate the firearms industry" and not "general tort theories," even if those theories "happened to have been codified by a given jurisdiction." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1134, 1136 (9th Cir. 2009). Thus, under the better reading of the exception, it must at least be clear that the statute was meant to apply specifically to the sale and marketing of firearms, rather than to codify generally applicable tort theories that could be applied in that context (which Virginia has not even done with respect to Plaintiffs' general negligence claim). *See City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 400–04 (2d Cir. 2008).

Plaintiffs also argue that the predicate exception's scienter requirement calls only for proof that Magpul and SureFire acted with knowledge of facts constituting an offense (*e.g.*, that their social-media posts were purportedly misleading) and not, as the statutory language suggests, with knowledge that they were violating Virginia law. But as the Supreme Court has recently and repeatedly held, statutes written like the PLCAA require specific knowledge of illegality. *Compare* 15 U.S.C. § 7903(5)(A)(iii) (providing that "an action in which a manufacturer or seller . . . knowingly violated a [relevant] State or Federal statute" satisfies the predicate exception), *with, e.g., Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019) (holding that "'*knowingly* violates,'" as used in 18 U.S.C. § 924(a)(2), requires that the defendant knew not just of his relevant conduct but also that he fell within a status making that conduct illegal). As Plaintiffs note, these cases dealt with criminal sentences rather than the ruinous civil liability that manufacturers and retailers would face under Plaintiffs' interpretation of the PLCAA. If that were any distinction, it would not change the "ordinary English grammar" that drove the Supreme Court's holdings in those cases and that compels a similar result here. *Rehaif*, 139 S. Ct. at 2196. Of course, those Supreme Court holdings, not the District of Maryland's unpublished decision in *Brady*, are binding. And regardless, *Brady* aligns with them: to finish the sentence that Plaintiffs only partially quote, the "relevant question"

10

there was whether the plaintiffs had "sufficiently alleged that [the retailer defendants] knew or had reasonable cause to believe that Mr. Mace," who purchased a firearm that he used against himself, "was prohibited from possessing a firearm under Maryland law," and thus that the sale was illegal. *Brady v. Walmart Inc.*, No. 8:21-cv-1412-AAQ, 2022 WL 2987078, at *9 (D. Md. July 28, 2022).

The Complaint here does not allege any knowing violations of Virginia law. Nor for that matter does it allege any deceptions, let alone knowing ones, and thus fails to meet even Plaintiffs' preferred scienter requirement. For all these reasons, none of Plaintiffs' claims satisfy the predicate exception, and all must be dismissed under the PLCAA.

**II.     Plaintiffs Do Not Plausibly Allege that Either Magpul or SureFire Violated Any Virginia Law.**

Even if the PLCAA did not bar all Plaintiffs' claims against Magpul and SureFire at the threshold, those claims must be dismissed because Plaintiffs fail to state plausible claims for relief against either Defendant under the Virginia False Advertising Statute, the Virginia Consumer Protection Act, or Virginia's common law of negligence. As Plaintiffs do not dispute, each of these claims requires a connection between Magpul and SureFire's purported misconduct—namely, the few social-media posts that Plaintiffs construe as false advertisements—and Plaintiffs' injuries. Specifically, the False Advertising Statute requires that Plaintiffs suffered a loss "as the result" of these purportedly false advertisements, *Henry v. R. K. Chevrolet, Inc.*, 254 S.E.2d 66, 67–68 (Va. 1979); the Consumer Protection Act requires reliance on and losses resulting from the purportedly false advertisements, *see Galloway v. Priority Imps. Richmond, LLC*, 426 F. Supp. 3d 236, 244 (E.D. Va. 2019); and common-law negligence requires proximate causation, *see Federico v. Lincoln Mil. Hous., LLC*, 127 F. Supp. 3d 623, 641 (E.D. Va. 2015). All these claims therefore fail for the same fundamental reason already noted: the Complaint does not even allege that the Shooter

11

saw these social-media posts. Thus, Plaintiffs cannot plausibly show that these posts contributed in any way to the harm that Plaintiffs suffered from the Shooter's criminal acts.

Plaintiffs make brief attempts to cure this deficiency in their response memorandum, but they are forced to rely on a few highly general allegations in their Complaint. Plaintiffs allege that the Shooter "purchased various weapons, weapon accessories, and ammunition online from a number of retailers," that he might have "search[ed] online for how-to instructions and instructional videos" for assembling certain weapons, and that he was therefore "exposed to and influenced by Defendants' deceptive and unfair marketing acts and practices while researching and planning the Shooting." Compl. ¶¶ 121–24. In simpler terms, the Shooter used the Internet and Magpul and SureFire's social-media posts were on the Internet, so the Shooter might have been influenced by those posts. But the Internet is a big place. The Shooter was in a general sense "exposed" to a great deal of online information, but in no sense did all that information contribute to his crime. And there is no allegation that the *particular* Magpul or SureFire posts cited in the Complaint contributed to that crime: no allegation about the Shooter's use of any of the relevant social-media sites; no allegation that the Shooter interacted with (*e.g.*, "liked") these or any other Magpul or SureFire posts; no allegation that the Shooter even saw the few posts at issue.[5]

Plaintiffs' allegations are consequently inadequate. Yet they are all that Plaintiffs have to support any claim of causation or reliance. *See* Pls.' Mem. at 16, 21. As a result, Plaintiffs cannot allege these necessary elements in anything but conclusory fashion. And even Plaintiffs' limited, vague allegations are made only "upon information and belief," which is insufficient where, as

---

[5] Plaintiffs' claims as they relate to the Magpul grip fail for a similar reason: the Complaint never says how the grip or Magpul advertising for it contributed to any of Plaintiffs' injuries. As such, it would be especially anomalous for the Court to allow claims related to the grip to go forward to the extent that it dismisses claims related to other gun parts under the PLCAA.

12

here, Defendants do not possess the necessary information that Plaintiffs lack. *See, e.g.*, *Bailey v. Va. Dep't of Alcoholic Beverage Control*, No. 2:18-cv-392, 2019 WL 2590796, at *5 (E.D. Va. Apr. 25, 2019). Nor can Plaintiffs overcome their pleading deficiencies with speculative assertions that discovery might fill in the gaps. The Complaint itself must state plausible claims, and it does not.

Although their claims against Magpul and SureFire fail under Rule 12(b)(6) for this reason alone, Plaintiffs fail to plausibly allege other necessary elements as well. Even assuming that Magpul and SureFire's posts constituted advertisements for purposes of the False Advertising Statute, they did not result in loss (as just seen) and they were not false or misleading. Plaintiffs thus allege that Magpul and SureFire's "marketing practices are *reckless*, deceptive, and misleading." Pls.' Mem. at 19 (emphasis added) (cleaned up). And the word "reckless" does all the work in that formulation: Plaintiffs' basic claim is that young men can exhibit thrill-seeking behavior and that retailers of firearms and firearm parts should temper how they present their products accordingly. *See, e.g.*, *id*. at 19–20. It is unclear how Magpul or SureFire could advertise their products at all under Plaintiffs' amorphous standard. But more to the point, Plaintiffs' recklessness standard is not the standard under the False Advertising Statute, which prohibits, *inter alia*, "representation[s] or statement[s] of fact" that are "untrue, deceptive or misleading." VA. CODE ANN. § 18.2-216(A). Plaintiffs identify no such representations or statements. Their views about how firearm retailers should otherwise be allowed to advertise (if at all) are irrelevant.

Plaintiffs offer no unique defenses of their claims under the Virginia Consumer Protection Act, which therefore fail for the same reasons—especially since, as Plaintiffs agree, these claims must meet Rule 9(b)'s heightened pleading standards to the extent they rely on allegations of fraud. Plaintiffs' negligence claims fails on their own terms, and not just because, as seen above, they

13

fail even to allege the basics for proximate causation. Plaintiffs argue that they are not asserting a general duty, which they admit does not exist under Virginia law, to control third parties' conduct. Rather, they argue that the duty arises from Magpul and SureFire's own conduct, which, Plaintiffs contend, "expos[ed]" them "to the improper conduct of third parties." Pls.' Mem. at 24 (internal quotation marks omitted). This is just another foreseeability argument. As explained in the Third Restatement, on which Plaintiffs rely, "[t]he conduct of a defendant can lack reasonable care insofar as it *foreseeably* combines with or permits the improper conduct of . . . a third party." RESTATEMENT (THIRD) OF TORTS § 19 (emphasis added). But retailers of cars and kitchen appliances do not assume a duty of public care every time they sell something that might be used in a criminal act. As Congress underscored in the PLCAA, retailers of firearm products cannot be held to a different standard. There is no allegation that Magpul or SureFire made unlawful sales; accordingly, Plaintiffs disclaim any negligence claim "based on Defendants' *sale* of their products." Pls.' Mem. at 28. Plaintiffs thus gain no support from cases where, for example, firearms were distributed "in a way that create[d] an illegal firearms market that results in foreseeable injury." *Id*. at 26 (quoting *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1144 (Ohio 2002)). Nor, as explained, could Magpul or SureFire have foreseeably contributed through social-media posts to the improper conduct of a third party who is not even alleged to have seen those posts. Plaintiffs' common-law negligence claim is therefore baseless.

## Conclusion

The claims against Magpul and SureFire should be dismissed.

14

Dated: December 22, 2023

Respectfully submitted,

<u>/s/Michael Weitzner</u>
Michael Weitzner, VSB No. 45049
David H. Thompson*
John D. Ohlendorf*
Brian W. Barnes*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
mweitzner@cooperkirk.com

*Counsel for Defendants Magpul Industries Corp. and SureFire, LLC*

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December, 2023, a true and accurate copy of the forgoing was filed with the Clerk and the Court and served on counsel of record using the CM/ECF system.

*/s/ Michael Weitzner*
Michael Weitzner, VSB No. 45049

*Counsel for Defendants Magpul Industries Corp. and SureFire, LLC*