## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| KAREN LOWY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DANIEL DEFENSE, LLC, et al., <br><br> Defendants. | No. 1:23-cv-01338-CMH-IDD <br><br> (1:23-cv-01501) |

### MAGPUL INDUSTRIES CORP. AND SUREFIRE, LLC'S RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY

Defendants Magpul and SureFire hereby respond to the erroneous assertions in Plaintiffs' proffered Notice of Supplemental Authority, Doc. 182-1, regarding the First Circuit's construction of the PLCAA's predicate exception in *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, No. 22-1823, 2024 WL 227773 (1st Cir. 2024). Magpul and SureFire incorporate the procedural objections to that Notice that other Defendants have raised. But in the event the Court considers that Notice, it does not change the result that the PLCAA requires here: dismissal. The claims asserted in *Estados Unidos Mexicanos*—predicated, as relevant here, on the alleged "aiding and abetting" of alleged "*illegal* downstream sales" by third-party retail sellers—are materially different from the claims asserted here. *Id*. at *12 (emphasis added). Plaintiffs do not allege that Defendants or others engaged in any illegal sales. The First Circuit's application of the predicate exception thus lends no support to Plaintiffs' attempt to apply it here; if anything, the First Circuit's decision illustrates only why that exception does not apply to Plaintiffs' claims.

In *Estados Unidos Mexicanos*, the Mexican Government alleges that "by deliberately facilitating the unlawful trafficking of their guns into Mexico," the defendant manufacturers and

distributor "aid and abet violations" by others "of various federal statutes that prohibit selling guns without a license, exporting guns without a license, and selling to straw purchasers." *Id*. Based on these allegations, the First Circuit held that Mexico had pled knowing violations of predicate federal statutes governing firearm sales that proximately caused the alleged injuries, and thus that Mexico's claims fit the predicate exception.

Plaintiffs argue that these holdings support their own efforts to satisfy the exception's requirements, namely, a predicate statutory violation, knowledge, and proximate cause. But it is just the opposite. Although the First Circuit "conclude[d] that the predicate exception encompasses common law claims in addition to statutory claims," the court immediately clarified that there must always be "a predicate *statutory* violation that proximately causes the harm"—more specifically, a "knowing violation of a statute applicable to the sale or marketing of a qualified [firearms] product." *Id*. at *11 (emphasis added). "So," the court explained, "proof of a statutory violation is a condition to prevailing on, for example, a cause of action for negligence." *Id*. Here, Plaintiffs assert a common-law negligence claim, but it lacks any such predicate. In fact, Plaintiffs nowhere allege a qualifying violation of a statute specifically governing firearm or ammunition sales or marketing.

As for scienter, Mexico's detailed knowledge allegations emphasize the dearth of such allegations here. According to Mexico's complaint, the defendants in that case "are aware of the significant demand for their guns among the Mexican drug cartels, . . . can identify which of their dealers are responsible for the illegal sales that give the cartels the guns, and . . . know the unlawful sales practices those dealers engage in to get the guns to the cartels." *Id*. at *13. Yet "even with all this knowledge, and even after warnings from the U.S. government," the defendants allegedly "continue to supply the very dealers that they know engage in straw sales and large-volume sales

2

to traffic guns into Mexico" and "collectively reap $170 million per year in revenue from this illegal market." *Id.*; *see also id.* at *15 ("Mexico alleges that defendants engage in conduct . . . with the intent of growing and maintaining an illegal market in Mexico[.]"). In the First Circuit's view, these allegations were "remarkably analogous to the facts" in *Direct Sales Co., Inc. v. United States*, 319 U.S. 703 (1943), a drug-conspiracy case where the Supreme Court deemed the conviction supported by sufficient evidence that the supplier "not only knew and acquiesced in the illegal enterprise, but also joined both mind and hand to make its accomplishment possible." *Estados Unidos Mexicanos*, 2024 WL 227773, at *13 (quoting *Direct Sales*, 319 U.S. at 713) (cleaned up).

This is all in direct contrast to the complaint here, where Plaintiffs allege not knowing violations of any Virginia law. This case is therefore nothing like *Estados Unidos Mexicanos* or *Direct Sales*. It is instead more akin to *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), which the First Circuit distinguished. In *Twitter*, "[t]he only affirmative conduct that the defendants engaged in was creating their platforms and making them available to the public, which was not alleged to have been done . . . to support terrorism." *Estados Unidos Mexicanos*, 2024 WL 227773, at *14 (citing *Twitter*, 598 U.S. at 498). Similarly here, Defendants' only affirmative conduct was to market and sell their lawful firearm products, which they did not do—and are not alleged to have done—with any intent to support criminal acts like the Shooter's. The PLCAA forbids imposing liability on them for such acts.

Finally, the First Circuit affirmed that "the starting point for the predicate exception's causation analysis is the 'violation' of 'a State or Federal statute applicable to the sale or marketing' of firearms," meaning that courts must "ask whether '*the violation*' proximately caused the plaintiff's harm." *Id.* at *17 (quoting 15 U.S.C. § 7903(5)(A)(iii)) (emphasis added). Mexico's

3

causal theory was "straightforward": "defendants aid and abet the trafficking of guns to the Mexican drug cartels, and this trafficking has foreseeably required the Mexican government to incur significant costs in response." *Id*. at *16. Although that theory involves criminal acts by third parties (independent downstream retail sellers), the First Circuit held that those acts did not break the alleged chain because they were foreseeable; indeed, they were allegedly "intended." *Id*. at *17.

The causal theory offered here, by contrast, is anything but straightforward: Plaintiffs allege that Defendants somehow proximately caused the Shooter's criminal acts even while they nowhere allege that he saw the alleged advertisements at issue. This is therefore not a case where Defendants have attempted to "complicate" the causal chain. *Id*. at *16. Rather, Defendants have pointed out that Plaintiffs' proposed chain is missing a fundamental link. And any such chain would nevertheless be broken by the independent criminal act of a third party (the Shooter), which, unlike in *Estados Unidos Mexicanos*, Plaintiffs do not and cannot plausibly allege was the proximate result of any supposed violation of Virginia's consumer-protection and false-advertising laws.

Accordingly, the First Circuit's opinion that the defendants' "superseding-criminal-act argument" was "unconvincing" in that case has no bearing on this one. *Id*. at *18. The basis of the causation allegations there were criminal acts (and qualifying statutory violations) allegedly committed by downstream federal firearm licensees, who sold to firearm traffickers. By allegedly aiding and abetting the downstream licensees, the First Circuit reasoned, the defendants themselves were allegedly guilty of those statutory violations, too. *See id*. at **17–18; *see also id*. at *12 (explaining that aiders and abettors bear the same responsibility as principal wrongdoers). Here, Plaintiffs have not and cannot plausibly allege that any Defendant aided and abetted the

4

Shooter's criminal acts, nor can Plaintiffs allege that those acts were foreseeable without rendering firearm manufacturers and distributors legally responsible for every criminal use of a firearm that they sell. The PLCAA was enacted to prohibit that very type of claim.

In sum, if the Court accepts Plaintiffs' Notice of Supplemental Authority and considers *Estados Unidos Mexicanos*, that decision does not change the result that the PLCAA requires here. Plaintiffs' claims must be dismissed.

Dated: February 7, 2024                                         Respectfully submitted,

<div style="margin-left: 50%;">

*/s/Michael Weitzner*
Michael Weitzner, VSB No. 45049
David H. Thompson*
Brian W. Barnes*
John D. Ohlendorf*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
mweitzner@cooperkirk.com

*Counsel for Defendants Magpul Industries Corp. and SureFire, LLC*

*Admitted *pro hac vice*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2024, a true and accurate copy of the foregoing was filed with the Clerk and the Court and served on counsel of record using the CM/ECF system.

*/s/Michael Weitzner*
Michael Weitzner, VSB No. 45049

*Counsel for Defendants Magpul Industries Corp. and SureFire, LLC*