IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

KAREN LOWY, *et al.*,

      Plaintiffs,

v.

DANIEL DEFENSE, LLC, *et al.*,

      Defendants.

Civil Action No. 1:23-cv-1338

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the court on motions to dismiss submitted by all fifteen defendants.

Plaintiffs' suit arises from a shooting on April 22, 2022, at Edmund Burke School in Washington, D.C. That afternoon, when a gunman ("Shooter") opened fire from an apartment window overlooking the school, Plaintiff Karen Lowy was waiting outside the school to pick up her daughter, Plaintiff N.T., and Plaintiff Antonio Harris was a security guard at the school. Bullets struck Lowy and Harris while N.T. sheltered inside the school. In addition to Lowy and Harris's physical injuries, plaintiffs seek to recover for emotional distress.

Plaintiffs describe defendants as manufacturers of assault rifles, rifle accessories, and ammunition. Plaintiffs allege that defendants' liability stems from their negligence, negligence *per se*, and violations of Virginia statutes in a "foreseeable and predictable chain of events" that led to plaintiffs' injuries. Specifically, plaintiffs claim that defendants "have deceptively and unfairly marketed their assault rifles, rifle

1

accessories, and ammunition in ways designed to appeal to the impulsive, risk-taking tendencies of civilian adolescent and post-adolescent males." Those men, according to plaintiffs, then foreseeably use defendants' products in mass shootings. "Upon information and belief," plaintiffs claim that Shooter was one of the men influenced by defendants' marketing practices and relied on defendants' advertisements when purchasing his weapons in Virginia. Plaintiffs allege that, by these acts, all fifteen defendants violated the Virginia False Advertising Statute, Va. Code Ann. § 18.2-216, and the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196 *et seq.* In addition, plaintiffs claim six defendants committed negligence and another six committed negligence *per se* for violations of the National Firearms Act, 26 U.S.C. § 5801 *et seq.*, and the Virginia Uniform Machine Gun Act, Va. Code Ann. § 18.2-288 *et seq.* Plaintiffs seek compensatory and punitive damages owing to these alleged acts. The fifteen defendants, represented by eleven motions to dismiss, seek to dismiss plaintiffs' complaint for failing to invoke the Court's subject-matter jurisdiction under Rule 12(b)(1) and failing to state a claim under Rule 12(b)(6).

Challenges to the Court's subject-matter jurisdiction under Rule 12(b)(1) may be either facial or factual. Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017). A facial challenge, like defendants', contends that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." Id. (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)). Faced with such a challenge, the Court "must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." Kerns, 585 F.3d at 193. "A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." Nadendla v. WakeMed, 24 F.4th 299, 304

(4th Cir. 2022) (quoting <u>ACA Fin. Guar. Corp. v. City of Buena Vista</u>, 917 F.3d 206, 211 (4th Cir. 2019)). Claims survive a Rule 12(b)(6) challenge if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). Put another way, a plaintiff alleges sufficient facts when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

Defendants first challenge plaintiffs' standing. "To invoke federal jurisdiction, a plaintiff bears the burden of establishing the three 'irreducible minimum requirements' of Article III standing:

> (1) an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)."

<u>Beck</u>, 848 F.3d at 269 (quoting <u>David v. Alphin</u>, 704 F.3d 327, 333 (4th Cir. 2013)). Defendants' standing challenge focuses on the second requirement, causation. Alleging causation does not require plaintiffs to allege that the defendants' actions were "the very last step in the chain of causation." <u>Bennett v. Spear</u>, 520 U.S. 154, 169 (1997). In fact, "the causation element of standing does not require the challenged action to be the sole or even immediate cause of the injury." <u>Sierra Club v. U.S. Dep't of the Interior</u>, 899 F.3d 260, 284 (4th Cir. 2018) (citing <u>id.</u>). However, when plaintiffs plead that a third party's actions bridge the causal chain between defendants' conduct and plaintiffs' injuries, that indirectness "may make it substantially more difficult to meet the minimum requirement of Art. III." <u>Warth v. Seldin</u>, 422 U.S. 490 (1975). Plaintiffs cannot satisfy Article III's causation requirement if their injury resulted "from the

*independent* action of some third party not before the court." <u>Simon v. E. Ky. Welfare</u> <u>Rts. Org.</u>, 426 U.S. 26, 42 (1976) (emphasis added). "Indeed, where multiple actors are involved, a plaintiff can establish causation only if the defendant's conduct had a 'determinative or coercive effect upon the action of someone else.'" <u>Alvarez v. Becerra</u>, No. 21-2317, 2023 WL 2908819, at *3 (4th Cir. Apr. 12, 2023) (quoting <u>Bennett</u>, 520 U.S. at 169).

Here, a third party bridges the alleged causal chain between defendants' conduct and plaintiffs' injuries. At the beginning of the alleged causal chain, defendants marketed their weapons and weapons accessories to potential consumers in Virginia. At the end, Shooter injured plaintiffs by firing at an elementary school. This chain relies on Shooter, a third party not before the Court, to link defendants to plaintiffs' injuries. Accordingly, to establish standing against defendants, plaintiffs must allege that defendants' conduct had a determinative or coercive effect upon Shooter's actions.

Much of plaintiffs' complaint concerns defendants' marketing to Virginia residents generally and "young men like the Shooter," <u>id.</u> ¶ 57, but few paragraphs allege the effect of defendants' marketing on Shooter specifically. To link Shooter's actions to Defendant Daniel Defense, LLC, for example, plaintiffs plead that Daniel Defense "advertised to Virginia residents such as the Shooter," Dkt. No. 1 ¶¶ 149, 240, and allege "[u]pon information and belief, the Shooter relied on Defendant Daniel Defense, LLC's advertisements to purchase the DDM4 V7 rifle and DD magazine," <u>id.</u> ¶ 243 (Counts XV–XXVI allege identical reliance on other defendants' advertisements). These allegations fail for two reasons.

4

First, concerning Shooter's reliance on defendants' marketing, plaintiffs' allegations are conclusory. Generally, a plaintiff may plead "based on 'information and belief' if such plaintiff is in a position of uncertainty because the necessary evidence is controlled by the defendant." Ridenour v. Multi-Color Corp., 147 F. Supp. 3d 452, 456 (E.D. Va. 2015). But, like all other allegations, allegations pled upon information and belief "may not be wholly conclusory." Kashdan v. George Mason Univ., 70 F.4th 694, 701 (4th Cir. 2023). If "not supported by any well-pled facts that exist independent of [plaintiffs'] legal conclusions," allegations pled upon information and belief fail. Id. Such is the case here: no factual allegations in the complaint support the conclusion that Shooter relied on defendants' marketing. The complaint does not suggest defendants control such evidence of Shooter's reliance and does no more than speculate that Shooter, like other young men in Virginia, observed defendants' advertisements. Without more support, these pleadings fail to raise plaintiffs' right to relief above the speculative level and can proceed no further. Lokhova v. Halper, 995 F.3d 134, 148 (4th Cir. 2021) ("It is well established that speculative conclusions are insufficient to survive a motion to dismiss.").

Second, viewed most optimistically, plaintiffs allege that Shooter relied on defendants' advertisements when choosing to purchase defendants' products. The Court cannot transform that allegation into an allegation that defendants' marketing had a "determinative or coercive effect" on Shooters' decision to shoot at plaintiffs. While the bounds of Article III's causation requirement may at times seem opaque, "[c]ausation makes its most useful contribution to standing analysis in circumstances that show a clear break in the causal chain." 13A Charles Alan Wright & Arthur R. Miller, Federal

Practice and Procedure § 3531.5 (3d ed. 2024). Here, the actions of a third party injured plaintiffs. As explained above, completing the causal chain requires plaintiffs to allege defendants' conduct had a determinative or coercive effect on that third party's injurious actions. This complaint, however, fails to make that allegation. *Maybe* defendants' advertising coerced Shooter to *purchase* defendants' products (and that allegation, as discussed above, is speculative), but absent is any allegation that defendants' advertising coerced Shooter to attack the elementary school. Without that allegation, plaintiffs' alleged causal chain is incomplete, and plaintiffs lack standing against these defendants.

But, even had plaintiffs invoked standing, the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 7901 *et seq.*, blocks plaintiffs' claims. As the PLCAA's title suggests, the statute protects firearm companies' "lawful" commerce in arms and prohibits plaintiffs from bringing civil liability actions against such companies when their injury results solely from "the criminal or unlawful misuse" of the companies' products by a third party. §§ 7901(b)(1), 7902, 7903(5)(A). The PLCAA contains various exceptions, however, "to ensure that it does not insulate firearm companies against lawsuits resulting from their unlawful behavior." Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc., 91 F.4th 511, 526 (1st Cir. 2024). Here, defendants qualify for the PLCAA's protections, and plaintiffs fail to invoke the Act's exceptions.

The PLCAA protects "a manufacturer or seller of a qualified product, or a trade association" from qualified civil liability actions. § 7903(5)(A). A "qualified product" includes firearms, ammunition, or "a component part of a firearm or ammunition." § 7903(4). Defendants here manufacture rifles (e.g., Defendants Daniel Defense and

Bravo Company), ammunition (e.g., Defendants Federal Cartridge Company and Vista), and component parts (e.g., Defendants Loyal 9 Manufacturing and Centurion Arms), and plaintiffs do not deny most defendants fall within the PLCAA's protections. But plaintiffs allege that the magazines and grips manufactured by Defendants Magpul Industries and Surefire, LLC are not component parts, excluding those defendants from the PLCAA's protections. Plaintiffs cite Prescott v. Slide Fire Solutions, LP, 341 F. Supp. 3d 1175 (D. Nev. 2018) for support, but that case belies their claim. There, the court found that the defendants' bump stocks "are component parts of a rifle and, therefore, constitute qualified products under the PLCAA." Id. at 1190. In reaching that conclusion, "the Court [found] significant the fact that bump stocks replace existing stocks rendering them component parts, even if they are after-market enhancements." Id. The same reasoning applies here: when a firearm user substitutes the original components of their firearm for defendants' magazines and grips, defendants' magazines and grips then become component parts of the newly assembled firearm. See id. at 1189. As manufacturers of component parts, the PLCAA extends to qualified civil liability actions against these manufacturers like the other defendants.

Plaintiffs must invoke one of the PLCAA's exceptions to proceed—defendants fall within the PLCAA's protections, and this suit is a civil action for damages resulting from the criminal misuse of defendants' products by a third party. § 7903(5)(A). One of the PLCAA's exceptions exempts actions "in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." § 7903(5)(A)(iii). "This exception has come to be known as the

7

'predicate exception,' because a plaintiff not only must present a cognizable claim, he or she also must allege a knowing violation of a 'predicate statute.'" Ileto v. Glock, Inc., 565 F.3d 1126, 1132 (9th Cir. 2009), *cert. denied*, 560 U.S. 924 (2010) (citing City of New York v. Beretta U.S.A. Corp., 524 F.3d 384, 390 (2d Cir. 2008), *cert. denied*, 556 U.S. 1104 (2009)). Here, the Court assumes without deciding that the VFAS and VCPA are predicate statutes because, in any event, plaintiffs fail the predicate exception's proximate causation requirement.

Part of the PLCAA's predicate exception asks whether defendants' violation of the predicate statute proximately caused the plaintiffs' harm. § 7903(5)(A)(iii); Estados Unidos Mexicanos, 91 F.4th at 534. In Virginia, the "proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." Wolf v. Fauquier Cnty. Bd. of Supervisors, 555 F.3d 311, 321 (4th Cir. 2009) (quoting Beverly Enterprises-Virginia v. Nichols, 247 Va. 264, 269 (1994)). The pleading standard for proximate cause is not the same as the Article III causation standard discussed above—Article III's pleading standard is lower. DiCocco v. Garland, 52 F.4th 588, 592 (4th Cir. 2022). Therefore, the complaint's deficiencies under Article III also doom plaintiffs' allegations of proximate cause. To briefly reiterate, plaintiffs' allegations that Shooter relied on defendants' advertisements are conclusory, and plaintiffs fail to allege that the shooting "would not have occurred" absent those advertisements. See Wolf, 555 F.3d at 321. So, even further assuming that plaintiffs adequately allege defendants violated the VCPA and VFAS—which the court does not

8

decide—plaintiffs fail to adequately allege those violations proximately caused their injuries.

Plaintiffs appeal to a recent First Circuit decision to argue their causation allegations are sufficient. However, the dissimilarities between the pleadings in that case and this one only underscore the deficiencies here. In Estados Unidos Mexicanos, the Mexican government alleged that several American firearm companies deliberately "engage in conduct—design decisions, marketing tactics, and repeated supplying of dealers known to sell guns that cross the border—with the intent of growing and maintaining an illegal market in Mexico from which they receive substantial revenues." 91 F.4th at 532. This conduct allegedly harmed Mexico by requiring the Mexican government to "incur significant costs in response to the increased threats and violence accompanying drug cartels armed with an arsenal of military-grade weapons." Id. at 534. The First Circuit held Mexico sufficiently alleged that conduct proximately caused the government's injuries, "thereby satisfying the final demand of the predicate exception." Id. at 538. In so holding, the First Circuit contrasted the Mexican government's allegations with the City of Philadelphia's allegations in City of Philadelphia v. Beretta U.S.A. Corp., 277 F.3d 415 (3d Cir. 2002). Estados Unidos Mexicanos, 91 F.4th at 535.

In City of Philadelphia, the City alleged that the defendant firearm companies' "conduct in the marketing and distribution of handguns allows them to fall into the hands of criminals and children, creating and contributing to their criminal use in Philadelphia." 277 F.3d at 419. Like the Mexican government's allegations, the City asserted "their injuries include the costs associated with preventing and responding to

incidents of handgun violence and crime." Id. The district court dismissed the complaint, holding the plaintiffs' claims "failed for lack of proximate cause because their injuries are too remote from the gun manufacturers' alleged conduct." Id. at 423–24. The Third Circuit affirmed; plaintiffs' allegations were too remote to allege proximate cause because plaintiffs failed to allege the gun manufacturers "intend[ed] to inflict injury upon the citizens of Philadelphia . . . ." Id. at 424. The City "at most" alleged the firearm companies possessed an "awareness of the means by which prohibited purchasers end up possessing handguns"—an allegation insufficient to support proximate cause. Id. The First Circuit, meanwhile, held the Mexican government succeeded where the City of Philadelphia failed: Mexico adequately alleged the gun manufacturers' intent, "expressly alleg[ing] that the defendants did know which dealers were making illegal sales." Estados Unidos Mexicanos, 91 F.4th at 535.

Both Estados Unidos Mexicanos and City of Philadelphia are unlike this case. First, in those cases, the government plaintiffs pled that defendants' conduct injured them via years of public expenditure. Plaintiffs here are neither a municipal nor a national government; plaintiffs' injuries are specific to a single incident perpetrated by a single shooter. Accordingly, unlike the government plaintiffs, plaintiffs here had to allege defendants' conduct caused one, specific shooting. As discussed above, these pleadings fail to allege defendants' advertisements caused Shooter's singular attack. Second, plaintiffs' pleadings also echo the deficiencies of those in City of Philadelphia: plaintiffs here allege *some* causation (defendants' advertisements intentionally caused consumers' purchases), but those allegations do not allege proximate causation (defendants' advertisements intentionally caused Shooter's attack).

The deficiencies in plaintiffs' allegations of causation doom all their claims alike. Their claims under the VFAS and VCPA fail the proximate causation prong of the PLCAA's predicate exception, and their claims of negligence and negligence *per se* fare no better. As is axiomatic, claiming negligence requires the plaintiff to show that the defendant's breach "was the proximate cause of injury." Willner v. Dimon, 849 F.3d 93, 113 (4th Cir. 2017). And when a plaintiff claims negligence *per se*, the alleged "statutory violation must be a proximate cause of plaintiff's injury." Kaltman v. All Am. Pest Control, Inc., 281 Va. 483, 496 (2011). The question of proximate cause is usually a question of fact for a jury, but when "reasonable persons may not differ in their conclusions that such negligence was such a cause[,] a trial court properly decide the question as a matter of law." Thomas v. Settle, 247 Va. 15, 20 (1994). Here, reasonable persons may not differ because plaintiffs' pleadings provide no basis for finding proximate cause. So, plaintiffs' negligence and negligence per se claims fail too. Accordingly, it is hereby

**ORDERED** that defendants' motions to dismiss are **GRANTED**, and this case is **DISMISSED**.

Alexandria, Virginia
July 24, 2024

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE