UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| KAREN LOWY, individual and as parent and next friend of N.T., | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Case No. 1:23cv-01338-MSN-IDD |
| v. | : | (1:23cv-01501) |
| | : | |
| DANIEL DEFENSE, LLC; FAB DEFENSE, INC.; FAB MANUFACTURING & IMPORT OF INDUSTRIAL EQUIPMENT LTD.; BRAVO COMPANY USA, INC.; LOYAL 9 MANUFACTURING, LLC; FOSTECH, INC.; HEARING PROTECTION, LLC; CENTURION ARMS, LLC; MAGPUL INDUSTRIES CORP.; FEDERAL CARTRIDGE COMPANY; VISTA OUTDOOR, INC.; FIOCCHI OF AMERICA, INC.; FIOCCHI MUNIZIONI S.P.A.; STARLINE, INC.; SUREFIRE, LLC; TORKMAG, INC.; and JOHN DOES 1-20, | : : : : : : : : : : : : : : | |
| | : | |
| Defendants. | : | |

**DEFENDANT FIOCCHI MUNIZIONI S.p.A.'S BRIEF IN
SUPPORT OF ITS MOTIONS FOR A MORE DEFINITE STATEMENT AND TO
DISMISS PLAINTIFFS' COMPLAINT**

1609764120.1

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 4

I.     PLAINTIFF HAS FAILED TO PLEAD FACTS SUFFICIENT TO RENDER
       FIOCCHI MUNIZIONI LEGALLY RESPONSIBLE FOR THE INTERNET
       POSTS OF "fiocchiusa." ........................................................................................... 4

       A.     Fiocchi Munizioni Is Entitled to a More Definite Statement of Plaintiffs'
              Claims Against It Pursuant to Fed. R.Civ.P. 12(e). ...................................... 4

       B.     A Corporate Parent Is Not Vicariously Liable for the Conduct of Its
              Subsidiary. ..................................................................................................... 5

       C.     Plaintiffs Has Already Attributed the "fiocchiusa" Internet Posts in
              Question to Fiocchi of America ...................................................................... 6

II.    FIOCCHI MUNIZIONI IS NOT SUBJECT TO PERSONAL JURISDICTION
       IN VIRGINIA, NOR CAN FIOCCHI MUNIZIONI BE SUBJECT TO THE
       REACH OF VIRGINIA STATUTES ...................................................................... 8

III.   ASSUMING, *ARGUENDO*, THAT PLAINTIFF'S COMPLAINT
       ATTRIBUTES THE "fiocchiusa" INTERNET POSTS TO FIOCCHI
       MUNIZIONI, DISMISSAL IS APPROPRIATE ON GROUNDS ASSERTED
       PREVIOUSLY BY FIOCCHI OF AMERICA ...................................................... 10

       A.     If Fiocchi Munizioni Is Subject to Virginia-law Based Claims, Any
              Vicarious Liability Claims Against Fiocchi Munizioni Would Be Barred
              By the Protection of Lawful Commerce in Arms Act. .................................. 12

              1.     Statutory Background ......................................................................... 12

              2.     This Matter is A "Qualified Civil Liability Action" Under the
                     PLCAA. ............................................................................................. 14

              3.     Even if a Negligence Claim is Legally Cognizable, the PLCAA
                     Clearly Precludes such a Theory of Liability. .................................... 17

       B.     Even if Fiocchi Munizioni is Subject to Virginia Statutory and Common
              Law Negligence Claims, Imposing Liability Under the VFAS and/or
              VCPA Would Violate Fiocchi Munizioni's First Amendment Rights. .......... 17

              1.     Speech Promoting Products is Protected By the First
                     Amendment. ....................................................................................... 18

i

2.      Efforts to Silence One Side of a Public Discussion are Subject to Strict Scrutiny. ....................................................................................... 19

3.      The Speech Restrictions Proposed In the Complaint Do Not Survive a Constitutional Analysis............................................................. 21

C.   If Fiocchi Munizioni is Subject to the Reach of Virginia Legislation, Plaintiff Has Failed to Plead Statutory Claims. ...................................................... 22

1.      Plaintiff Lacks Statutory Standing, Because Her Claims Are Not Within the "Zone of Interests" Protected By Those Statutes.................... 22

2.      The Complaint Fails to Plead Proximate Causation. ............................... 24

3.      The Complaint Does Not Plead that Fiocchi Munizioni Engaged in Deceptive Acts or that the Third-Party Assailant Relied on Any Statement of Fiocchi Munizioni......................................................... 24

4.      The Complaint Does Not Plead Fraud With Specificity........................... 26

CONCLUSION................................................................................................................... 27

1609764120.1

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*44 Liquormat, Inc. v. Rhode Island*,
   517 U.S. 484, 505–06 (1996) ........................................................................................20

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
   591 U.S. 430, 435–36 (2020)........................................................................................10

*Albright v. Oliver*,
   510 U.S. 266 (1994)........................................................................................................1

*Am. Demolition & Nuclear Decommissioning, Inc. v. IBCS Group, Inc.*,
   21 F. Supp. 3d 632 (W.D. Va. 2014) ...........................................................................24

*America Libraries Association v. Pataki*,
   969 F. Supp. 160 (S.D.N.Y. 1997) ...............................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................25

*Ass'n of Nat. Advertisers, Inc. v. Lungren*,
   44 F.3d 726, 739 (9th Cir. 1994) .................................................................................20

*Baker v. Elam*,
   883 F. Supp. 2d 576 (E.D. Va. 2012) ..........................................................................23

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................25

*BHR Recovery Communities, Inc. v. Top Seek, LLC*,
   355 F. Supp. 3d 416 (E.D. Va. 2018) .....................................................................22, 23

*Bigelow v. Virginia*,
   421 U.S. 809 (1975).............................................................................................2, 10, 11

*Bindra v. Michael Bowman & Associates*,
   No. 191866, 2001 WL 1829999 (Va. Cir. Sept. 19, 2001)...........................................23

*Brandenburg v. Ohio*,
   395 U.S. 444 (1969)......................................................................................................24

*Bristol-Myers Squibb Co. v. Superior Court*,
   582 U.S. 255 (2017) .....................................................................................................10

*Brown v. Transurban USA, Inc.*,
   144 F. Supp. 3d 809 (E.D. Va. 2015) ..........................................................................26

1609764120.1

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
447 U.S. 557 (1980)...................................................................................................19

*CFA Institute v. Institute of Chartered Financial Analysis of India*,
551 F.3d 285 (4th Cir. 2005) ......................................................................................8

*CGM, LLC v. BellSouth Telecommunications, Inc.*,
664 F.3d 46 (4th Cir. 2011) ......................................................................................22

*Chiaphua Components Ltd. v. W. Bend Co.*,
95 F. Supp. 2d 505 (E.D. Va. 2000) ...........................................................................8

*Chao v. Rivendell Woods, Inc.*,
415 F.3d 342, 349 (4th Cir. 2005) ..............................................................................4

*City of New York v. Beretta*,
524 F.3d 384 (2d Cir. 2008)......................................................................................16

*Combs v. Bakker*,
886 F.2d 673, 676 (6th Cir. 1989) ..............................................................................8

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
561 F.3d 273, 278 (4th Cir. 2009), *cert. denied* 141 S. Ct. 1057 (2021)...................9

*Cos., Inc. v. IBCS Grp., Inc.*,
425 F. App'x 223, 227 (4th Cir. 2011) ......................................................................23

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).....................................................................................................8

*Douglass v. Nippon Yusen Kabushiki Kavisha*,
46 F.4th 226 (5th Cir. 2022) .......................................................................................9

*Elyazidi v. SunTrust Bank*,
2014 WL 824129 (D.Md. 2014) ..................................................................................9

*Flaum v. Gloucester Lanes, Inc.*,
299 F.R.D. 120, 122 (E.D. Va. 2014) ..........................................................................4

*Frank Brunkhorst Co., LLC v. Coastal Atlantic, Inc.*,
542 F. Supp. 2d 452 (E.D. Va. 2008) ........................................................................16

*Frederick v. Koziol*,
727 F. Supp. 1019, 1021 (E.D. VA. 1990) ..................................................................4

*Gentry v. Hyundai Motor America, Inc.*,
No. 3:13-CV-00030, 2017 WL 354251 (W.D. Va. Jan. 23, 2017).............................25

1609764120.1

*Grease Monkey Inter., Inc. v. Godat*,
    916 S.W.2d 257, 262 (Mo. App. E.D. 1995) ................................................................5

*Good News Club v. Milford Cent. Sch.*,
    533 U.S. 98, 124 (2004) ...........................................................................................20

*Goodyear Dunlop Tire Operations, SA v. Braum*,
    564 U.S. 915 (2011) ...................................................................................................8

*Hanson v. Denckla*,
    357 U.S. 235, 253 (1958) ...........................................................................................9

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) ...................................................................................26

*Healy v. Beer Institute*,
    491 U.S. 324 (1989) .................................................................................................11

*Henry v. R.K. Chevrolet, Inc.*,
    254 S.E.2d 66 (Va. 1979)....................................................................................23, 26

*Huntington v. Attrill*,
    146 U.S. 657 (1892) .................................................................................................11

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46, 50–51 (1988)........................................................................................17

*Ileto v. Glock, Inc.*,
    565 F.3d 1126 (9th Cir. 2009) .................................................................................16

*J. McIntyre Machinery Ltd. v. Nicastro*,
    564 U.S. 873 ..............................................................................................................9

*Jeffries v. District of Columbia*,
    916 F. Supp. 2d 42 (D.D.C. 2015) ...........................................................................17

*JTH Tax, Inc. v. Liberty Services Title, Inc.*,
    543 F. Supp. 2d 504 (E.D. Va. 2008) .........................................................................8

*Junior Sports Magazines, Inc. v. Bonta*,
    80 F.4th 1109 (9th Cir. 2023) .......................................................................19, 20, 21

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*,
    494 U.S. 827 (1990).................................................................................................14

*Lexmark International, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014).............................................................................................22, 24

v

*Martineau v. Weir*,
934 F.3d 385 (4th Cir. 2019) .............................................................................................7

*Marycle, LLC v. First Choice Internet, Inc.*,
890 A.2d 818 (Md. App. 2006)......................................................................................10, 11

*Mid-Missouri Telephone Co. v. Alma Telephone Co.*,
18 S.W.3d 578 (Mo. App. W.D. 2000)...............................................................................5

*N.A.A.C.P. v. Claiborne Hardware Co.*,
458 U.S. 886 (1982)..........................................................................................................17

*Natl. Rifle Assoc. v. Vollo*,
602 U.S. 175, 187 (2024)...................................................................................................20

*Neild v. Wolpoff & Abramson, L.L.P.*,
453 F. Supp. 2d 918, 922 (E.D. VA. 2006) .........................................................................4

*New Hampshire v. Maine*,
532 U.S. 742 (2001)..........................................................................................................6, 7

*Owens v. DRS Auto. Fantom Works, Inc.*,
764 S.E.2d 256 (Va. 2014)................................................................................................26

*Parker v. Cariolion Clinic*,
819 S.E.2d 809, 816-17 (Va. 2018) ....................................................................................3

*PETA v. North Carolina Farm Bureau Fed.*,
60 F.4th 815 (4th Cir. 2023) ............................................................................................17

*Philbrook v. Glodgett*,
421 U.S. 707 (1975)...........................................................................................................14

*Phillips v. Lucky Gunner, LLC*,
84 F. Supp. 3d 1216 (D. Colo. 2015)................................................................................25

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ............................................................................................26

*PSINet, Inc. v. Chapman*,
362 F.2d 227 (4th Cir. 2004) ............................................................................................11

*Reed v. Town of Gilbert*,
576 U.S. 155, 163 (2015)...................................................................................................21

*Ridenour v. Multi-Color Corp.*,
147 F. Supp. 3d 452, 456 (E.D. Va. 2015) .......................................................................27

vi

*Schmidt v. Fair Collection & Outsourcing, Inc.*,
No. 1:17-CV-00313, 2018 WL 445434 (E.D. Va. Jan. 12, 2018) ..........................................23

*Sheeran v. Blyth Shipholding S.A.*,
No. 14-5482, 2015 WL 9048979 (D.N.J. Dec. 16, 2015) ..........................................................6

*Smith & Wesson Brando, Inc. v. Estados Unidos Mexicanos*
605 U.S. 280 (2025) ................................................................................................................15

*Snyder v. Phelps*,
562 U.S. 443 (2011) ................................................................................................................17

*Sorbara v. Carilion Rockbridge Cmty. Hosp.*,
No. 7:23-CV-00078, 2023 WL 5534186 (W.D. Va. Aug. 28, 2023) .....................................27

*Sorrell v. IMS Health, Inc.*,
564 U.S. 552 (2011) ....................................................................................................18, 20, 21

*Soto v. Bushmaster Firearms International, LLC*,
202 A.3d 262 (Conn. 2019) (Robinson, J. dissenting) ...........................................................16

*Student A. v. Liberty University, Inc.*,
602 F. Supp. 3d 901 (W.D. Va. 2022) ...................................................................................26

*Superfos Invest. Ltd. v. FirstMiss Fertilizer, Inc.*,
774 F. Supp. 393, 397 (E.D. VA. 1991) ..................................................................................9

*SunTrust Mortgage, Inc. v. Nationwide Equities Corp.*,
2012 WL 6099363 ....................................................................................................................9

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ...................................................................................................6

*Trans-Radial Solutions, LLC v. Burlington Medical, LLC*,
No. 18-cv-656, 2019 WL 3557879 (E.D. Va. Aug. 5, 2019) .................................................23

*UMG Recordings, Inc. v. Kurbanov*,
963 F.3d 344 (4th Cir. 2020) ...................................................................................................9

*United States v. Hayes*,
555 U.S. 415 (2005) ................................................................................................................14

*United States v. Peoni*,
100 F.2d 401, 402 (2d. Cir. 1938) ..........................................................................................15

*United States v. Kolon Industries, Inc.*,
926 F. Supp. 2d 794 (E.D. Va. 2013) ......................................................................................5

vii

*United States v. Verugo-Urguidez*,
    494 U.S. 259 (1990) ................................................................................................11, 12

*Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*,
    485 F.2d 78, 83 (4th Cir. 1973) ........................................................................................23

*Virginia State Board of Pharmacy v. VA Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) ..........................................................................................................18

*Wall & Associates, Inc. v. Better Business Bureau of Central Virginia, Inc.*,
    685 F. App'x 277 (4th Cir. 2017) .....................................................................................24

*West v. Christopher Consultants, Inc.*,
    No. CL19002447-00, 2020 WL 10458184 (Va. Cir. June 10, 2020) ..................................22

*Williams-Yulee v. Florida Bar*,
    575 U.S. 433 (2015) ..........................................................................................................21

*Xia Bi v. McAuliffe*,
    927 F.3d 177 (4th Cir. 2019) ............................................................................................26

**Statutes**

15 U.S.C. § 7901 ...................................................................................................................4

15 U.S.C. § 7901(a) ........................................................................................................13, 15

15 U.S.C. § 7901(b) ........................................................................................................13, 15

15 U.S.C. § 7902 ..................................................................................................................13

15 U.S.C. § 7903(5) (A)........................................................................................................13

15 U.S.C. § 7903(A) (iii) ......................................................................................................14

Lawful Commerce in Arms Act, 15 U.S.C. §7901, *et seq*...................................................*passim*

Va. Code Ann. § 8.01-328.1 ..................................................................................................8

Va. Code Ann. § 18.2-216 ...................................................................................................26

Va. Code § 59.1-196 .............................................................................................................26

Va. Code § 59.1-197 .............................................................................................................23

Virginia False Advertising Statute, Va. Code Ann. §§ 18.2-216 ......................................2, 24, 26

Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, *et seq*.............................*passim*

## Other Authorities

Eastern District of Virginia Local Rule 7(F) ...................................................................1

Fed. R. Civ. P. 9(b) ...............................................................................................6, 26, 27

Fed. R. Civ. P. 12(b) ..............................................................................................1

Fed. R. Civ. P. 12(b)(1)..........................................................................................3

Fed. R. Civ. P. 12(b) (6)..........................................................................................27

Fed. R. Civ. P. 12(e) ...............................................................................................4

Fed. R. Civ. P. 17....................................................................................................23

U.S. Constitution amend. 1 ........................................................................ *passim*

U.S. Constitution amend. 14 ...................................................................................15

U.S. Constitution amend. art. III............................................................................9, 10

1609764120.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

KAREN LOWY, individually and as parent : 
And next friend of N.T., :
                                        :
        Plaintiffs,                     :
                                        :          Case No. 1:23cv-01338-CMH-IDD
        v.                              :          (1:23cv-01501)
                                        :
DANIEL DEFENSE, LLC, et al.,            :
                                        :
        Defendants.                     :

### DEFENDANT FIOCCHI MUNIZIONI S.p.A.'S BRIEF IN SUPPORT OF ITS MOTIONS FOR A MORE DEFINITE STATEMENT AND TO DISMISS PLAINTIFFS' COMPLAINT

In accordance with Rule 12(b) of the Federal Rules of Civil Procedure and Eastern District of Virginia Local Rule 7(F), Defendant Fiocchi Munizioni S.p.A. ("Fiocchi Munizioni") respectfully submits this Brief in Support of its Motions For a More Definite Statement and to Dismiss Plaintiffs' Complaint in the above-referenced matter.[1]

### INTRODUCTION

Plaintiffs allege that Fiocchi Munizioni[2] "is a corporate entity with a principal place of business in Italy." Compl. ¶ 35. Plaintiffs allege further that Fiocchi Munizioni "is the parent company of Defendant Fiocchi of America, Inc." ("Fiocchi of America"), a Missouri corporation. *Id.* Plaintiffs make no further factual allegations specific to Fiocchi Munizioni. Importantly, Plaintiffs allege that Fiocchi of America—not Fiocchi Munizioni—"manufactures and sells

---

[1] Fiocchi Munizioni was first served with the Complaint in this action on or about February 25, 2025, while this matter was pending before the United States Court of Appeals for the Fourth Circuit. Fiocchi Munizioni has previously filed a motion to dismiss the *Antonio Harris* case.

[2] For purposes of the present motion to dismiss, Fiocchi Munizioni presumes the truth of Plaintiffs' averments of facts. *Albright v. Oliver*, 510 U.S. 266, 268 (1994) (holding that, at this stage, well-pleaded allegations must be considered true).

1

1609764120.1

ammunition," and allege that the criminal assailant, "Shooter," acquired ammunition associated with Fiocchi of America—not Fiocchi Munizioni.  Compl. ¶¶ 19, 34.

Notwithstanding the absence of factual allegations against Fiocchi Munizioni, Plaintiffs seek to hold Fiocchi Munizioni liable for the criminal and unlawful actions of a third-party assailant, "Shooter," who shot and physically injured Plaintiff, Karen Lowy.  Plaintiffs purport to state claims against Fiocchi Munizioni for statutory violations[3] of the Virginia False Advertising Statute (Va. Code Ann. §§ 18.2-216 ("VFAS")), and the Virginia Consumer Protection Act (Va. Code Ann. §§ 59.1-196, *et seq*. ("VCPA")) as well as for common law negligence.

Beyond alleging that Fiocchi Munizioni is the corporate parent of Fiocchi of America, Plaintiffs have failed to make any factual allegation specific to Fiocchi Munizioni.  Instead, Plaintiffs conflate Fiocchi Munizioni and Fiocchi of America into a single "Fiocchi" entity and then allege that the unspecified "Fiocchi" entity violated the VFAS and/or VCPA by engaging in Internet communications from an unspecified location under an account labeled "fiocchiusa" in a manner that purportedly affected "disturbed" individuals who were "highly susceptible" to "promotional messages."  Compl. ¶¶ 63, 72–73, 86.  Regardless of their place of origin, however, those "fiocchiusa" posts do not promote criminal or unlawful activity, and they do not state anything false or misleading; they merely reflect the lawful possession and use of firearms and ammunition. *Id*.

There is no allegation that Fiocchi Munizioni is somehow the alter ego of Fiocchi of America, or otherwise responsible for the acts of Fiocchi of America.  Accordingly, in the absence of any allegation that Fiocchi Munizioni had anything to do with the shooting, Plaintiffs' claim

---

[3] At this stage of the proceedings, Fiocchi Munizioni is addressing the claims that Plaintiffs have pled.  In so doing, Fiocchi Munizioni does not concede that the Virginia statutes at issue are applicable to the conduct alleged in the Complaint. *See Bigelow v. Virginia*, 421 U.S. 809 (1975) (precluding extraterritorial reach of state statutes that purport to regulate interstate commerce).  See Declaration of Luigi Maria Miraglia, attached hereto as Exhibit "A".

2

against Fiocchi Munizioni boils down to an ill-fated contention that Fiocchi Munizioni can be held liable in this case simply because it owned the stock of Fiocchi of America.[4]  As explained in further detail below, Plaintiffs' claims against Fiocchi Munizioni fail for at least the following reasons:

- Plaintiffs have alleged nothing more than that Fiocchi Munizioni was the corporate parent of Fiocchi of America; they have not alleged any basis to support a claim that Fiocchi Munizioni is liable for acts Plaintiffs attribute to Fiocchi of America.  Having already attributed the ammunition in question to Fiocchi of America, and having already claimed that Fiocchi of America is responsible for the Internet posts made under the "fiocchiusa" account, Plaintiffs should not be permitted to attribute those same acts to Fiocchi Munizioni, which is a totally separate entity.

- The Court lacks personal jurisdiction over Fiocchi Munizioni, which, as Plaintiffs concede, is an Italian entity with no ties to the United States or the Commonwealth of Virginia in the context of this claim.  Moreover, under the Commerce Clause (U.S. Const. Art. I, § 8, cl. 3) Fiocchi Munizioni, an Italian entity that did not act outside of Italy, cannot be subject to the requirements of Virginia statutes that, contrary to Plaintiffs' suggestion, do not have unfettered extraterritorial reach.

Assuming, *arguendo*, however, that Plaintiffs' Complaint can be construed to state allegations against Fiocchi Munizioni that could be subject to the extraterritorial reach of the Virginia legislature, then Fiocchi Munizioni would be entitled to dismissal of Plaintiffs' claims on the same bases asserted by its former subsidiary Fiocchi of America.[5]  To wit:

- Plaintiffs' claims are barred by the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. §7901, *et seq*.

- Plaintiffs' claims are barred by the First Amendment.

- Plaintiffs do not state a colorable claim under the VFAS or VCPA.

---

[4] Fiocchi Munizioni no longer holds any shares of Fiocchi of America, Inc.  *See* Declaration of Luigi Maria Miraglia (attached hereto as Exhibit "A").

[5] Fiocchi Munizioni cannot be held vicariously liable for purported actions of Fiocchi of America that were not actionable with respect to Fiocchi of America.  *See Parker v. Cariolion Clinic*, 819 S.E.2d 809, 816-17 (Va. 2018).

## ARGUMENT

I.    **PLAINTIFFS HAVE FAILED TO PLEAD FACTS SUFFICIENT TO RENDER FIOCCHI MUNIZIONI LEGALLY RESPONSIBLE FOR THE INTERNET POSTS OF "fiocchiusa."**

Plaintiffs do not allege that Fiocchi of America is the alter ego of Fiocchi Munizioni; to the contrary, Plaintiffs allege that those entities are separate corporations.    Compl. ¶ 34–35. Accordingly, there is no basis in the Complaint for any inference that Fiocchi Munizioni is vicariously liable for or otherwise legally responsible for purported conduct that Plaintiffs have already attributed to Fiocchi of America.

A.    **Fiocchi Munizioni Is Entitled to a More Definite Statement of Plaintiffs' Claims Against It Pursuant to Fed. R. Civ. P. 12(e).**

As presently configured, the Complaint provides Fiocchi Munizioni with no notice of the claims against it.    Under Rule 12(e), "[a] party may move for a more definite statement of a pleading . . . which is so vague or ambiguous that the party cannot reasonably prepare a response." A Rule 12(e) motion is the appropriate remedy "if a complaint is ambiguous or lacks sufficient information to allow a defendant to prepare a responsive pleading." *Neild v. Wolpoff & Abramson, L.L.P.*, 453 F. Supp. 2d 918, 922 (E.D. VA. 2006). A court should require a more definite statement if a complaint fails to "give[] defendants fair notice of the claims against them." *Frederick v. Koziol*, 727 F. Supp. 1019, 1021 (E.D. VA. 1990). "[T]he sufficiency of a complaint depends on 'whether the document's allegations are detailed and informative enough to enable the defendant to respond.'" *Flaum v. Gloucester Lanes, Inc.*, 299 F.R.D. 120, 122 (E.D. Va. 2014) (quoting *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 349 (4th Cir. 2005)). The motion should be denied only when "the information sought by the movant is available or properly sought through discovery." *Frederick*, 727 F. Supp. at 1020–21.

4

1609764120.1

Here, Counts X and XXIII of Plaintiffs' Complaint do not adequately establish what actionable conduct Plaintiffs allege against Fiocchi Munizioni.  Rather, the Complaint lumps together two distinct corporate entities as "Fiocchi" without distinguishing the actions of the two entities or alleging specific wrongs against Fiocchi Munizioni. *See, e.g.*, Compl. ¶¶ 213, 322. As a result, the Complaint offers insufficient facts to establish what Fiocchi Munizioni is alleged to have done.  Instead, the Complaint seems to suggest simply that Fiocchi Munizioni is liable for the same purported acts or omissions as Fiocchi of America for the same purported legal reasons.

The Complaint therefore leaves Fiocchi Munizioni unequipped to frame its defense. The Federal Rules require more. Fiocchi Munizioni respectfully requests that this Court order Plaintiffs to provide a more definite statement.

## B.    A Corporate Parent Is Not Vicariously Liable for the Conduct of Its Subsidiary.

The Court will apply the law of the subsidiary, Fiocchi of America, to determine whether Fiocchi Munizioni could be responsible for the alleged acts of Fiocchi of America.  *United States v. Kolon Indus., Inc.*, 926 F. Supp. 2d 794, 815 (E.D. Va. 2013).  Here, Fiocchi of America is a Missouri corporation (Compl. ¶ 34), so the law of Missouri will control the inquiry.  *Id*.

Under Missouri law, a parent corporation is not liable for the acts of its subsidiary, absent circumstances that would permit the opposing party to pierce the corporate veil.  *Mid-Missouri Tel. Co. v. Alma Tel. Co.*, 18 S.W.3d 578, 582 (Mo. App. W.D. 2000) (citing *Grease Monkey Inter., Inc. v. Godat*, 916 S.W.2d 257, 262 (Mo. App. E.D. 1995)).  Here, there is no allegation to support any attempt to pierce the corporate veil.  *See Mid-Missouri Tel.*, 18 S.W.3d at 578. Accordingly, there is no basis for any assertion that Fiocchi Munizioni is vicariously liable for the acts Plaintiffs have already attributed to Fiocchi of America.

1609764120.1

C.       **Plaintiffs Have Already Attributed the "fiocchiusa" Internet Posts in Question to Fiocchi of America.**

Plaintiffs identify Fiocchi Munizioni and Fiocchi of America as two distinct corporate entities—the latter of which, Plaintiffs allege, makes and sells ammunition.  Compl.  ¶ 34. Nevertheless, Plaintiffs go on to conflate the two entities[6] in a series of "group pleading" allegations attributing responsibility for Internet posts made under the account "fiocchiusa" to "Defendant Fiocchi."  Compl. ¶¶ 62, 72–73, 86.  Plaintiffs then use the non-specific term "Fiocchi Defendants" in its substantive averments.  Compl. ¶¶ 212–17, 321–27.  As an initial matter, Plaintiffs' use of the "Fiocchi" or "Fiocchi Defendants" in this context is not sufficient to attribute those posts to either entity.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (holding that pleadings that lump together defendants without identifying the specific acts attributable to each violate Rule 9(b)); *Sheeran v. Blyth Shipholding, S.A.*, No. 14-5482, 2015 WL 9048979, at *3  (D.N.J. Dec. 16, 2015) (holding that "group pleading" that lumps together defendants violates Rule 8).

The problems presented by Plaintiffs' group pleading are amplified by the fact that Plaintiffs have already attributed the same Internet posts to Fiocchi of America.  *See generally* Lowy Opposition Brief, ECF No. 175.  In so doing, Plaintiffs attributed the conduct relating to the making and sale of Fiocchi-branded ammunition in this case to Fiocchi of America.  *See* Lowy Opposition Brief, ECF No. 144, at 1, 5, 15–16, 19–21.  Plaintiffs do not even mention Fiocchi Munizioni in that submission, much less attribute any conduct to it.  *Id*.

The doctrine of judicial estoppel precludes a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceedings."  *New*

---

[6] Plaintiffs ignore the separate corporate existences of Fiocchi Munizioni and Fiocchi of America by using the singular "Defendant Fiocchi" to describe the Plaintiffs' combination of "Fiocchi" entities.  Compl. ¶¶ 72–73, 86.

6

*Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting 18 Moore's Federal Practice §134.30 at 134–62 (3d ed. 2000)).  The Fourth Circuit, in the context of an effort to preclude personal injury/assault claims by an individual that had recently concluded bankruptcy proceedings, rejected a judicial estoppel argument based on a three-part inquiry that focused on the nature of the conduct of the party against whom the doctrine was being invoked.  *Martineau v. Weir*, 934 F.3d 385, 394 (4th Cir. 2019).  Nevertheless, citing *New Hampshire*, *supra*, the *Martineau* court noted that judicial estoppel is an equitable doctrine that depends upon the "specific factual context[]" in which it is being applied, and not upon "any general formulation" or "inflexible rule or standard."  *Id*.  (citing *New Hampshire*, 532 U.S. at 750–51.)

In this case, the application of judicial estoppel should not require a finding of bad faith or intentional deception on Plaintiffs' part, since, unlike *Martineau*, Plaintiffs are not being precluded from pursuing their claim.  Rather, Plaintiffs are only being required to narrow their claim to the entity that they already stated was the source of the Internet posts in question.  On the other hand, Fiocchi Munizioni has no notice of what it is alleged to have done to prompt its involvement in this lawsuit—in relation to its subsidiary or otherwise.  Accordingly, regardless of whether previously articulated aspects of the judicial estoppel doctrine are technically met, Plaintiffs already have a defendant to pursue. Moreover, if it is not dismissed from this case, Fiocchi Munizioni would be left to defend claims based on unspecified conduct of which it has no notice. Therefore, even if the ruling is not specifically grounded in judicial estoppel, Fiocchi Munizioni should not be required to defend claims that Plaintiffs have failed to articulate.

Based on the foregoing, it appears that the doctrine of judicial estoppel can apply to these facts.  At a minimum, however, Plaintiffs' contradictory positions reveal that Plaintiffs have failed

to state any colorable claim against Fiocchi Munizioni, and Plaintiffs' claims against Fiocchi Munizioni must, therefore, be dismissed.

## II. FIOCCHI MUNIZIONI IS NOT SUBJECT TO PERSONAL JURISDICTION IN VIRGINIA, NOR CAN FIOCCHI MUNIZIONI BE SUBJECT TO THE REACH OF VIRGINIA STATUTES.

Plaintiffs have the burden of establishing the Court's personal jurisdiction over Fiocchi Munizioni by a preponderance of the evidence.[7] *JTH Tax, Inc. v. Liberty Servs. Title, Inc.*, 543 F. Supp. 2d 504, 505 (E.D. Va. 2008) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (6th Cir. 1989)). Here, there is no credible argument that Fiocchi Munizioni is "at home" in Virginia, so the Court does not possess general personal jurisdiction over it. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citing *Goodyear Dunlop Tire Operations, SA v. Braum*, 564 U.S. 915 (2011)). Therefore, the exercise of personal jurisdiction over Fiocchi Munizioni will depend upon the existence of specific personal jurisdiction under the Virginia long-arm statute, Va. Code Ann. § 8.01-328.1. *See Chiaphua Components Ltd. v. W. Bend Co.*, 95 F. Supp. 2d 505, 509 (E.D. Va. 2000). No such jurisdiction exists in this case.

The Virginia long-arm statute extends personal jurisdiction to the outer limits of the due process clause; accordingly, if Fiocchi Munizioni's Virginia ties could support personal jurisdiction under a due process test, personal jurisdiction over it would be appropriate. *CFA Inst. v. Inst. of Chartered Fin. Analysis of India*, 551 F.3d 285, 293 (4th Cir. 2005). The United States Court of Appeals for the Fourth Circuit has reduced the due process test for personal jurisdiction to the following three considerations:

> (1) the extent to which the defendant purposely availed itself of the privilege of conducting activities in the State;

---

[7] Fiocchi Munizioni is an Italian corporation with its principal place of business in Lecco, Italy. While it was at one time the sole shareholder of Fiocchi of America, Inc., Fiocchi Munizoni, itself, does not have a place of business in the United States. Declaration of Luigi Maria Miraglia (attached hereto as Exhibit "A").

(2) whether the plaintiffs' claims arise out of those activities directed at the State; and

(3) whether this exercise of personal jurisdiction would be constitutionally reasonable.

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009), *cert. denied* 141 S. Ct. 1057 (2021)). None of these considerations support the assertion of personal jurisdiction over Fiocchi Munizioni in this case.

Plaintiffs' Complaint does not allege a single act relevant to Plaintiffs' claims that Fiocchi Munizioni performed in Virginia. Electronic communications emanating from outside Virginia are not sufficient to establish personal jurisdiction over the sender, even if those communications are directed to a Virginia resident. *SunTrust Mortg., Inc. v. Nationwide Equities Corp.*, 2012 WL 6099363, at *5 (E.D. Va. 2012) (citing *Superfos Invest. Ltd. v. FirstMiss Fertilizer, Inc.*, 774 F. Supp. 393, 397 (E.D. VA. 1991)). Rather than focusing on the acts of Fiocchi Munizioni, however, Plaintiffs seek to establish personal jurisdiction by referring to acts that the third-party assailant, "Shooter," committed in Virginia. Compl. ¶¶ 10–19. But there is no basis in the Complaint or otherwise for concluding that Fiocchi Munizioni purposefully availed itself of a Virginia forum for this case. *See J. McIntyre Mach. Ltd. v. Nicastro*, 564 U.S. 873, 880–81 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Accordingly, Plaintiffs' Complaint against Fiocchi Munizioni should be dismissed on personal jurisdiction grounds. *See Douglass v. Nippon Yusen Kabushiki Kavisha*, 46 F.4th 226, 232 (5th Cir. 2022) (confirming that foreign companies can challenge lawsuits on personal jurisdiction grounds).

The Supreme Court has recognized that concepts of personal jurisdiction serve to protect defendants from "the coercive power of a state that may have little legitimate interest in the claims

in questions." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 263 (2017). This concern is particularly amplified in this case, where an Italian entity is being haled into a Virginia court by a resident of Maryland, to respond to claims made under Virginia statutes, relating to criminal acts undertaken in Washington, D.C. by a citizen of Maryland.

The Commerce Clause precludes a state legislature from acting extraterritorially in matters involving interstate commerce. *See Bigelow v. Virginia*, 421 U.S. 809 (1975). In the specific context of Internet commerce, the Commerce Clause precludes states from regulating Internet posts made by out-of-state entities when the posts are not directed specifically to residents of the regulating state. *See Marycle, LLC v. First Choice Internet, Inc.*, 890 A.2d 818 (Md. App. 2006) (citing *Am. Librs. Assoc. v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997)). Under these precedents, the Commerce Clause precludes the Virginia legislature from regulating the acts of an Italian company that did nothing in Virginia. Accordingly, Fiocchi Munizioni cannot be held liable for violating any the VFAS or VCPA.

III.    **ASSUMING, *ARGUENDO*, THAT PLAINTIFFS' COMPLAINT ATTRIBUTES THE "fiocchiusa" INTERNET POSTS TO FIOCCHI MUNIZIONI, DISMISSAL IS APPROPRIATE ON GROUNDS ASSERTED PREVIOUSLY BY FIOCCHI OF AMERICA.**

The vagueness of Plaintiffs' allegations against Fiocchi Munizioni puts Fiocchi Munizioni in a difficult position in terms of framing its legal positions. As set forth above, the pleadings indicate that Fiocchi Munizioni and Fiocchi of America are distinct legal entities. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 435–36 (2020) (holding that, in the absence of any attempt to pierce the corporate veil, corporate affiliates licensed in other countries are legally separate from American corporations). Therefore, if the Court reads Plaintiffs' allegations to state that Fiocchi Munizioni is an Italian entity resident in Italy that did not commit any act relevant to this lawsuit in Virginia, then this action would be precluded, because, *inter alia*,

10

the Commerce Clause precludes the Virginia legislature from regulating foreign entities conducting business on foreign soil.  *See Bigelow*, 421 U.S. at 821–24 (1975) (holding that the Virginia legislature could not regulate acts of a publisher in New York).  *See also Huntington v. Attrill*, 146 U.S. 657, 669 (1892); *Elyazidi v. SunTrust Bank*, 2014 WL 824129, at *8 (D.Md. 2014) (quoting *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989), for the proposition that the Commerce Clause "precludes the application of a state statute to commerce that takes place wholly outside of a State's borders, whether or not the commerce has effects within the state").

In *America Libraries Association v. Pataki*, the District Court for the Southern District of New York applied the holding of *Healy* to Internet commerce and held that states may not impose their policies onto Internet-based activity occurring outside of that state's boundaries.[8]  969 F. Supp. at 173–77.  A few years later, the United States Court of Appeals for the Fourth Circuit quoted *Pataki* extensively and applied its rationale to strike down a Virginia statute as violating the Commerce Clause.  *PSINet, Inc. v. Chapman*, 362 F.2d 227, 239–40 (4th Cir. 2004).  For the same reasons cited in those opinions, any attempt to impose the requirements of a Virginia statute on an Italian entity acting in Italy would violate the Commerce Clause.  Therefore, absent any allegation that Fiocchi Munizioni did anything relevant to this lawsuit in Virginia, the VCPA and VFAS cannot govern Fiocchi Munizioni's conduct in this case.

Conversely, should the Court read the Complaint to assert that Fiocchi Munizioni did commit some relevant act in Virginia, then Fiocchi Munizioni would possess First Amendment and Due Process rights, which would preclude the claims against it.  *See United States v. Verugo-*

---

[8] In *Marycle, LLC v. First Choice Internet, Inc.*, the Court of Special Appeals of Maryland suggested that there could be types of Internet commerce that could be subject to state regulation under *American Libraries Association v. Pataki*. 890 A.2d at 818.  In so doing, the Court stated that Internet communications specifically directed to the residents of a particular state could be subject to state regulation, but that general Internet postings that must be accessed by the user—like those at issue here—are not subject to state regulation.  *Id.* at 843–45.

11

*Urguidez*, 494 U.S. 259, 265–75 (1990).  Either way, this action should not proceed against Fiocchi Munizioni.

To be clear, Fiocchi Munizioni submits that it is an Italian corporation with a place of business in Lecco, Italy.  The lone act alleged against it specifically is that it was at one time the sole shareholder of Fiocchi of America, Inc., which is a Missouri corporation separate and distinct from Fiocchi Munizioni.  Based on that lone averment, there is absolutely no reason why Fiocchi Munizioni should be subject to the laws of Virginia or otherwise be a party to this lawsuit. Nevertheless, if the Complaint can somehow be read to allege that Fiocchi Munizioni is subject to the reach of Virginia statutes, and is subject to the jurisdiction of a Virginia court, then, to the extent that plaintiffs allege that Fiocchi Munizioni is vicariously liable for the acts of Fiocchi of America, Fiocchi Munizioni should be entitled to dismissal on the same bases asserted by Fiocchi of America.  *See*, note 6, *supra*.  Under these circumstances, Fiocchi Munizioni would be entitled to dismissal of the Complaint on the following grounds.

A.    **If Fiocchi Munizioni Is Subject to Virginia-law Based Claims, Any Vicarious Liability Claims Against Fiocchi Munizioni Would Be Barred By the Protection of Lawful Commerce in Arms Act.**

1.    **Statutory Background**

In 2005, Congress enacted the PLCAA, for, among other purposes:

> [t]o prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended.

15 U.S.C. § 7901(b)(1). Among the eight findings supporting the PLCAA are the following:

> (5) Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be

liable for the harms caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed or intended.

(6) The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system, erodes public confidence in our Nation's law, threatens the diminution of a basic constitutional right and civil liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States and constitutes an unreasonable burden on interstate and foreign commerce of the United States.

15 U.S.C. § 7901(a)(5)–(6).

The operative section of the PLCAA succinctly provides that "[a] qualified civil liability action may not be brought in any Federal or State Court." 15 U.S.C. § 7902. Under this statute, the term "qualified civil liability action"

. . . means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party . . .

15 U.S.C. § 7903(5)(A).

The definition of a "qualified civil liability action" is subject to six statutory exceptions, only one of which is relevant to this lawsuit. The relevant exception—known as the "predicate exception"—provides that the definition of the term "qualified civil liability action" does not include:

(iii) an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including—

(I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

13

> (II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection(g) or (n) or section 922 of Title 18[.]

15 U.S.C. § 7903(A)(iii).

### 2.    This Matter is A "Qualified Civil Liability Action" Under the PLCAA.

The dispositive statutory interpretation issue in this case is straightforward: when enacting the PLCAA, did Congress intend state consumer protection statutes of general application—like the VCPA and VFSA—to override the express legislative intent of the PLCAA?  Congress did not.

The starting point of any statutory analysis is the language of the statute itself.  *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990).  In analyzing statutes, courts are not to look at isolated sentences and phrases, but must instead examine the entire law as written, in the context of its object and policy.  *Philbrook v. Glodgett*, 421 U.S. 707, 713 (1975).  Federal statutes must not be interpreted in a manner that frustrates the statute's Congressional purpose. *United States v. Hayes*, 555 U.S. 415, 427 (2005).

Congress's manifest purpose in enacting the PLCAA was to assure law-abiding individuals' Constitutional right to access firearms and ammunition by protecting firearm and ammunition manufacturers and sellers from lawsuits based upon third-parties' unlawful use of their products.  15 U.S.C. § 7901(a)(5).  Contrary to the tenor of the Complaint, the lawful sale of firearms and ammunition does not promote violence or criminal activity.[9]  Rather, as stated expressly by Congress, this lawful sale of firearms and ammunition preserves citizens' access to

---

[9] The social media posts of "fiocchiusa" depicted in the Complaint do not advocate for or promote criminal behavior. Rather, they simply portray the ownership and use of firearm ammunition in a positive manner.

14

1609764120.1

those items and guarantees the rights, privileges, and immunities under the Fourteenth Amendment of the United States Constitution.  15 U.S.C. § 7901(b)(2–3).

Setting aside the Commerce Clause prohibitions upon Plaintiffs' position, by seeking to shoehorn the VFAS and the VCPA into the PLCAA's definition of "a State or Federal statute applicable to the sale or marketing of the product" and thereafter claiming that Internet communications portraying firearms and ammunition in a positive manner violate those statutes, the Complaint seeks to strip the PLCAA of its intended effect, so long as the civil defendant made positive statements about firearms and ammunition in a public discussion.  In this scenario, the legal protection afforded to firearms and ammunition manufacturers under the PLCAA would evaporate, and the "predicate exception" would effectively nullify the stated purpose of the PLCAA.  The statutory language does not permit such a result.

Recently, in *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280 (2025), the Supreme Court faced a situation analogous to this case, in which the Government of Mexico alleged that several firearm manufactures aided and abetted unlawful sales that routed guns to Mexican Drug Cartels.  605 U.S. at 284–85.  In holding that the PLCAA barred the claims, the Court, per Justice Kagan, rejected the notion that "design and marketing decisions" that allegedly made the firearms attractive to bad actors did not give rise to potential liability under PLCAA's "predicate exception," when the same features also made the firearms attractive to normal, law-abiding consumers.  *Id*. at 297–98.  Accordingly, the court held that PLCAA's "predicate exception" provides for accomplice liability only when there is a plausible allegation that the defendant participated in the violent act as something that it wished to bring about and make succeed.  *Id*. at 298–99 (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2d. Cir. 1938)).

15

Justice Kagan observed that any broader interpretation of the predicate exception would risk the exception swallowing most of the rule. *Id*. at 299.

The same rationale that drove the unanimous Supreme Court ruling in *Estados Unidos* compels the dismissal of the matter *sub judice*. Here, Plaintiffs allege nothing more against "Fiocchi" than that "it" allegedly participated in Internet posts that attracted a criminal to harm others. There is no allegation that "Fiocchi" desired that any third person would harm anyone else. In the absence of such an allegation, the inquiry ends there. The PLCAA does not allow for claims of the type alleged.

The statutory interpretation and legislative history of the PLCAA has been laid out extensively in several appellate opinions. *See, e.g.*, *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009); *City of New York v. Beretta*, 524 F.3d 384 (2d Cir. 2008); *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262 (Conn. 2019) (Robinson, J. dissenting). Notwithstanding all of the detailed analysis of the statute's words, phrases, and examples, and the extensive legislative debate preceding its enactment, any judicial interpretation of the PLCAA must remain focused on the statute's stated purpose: to preserve the individual liberties of American citizens to keep and bear arms by preventing manufacturers and suppliers of firearms and ammunition from being subjected to civil lawsuits based on third-parties' criminal use of firearms. This rationale compels a dismissal of this matter.

Fiocchi Munizioni notes, and respectfully requests, the Court to take judicial notice of the myriad thorough and learned arguments of co-defendants regarding the PLCAA and the "predicate exception," to which Plaintiffs have already responded completely. *See Frank Brunkhorst Co., LLC v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 457 (E.D. Va. 2008) (interpreting Eastern District

16

of Virginia Local Rules to permit parties to incorporate briefs by reference when neither side obtains a clear advantage by doing so.)

### 3. Even if a Negligence Claim is Legally Cognizable, the PLCAA Clearly Precludes such a Theory of Liability.

Given that plaintiffs have not alleged any independent conduct of Fiocchi Munizioni, plaintiffs do not explain why they have limited their common law negligence claim to Fiocchi Munizioni.  Compl. ¶¶ 370–82.  Nevertheless, the PLCAA bars common law negligence claims based on criminal acts of third parties.  *Jeffries v. District of Columbia*, 916 F. Supp. 2d 42 (D.D.C. 2015).

It is true that Plaintiffs do not identify Fiocchi Munizioni as a manufacturer or supplier of ammunition.  Compl. ¶¶ 34–35.  And it is perhaps on this basis that Plaintiffs may try to argue that Fiocchi Munizioni is not protected by the PLCAA.  Nevertheless, if Fiocchi Munizioni did not make or sell ammunition relevant to this lawsuit—which it did not—then there is absolutely no reason why it should be a party to this lawsuit.  Either way, the Court should dismiss the negligence claim against Fiocchi Munizioni.

### B. Even if Fiocchi Munizioni is Subject to Virginia Statutory and Common Law Negligence Claims, Imposing Liability Under the VFAS and/or VCPA Would Violate Fiocchi Munizioni's First Amendment Rights.

The Free Speech clause of the First Amendment to the United States Constitution can serve as a defense in state court lawsuits.  *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (citing *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50–51 (1988)).  Courts cannot allow defendants to be held civilly liable for conduct that is protected by the First Amendment.  *See, e.g.*, *N.A.A.C.P. v. Claiborne Hardware Co.,* 458 U.S. 886, 918 (1982); *PETA v. N. Carolina Farm Bureau Fed.*, 60 F.4th 815, 825–26 (4th Cir. 2023) (providing a litany of examples of alleged statutory violations protected by First Amendment).  Since Plaintiffs' claims under the VFAS and VCPA would result

in the speaker being held liable for exercising its First Amendment rights in a public discussion regarding the role of firearms and ammunition in American society, Plaintiffs' claims must be dismissed.

### 1.      Speech Promoting Products is Protected By the First Amendment.

Nearly fifty years ago, the Supreme Court of the United States made clear that commercial speech is not exempt from First Amendment protection. *Va. State Bd. of Pharm v. VA Citizens Consumer Council, Inc.*, 425 U.S. 748, 760 (1976). The Court's holding in that case is particularly apposite to this matter:

> What is at issue is whether a State may completely suppress the dissemination of concededly truthful information about entirely lawful activity, fearful of that information's effect upon its disseminators and its recipients. Reserving other questions, we conclude that the answer to this one is in the negative.

*Id*. at 773 (footnote omitted).

More recently, in *Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011), the Supreme Court emphasized that states may not suppress truthful speech in an effort to promote what a regulator believes to be the public good. In *Sorrell*, a Vermont statute prohibited pharmacies and similar entities from providing "prescriber-identifying information" for marketing purposes without the prescriber's consent. *Id*. at 558–59. The Vermont legislature provided extensive rationale for this prohibition, which essentially sought to protect the public from pharmaceutical industry marketing practices that the legislature viewed as being unfair to consumers. *Id*. at 560–61. In striking down the statute as unconstitutional, the Supreme Court noted that tolerating speech that one disfavors is "a necessary cost of freedom." *Id*. at 574. Thereafter, the Court held that states cannot prevent the dissemination of truthful information, simply because that speech may have adverse effects:

> Those who seek to censor or burden free expression often assert that disfavored speech has adverse effects. But the "fear that people would make bad decisions if given truthful information" cannot justify content-based burdens on speech.

1609764120.1

*Id*. at 577 (citations omitted).

Recently, the United States Court of Appeals for the Ninth Circuit further clarified these principles in the specific context of firearm advertising. *Junior Sports Mags,, Inc. v. Bonta*, 80 F.4th 1109 (9th Cir. 2023). In *Junior Sports*, a magazine publisher challenged a California statute that would have barred truthful advertising promoting firearms, because the advertising's content "reasonably appear[ed] to be attractive to minors." *Id*. at 1113. In reviewing the district court's denial of the injunctive relief, the Circuit Court observed that "[t]he First Amendment demands more than good intentions and wishful thinking to warrant the government's muzzling of speech." *Id*.

### 2.    Efforts to Silence One Side of a Public Discussion are Subject to Strict Scrutiny.

The *Junior Sports* court undertook a thorough analysis of the protections afforded to commercial speech promoting firearms. The Court began by noting that efforts to control speech that portrays firearms in a positive manner may be subject to strict scrutiny, and not the less-strict test for reviewing commercial speech provided in *Central Hudson Gas & Electric Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980). *Junior Sports*, 80 F.4th at 1115.

Because the court held that the speech restriction at issue in *Junior Sports* did not survive constitutional scrutiny under any potentially applicable test, the court did not decide which standard of review was appropriate. *Id.* Nevertheless, *Junior Sports* provides a compelling argument that strict scrutiny is appropriate in cases involving efforts to quash speech that promotes the ownership of firearms.

As in this case, the *Junior Sports* court faced the question whether advertisements showing children and firearms in a positive manner are contrary to the public good. In resolving that issue in the negative, the court noted that firearm advertisements depicting minors are not deceptive. *Id*.

19

at 1116–17.  Thereafter, the Court held that the burden to justify a speech restriction is "at its highest where, as here, a state 'takes aim at accurate commercial information.'"  *Id.* at 1117 (citing *44 Liquormat, Inc. v. Rhode Island*, 517 U.S. 484, 505–06 (1996) (plurality opinion)).  The Court went on to note further that scrutiny is further heightened when the restriction represents "an express effort to regulate 'a popular but disfavored product.'"  *Id.* at 1117 (quoting *Sorrell*, 564 U.S. at 577–79).  This is the precise type of speech that is at issue in this case, so this guidance applies specifically to this case.

The concurring opinion of Circuit Judge Lawrence Van Dyke in *Junior Sports* is instructive regarding the proper scope of First Amendment scrutiny.  Judge Van Dyke noted that efforts to restrict firearm advertising seek to extinguish one viewpoint from the public discussion over the proper role of firearms in American society, with the desired outcome of those efforts being to allow only one side of that discussion to be heard.  *Id.* at 1123 (Van Dyke, J., concurring).  Judge Van Dyke concluded that efforts to police speech in this manner constitute "blatant viewpoint discrimination," which merits the strictest of scrutiny.  *Id.* (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 124 (Scalia, J., concurring)).  Put in more common parlance, Judge Van Dyke observed that "[a] legislature cannot privilege one set of speakers as the good guys, while restricting another set of speakers as the baddies."  *Id.* (quoting *Ass'n of Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726, 739 (9th Cir. 1994) (Noonan, J., dissenting)).  *See also Nat'l Rifle Assoc. v. Vollo*, 602 U.S. 175, 187 (2024) (holding that "viewpoint discrimination is uniquely harmful to a free and democratic society").

Here, Plaintiffs propose using two Virginia statutes to attack lawful speech that promotes the legal possession and use of firearms and ammunition on the grounds that the speech may allegedly cause "disturbed young men" to act improperly.  Compl. ¶¶ 7–10, 43.  Given that the

20

1609764120.1

Supreme Court has never carved out any commercial speech exception to "the First Amendment's blanket disapprobation of viewpoint discrimination," any effort to restrict and/or punish speech on only one side of a public discussion should be subject to strict scrutiny review. *Junior Sports*, 80 F.4th at 1123–24 (Van Dyke, J., concurring).[10]

### 3. The Speech Restrictions Proposed In the Complaint Do Not Survive a Constitutional Analysis.

To pass muster under a strict scrutiny test, a speech restriction must be narrowly tailored to serve a compelling interest. *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015). The Supreme Court has noted that "it is the rare case" where a state statute meets the standard. *Id*. This is not that case.

This lawsuit seeks to use the VFAS and VCPA to attack speech that allegedly promotes a "warrior mentality," to "disturbed young men." Compl. ¶¶ 9, 43. But the Complaint includes pictures of, among other things, families and children that in no way promote criminal behavior. In other words, Plaintiffs' Complaint posits that the VFAS and VCPA can be used to punish photographs involving the lawful possession and use of firearms, so long as someone alleges that the photographs may prompt some "disturbed" third-party to engage in criminal conduct.[11] As noted in *Sorrell*, *Junior Sports*, and the other authorities cited above, one-sided, content-based restrictions on speech of this nature do not pass muster under *any* of the accepted judicial tests. *See, e.g.*, *Junior Sports*, 80 F.4th at 1115. Quite simply, Plaintiffs' attempted enforcement of the VFAS and the VCPA to punish truthful Instagram posts would violate Fiocchi Munizioni's First Amendment free speech rights. Plaintiffs' lawsuit must be dismissed on that basis.

---

[10] In fact, legislation that governs speech based on its content is "presumptively unconstitutional." *Id.* at 1124 (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)).

[11] As a general matter, any policy restricting speech based upon the impact that it could possibly have on "disturbed" individuals would seem to create an impermissibly overbroad restriction of many types of protected speech.

21

**C.**     **If Fiocchi Munizioni is Subject to the Reach of Virginia Legislation, Plaintiffs Have Failed to Plead Statutory Claims.**

**1.**     **Plaintiffs Lack Statutory Standing, Because Their Claims Are Not Within the "Zone of Interests" Protected By Those Statutes.**

Accepting for purposes of argument that the VFAS and VCPA apply to this case, Plaintiffs nevertheless lack statutory standing to bring a claim under either of those statutes.   Courts "presume that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'"  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014).  Therefore, "when a plaintiff's 'interests are . . . inconsistent with the purposes implicit in the statute . . . it cannot reasonably be assumed that'" the relevant legislative body authorized the plaintiff to sue.  *Id*. at 130; *see also CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 56 (4th Cir. 2011) (holding that the plaintiff lacked standing to sue under a "seemingly broadly worded but nonetheless inapplicable statute").  To expand the VFAS and/or the VCPA standing to persons who are third-parties to consumer transactions would go beyond the legislature's stated purpose.  *See West v. Christopher Consultants, Inc.*, No. CL19002447-00, 2020 WL 10458184 (Va. Cir. June 10, 2020) (sustaining demurrer to VCPA claim where the plaintiff did not acquire goods or services from the defendant or any person downstream of the defendant).

The "zone of interests" of both the VFAS and the VCPA are to protect consumers from being induced by false advertising.  The legislature enacted the VFAS to protect the public from being induced "into any obligation" by a "statement of fact which is untrue, deceptive or misleading."  Va. Code § 18.2-216; *see also BHR Recovery Cmtys., Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 427–28 (E.D. Va. 2018).  As a penal statute, the VFAS "must be construed strictly" and should not "be extended by implication, or be made to embrace cases which are not within its

22

letter and spirit." *Cos., Inc. v. IBCS Grp., Inc.*, 425 F. App'x 223, 227 (4th Cir. 2011) (quoting *Henry v. R.K. Chevrolet, Inc.,* 254 S.E.2d 66, 67–68 (Va. 1979)).

Similarly, Virginia's legislature enacted the VCPA to "promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code § 59.1-197; *see also BHR*, 355 F. Supp. 3d at 424. As Virginia courts have explained, the "plain language" of VCPA "requires the prohibited practices to occur 'in connection with a consumer transaction.'" *See, e.g.*, *Bindra v. Michael Bowman & Assocs.,* No. 191866, 2001 WL 1829999, at *3 (Va. Cir. Sept. 19, 2001) (claimant under the VCPA lacked standing because "[he] was not engaged in a 'consumer transaction'" that led to his injuries); *Baker v. Elam*, 883 F. Supp. 2d 576, 578 (E.D. Va. 2012) (holding that "only consumer transactions qualify for coverage under the VCPA," and dismissing claim because plaintiff lacked standing under the VCPA); *Trans-Radial Sols., LLC v. Burlington Med., LLC*, No. 18-cv-656, 2019 WL 3557879, at *9 (E.D. Va. Aug. 5, 2019).

Plaintiffs' claims against Fiocchi Munizioni do not fall within the zones of interest of either the VFAS or the VCPA. Plaintiffs do not allege that they were consumers in any transaction with Fiocchi Munizioni. *See* Compl. ¶¶ 53–56. Plaintiffs further do not allege that they saw any communication attributed to Fiocchi Munizioni. *See id.* Indeed, they do not even allege that the third-party assailant, "Shooter," saw any Fiocchi Munizioni communications.[12] Accordingly, Plaintiffs cannot sue Fiocchi Munizioni under either the VFAS or the VCPA.

---

[12] Even if Plaintiffs did allege that the assailant saw Internet communications attributed to Fiocchi Munizioni, they cannot bring a claim on the Shooter's behalf. *Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 83 (4th Cir. 1973) ("Under Rule 17, an 'action must be brought by a person who possesses the right to enforce the claim and who has a significant interest in the litigation.'"); *Schmidt v. Fair Collection & Outsourcing, Inc.*, No. 1:17-CV-00313, 2018 WL 445434, at *2 (E.D. Va. Jan. 12, 2018) ("[E]very action must be prosecuted in the name of the real party in interest").

1609764120.1

**2.    The Complaint Fails to Plead Proximate Causation.**

Plaintiffs' claims are further barred because injuries that they sustained were actually and proximately caused by a third-party over whom Fiocchi Munizioni lacked any control. *See Lexmark*, 572 U.S. at 129, 132–33; *Wall & Assocs., Inc. v. Better Bus. Bureau of Cent. Va., Inc.*, 685 F. App'x 277, 279 (4th Cir. 2017) (affirming dismissal because "the harm alleged [did not have] a sufficiently close connection to the conduct the statute prohibits"). Additionally, Plaintiffs can't meet the "proximate cause" requirement of the predicate exception because they cannot meet the imminent lawlessness requirement. Speech is forbidden only when that speech "is directed to inciting or producing imminent lawless action…." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). No allegation of imminent lawless action has been alleged here. Therefore, Plaintiffs' claims fail under the proximate causation requirement of either statute.

**3.    The Complaint Does Not Plead that Fiocchi Munizioni Engaged in Deceptive Acts or that the Third-Party Assailant Relied on Any Statement of Fiocchi Munizioni.**

To plead a VFAS violation, Plaintiffs must allege that Fiocchi Munizioni: (1) made an advertisement; (2) with the intent to sell; (3) that was "untrue, deceptive or misleading"; and (4) the consumer relied on the advertisement for the goods or services advertised. Va. Code § 18.2- 216; *see also Am. Demolition & Nuclear Decommissioning, Inc. v. IBCS Grp., Inc.*, 21 F. Supp. 3d 632, 636 (W.D. Va. 2014). Presuming that they can overcome his failure to associate Fiocchi Munizioni with any ammunition relevant to this lawsuit, Plaintiffs cannot meet this standard.

Plaintiffs cite six Instagram posts from "fiocchiusa." Compl. ¶¶ 63, 72, 73 and 86. None of those communications were "untrue, deceptive, or misleading." Rather, the communications

24

encourage consumers to buy a lawful product[13]—the goal of any consumer marketing.  None of the communications from "fiocchiusa" makes any promise, either explicitly or implicitly.  *See* Compl. ¶¶ 63, 72, 73 and 86.  There is nothing fraudulent or misleading in those statements.

Plaintiffs further allege that the Instagram posts promote ammunition "as suitable for war and civilian use, beneficial to safety and security, capable of safe handling by children, and/or appropriate for uses that are or may be illegal in some or all U.S. jurisdictions."  Compl. ¶ 213.[14] But as *Ashcroft v. Iqbal* instructs, the Court need not abandon "common sense."  *See* 556 U.S. 662, 679 (2009).  The actual Instagram posts cannot be read to promote what Plaintiffs claim.  One Instagram post shows a child wearing a "Fiocchi" ball cap.  Compl. ¶ 86.  There are not even any firearms or ammunition in the advertisement.  *Id.*  Another shows a post with a smiling mother and son enjoying the outdoors after the mother engaged in lawful, recreational hunting.  *Id.*  Like the other Instagram posts from "fiocchiusa," those advertisements do not promote criminal or illegal activity.  The VFAS claim in this regard is nothing more than "an unadorned, the-defendant-unlawfully-harmed- me accusation," and should be dismissed. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007))*.

Plaintiffs' VFAS claim against Fiocchi Munizioni further fails under the reliance element.  Plaintiffs do not allege that the third-party assailant saw or relied on any statement of Fiocchi Munizioni.  *See Gentry v. Hyundai Motor Am., Inc.*, No. 3:13-CV-00030, 2017 WL 354251, at *7 n.2 (W.D. Va. Jan. 23, 2017) ("Without any allegations of what advertisements [Plaintiff] saw, relied upon, or 'induce[d]' him 'to enter into' an agreement . . . , Va. Code. § 18.2-216, he cannot

---

[13] Recreational shooters commonly purchase large quantities of ammunition and other firearm accessories.  *See Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1226 (D. Colo. 2015) (finding there is nothing inherently suspicious about large ammunition orders).

[14] Plaintiffs plead the same conclusory language in their claims against the other ammunition manufacturers and defendants named in the lawsuit, demonstrating the highly formulaic and insufficient nature of his allegations against Fiocchi Munizioni.  *See* Compl. ¶¶ 157, 164, 171, 178, 185, 192, 199, 206, 220, 227, 234.

1609764120.1

establish any 'loss as the result of' alleged false advertising."); *see also Henry*, 254 S.E.2d at 68 (holding that the VFAS is a penal statute that "must be construed strictly" and not "be made to embrace cases which are not within its letter and spirit"). The VFAS claim, therefore, should be dismissed.

### 4.      The Complaint Does Not Plead Fraud With Specificity.

The statutory elements of a VCPA claim require the plaintiff to allege: (1) a fraudulent act, (2) by a supplier, (3) in a consumer transaction, (4) where the consumer relied on that supplier's alleged fraudulent act. Va. Code § 59.1-196 et seq.; *see also Student A. v. Liberty Univ., Inc.*, 602 F. Supp. 3d 901, 917 (W.D. Va. 2022); *Owens v. DRS Auto. Fantom Works, Inc.*, 764 S.E.2d 256, 260 (Va. 2014) (holding that VCPA requires proof of reliance by the consumer on the supplier's alleged fraudulent act). Under Rule 9(b): "a party [alleging fraud], must state with particularity the circumstances constituting fraud or mistake." *See also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) ("[P]laintiff ordinarily must describe the "who, what, when, where, and how" of the fraud."); *Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 845 (E.D. Va. 2015). A plaintiff must plead with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); *see also Xia Bi v. McAuliffe*, 927 F.3d 177, 184 (4th Cir. 2019), amended (July 9, 2019) (finding that an allegation of reliance is subject to Rule 9(b) standard). Failure to plead fraud with particularity is a failure to state the claim requiring dismissal under Rule 12(b)(6). *Id.* at 783 n.5.

Here, Plaintiffs do not identify any statements of Fiocchi Munizioni that were fraudulent in any respect. Rather, Plaintiffs utilize vague "group pleading" that provides Fiocchi Munizioni with no notice of what is being alleged against it. By failing to plead fraud at all, Plaintiffs did not

26

plead fraud with particularity. *See* Compl. ¶¶ 320–28. In addition, Plaintiffs do not plead any link between the "fiocchiusa" posts and the criminal acts of the "Shooter." Rather, Plaintiffs allege that, on "information and belief," the [assailant] relied on "fiocchiusa" Internet communications to purchase ammunition. Compl. ¶ 324. Besides the fact that Plaintiffs have not pled that Fiocchi Munizioni made or sold ammunition relevant to this case, Plaintiffs can plead facts "on information and belief" only if the facts are particularly within the possession and control of the defendant. *See Sorbara v. Carilion Rockbridge Cmty. Hosp.*, No. 7:23-CV-00078, 2023 WL 5534186, at \*4 n.4 (W.D. Va. Aug. 28, 2023) (quoting *Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 456 (E.D. Va. 2015)). Here, Fiocchi Munizioni possesses no information regarding the third-party assailant's motivations for purchasing ammunition. In that case, allegations on "information and belief" constitute a conclusory allegation that does not satisfy the Rule 9(b) pleading standard. *See* Compl. ¶ 324. Therefore, Plaintiffs' VCPA claim against Fiocchi Munizioni must be dismissed.

**CONCLUSION**

WHEREFORE, Defendant Fiocchi Munizioni, S.p.A. requests that it be dismissed from this matter with prejudice and that this Court enter such other and further relief as this Court deems just and proper.

Date: April 7, 2026

Respectfully submitted,

Fiocchi Munizioni, S.p.A.

By Counsel:

/s/ Andrew N. Cook
Andrew N. Cook  (Va. Bar No. 39475)
**K&L GATES LLP**
1601 K Street, N.W.
Washington, DC 20006
Phone: 202.778.9000
Andrew.Cook@klgates.com

27

1609764120.1

Nicholas P. Vari (Pa. Bar No. 59033)
(Admitted *Pro Hac Vice* in consolidated cases)
**K&L GATES LLP**
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA  15222-2613
Telephone:  (412) 355-6500
Facsimile:  (412) 355-6501
Nicholas.Vari@klgates.com

*Attorneys for Defendant*
*Fiocchi Munizioni, S.p.A.*

28

1609764120.1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Defendant Fiocchi Munizioni S.p.A.'s Brief in Support of Its Motions For a More Definite Statement and to Dismiss Plaintiffs' Complaint was served via electronic means, on the 7th day of April, 2026, upon counsel of record and upon the following:

Kathryn Ali (Katie.ali@alilockwood.com)
Elizabeth Lockwood (liz.lockwood@alilockwood.com)
ALI & LOCKWOOD LLP
300 New Jersey Avenue, NW, Suite 900
Washington, D.C. 20001

H. Christopher Boehning (cboehning@paulweiss.com)
Jacobus J. Schutte (jschutte@paulweiss.com)
Jenifer N. Hartley (jhartley@paulweiss.com)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019

/s/ Andrew N. Cook
Andrew N. Cook  (Va. Bar No. 39475)
K&L GATES LLP
1601 K Street, N.W.
Washington, DC 20006
Phone: 202.778.9000
Andrew.Cook@klgates.com

1609764120.1